**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Lori Saroya,

         Plaintiff,

v.

CAIR Foundation, Inc. d/b/a
Council on American-Islamic Relations &
CAIR,

         Defendant.

Court File No. 24-CV-110 (DWF/DTS)

**DEFENDANT'S MEMORANDUM OF
LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL**

---

## INTRODUCTION

Plaintiff Lori Saroya resigned from CAIR Foundation, Inc. ("CAIR") in May 2018—more than six years ago. Following her resignation, she began sending repeated communications, in her own name and under pseudonyms, to CAIR's donors, supporters, partners, employees, and others. Her intent was clear: "Please, please don't partner with [CAIR]." (*See, e.g.*, ECF 35, at 33, 102, 107, 110, 117, 125.) In addition to such communications, Ms. Saroya commenced three separate legal or administrative proceedings against CAIR and sent multiple other informal demands.

In May 2021, Ms. Saroya's communications became sufficiently pervasive and targeted that CAIR commenced a lawsuit against Ms. Saroya. Ms. Saroya admitted during discovery in the 2021 lawsuit to authoring many of the communications and to sending such communications from anonymous accounts. Ms. Saroya brought a motion for

1

judgment on the pleadings, which Judge Nelson denied. The parties soon after agreed to dismiss the lawsuit.

In 2022, after the lawsuit ended, CAIR posted a statement on a subpage of its website which used the word "cyberstalking" to describe the repeated and targeted nature of Ms. Saroya's communications. CAIR's statement did not mention or imply that Ms. Saroya committed, was charged with, was investigated for, or was convicted of any crime. Two years later, Ms. Saroya brought this action, alleging in relevant part that she construed the word "cyberstalking" to imply that she had been charged or convicted of the crime of stalking. She alleges a defamation claim based on this statement.

This case is not the 2021 lawsuit. Here, the partes are reversed, the at-issue statements are distinct, and the burden of proof is now on Ms. Saroya to prove **CAIR's** statements are actionable. Nonetheless, Ms. Saroya begins her argument by alleging: "The rules require CAIR to produce information relevant to **its** claims and **Saroya's** defenses." (ECF 34 at 18.) CAIR has no claims, and Saroya has no defenses, in this lawsuit. Ms. Saroya seeks to blur the lines between the 2021 and current lawsuits for one obvious purpose: To obtain documents that she hopes will substantiate the hundreds of allegations she has been making against CAIR for eight years and provide additional fodder for additional future statements.

On this Motion, Ms. Saroya seeks two general categories of discovery: (a) all communications and documents which in any way relate to her for the last eight years; and (b) all communications and documents which relate to the subject matter of Ms. Saroya's hundreds of posts about CAIR—irrespective of whether such posts relate to Ms. Saroya.

4245266.v2

As one glaring example of this second category, Ms. Saroya alleges that, because at one point she made posts questioning CAIR's financial management, she is entitled to CAIR's entire donor list. Ms. Saroya's motion should be denied.

## RELEVANT FACTUAL BACKGROUND

### I.     CAIR's 2022 Press Release.

Ms. Saroya's entire defamation claim in this case is based upon the following statements included in CAIR's 2022 press release:

1.  The title of the statement: "Community Update on Cyberstalking by Lori Saroya, Ex-Staffer." (ECF 1 ⁋ 72.)

2.  "As some of you know, a former CAIR national staffer has spent the past several years using anonymous email accounts and social media profiles to cyberstalk, smear and undermine our national office, local chapters, volunteers and community partners with help from anti-Muslim extremists. That former CAIR staffer is Lori Haidri Saroya." (*Id.* ⁋ 73.)

3.  "After enduring this obsessive and destructive cyberstalking for years, we decided to file a defamation lawsuit against Lori in 2021 to expose the truth and protect our team in a court of law, where the truth matters." (*Id.* ⁋ 74)

4.  "Lori was not able to defeat our lawsuit. A few weeks ago, the judge overseeing the case ruled in our favor and denied Lori's motion to dismiss our lawsuit." (*Id.* ⁋ 78.)

5.  "The litigation had already allowed us to prove her conduct: working with Islamophobes, sending hundreds of anonymous emails in the middle of the night attacking our civil rights organization, harassing us and our supporters on social media, among many other things. She did not deny any of these claims in her response to our lawsuit, so we have already proven those facts." (*Id.* ⁋ 80.)

6.  "She isn't trying to fix a problem within CAIR." (*Id.* ⁋ 81.)

Ms. Saroya alleges these statements give rise to a defamation claim because she construed these statements to "falsely accuse[] Ms. Saroya of violating both state and federal criminal laws by engaging in 'cyberstalking.'" (*Id.* ⁋⁋ 69-71.) She specifically

alleges these statements are "verifiably false" because she did not commit these alleged crimes. (*Id.* ⁋ 75.) She then alleges the statements were made with "Constitutional Malice" because CAIR knew "Ms. Saroya had not violated any criminal statute, much less the state and federal cyberstalking statutes . . . ." (*Id.* ⁋ 76.)

CAIR's 2022 press release made no reference to any criminal statute. Rather, it described the specific **conduct** it characterized as "cyberstalking" in the colloquial sense:

1.  "[U]sing anonymous email accounts and social media profiles to . . . smear and undermine our national office, local chapters, volunteers and community partners with help from anti-Muslim extremists." (ECF 1-1, p. 43.)

2.  "Lori [Saroya] began to publicly and privately attack our civil rights organization. Her early behavior ranged from the petty (such as leaving negative reviews on the Facebook pages of nearly every CAIR chapter) to the disturbing (like accusing us of withholding reimbursements due to her)." (*Id.*)

3.  "After months of her online attacks failed to harm us, Lori changed course. She hired Daniel Horowitz, an Islamophobic, anti-Palestinian attorney, to target us. Years earlier, Mr. Horowitz had tried to sue CAIR on behalf of far-right radio host Michael Savage. In 2019, Mr. Horowitz sent us a letter on behalf of Lori that accused us of being involved in an international terrorist conspiracy, among many other crimes. Horowitz threatened to ask the Trump Administration to target us unless we paid Lori over half a million dollars. He also threatened to edit, update and file Michael Savage's old "RICO" lawsuit against us, this time on behalf of Lori." (*Id.*)

4.  "She has spent years using anonymous email accounts and social media profiles to continue attacking us while periodically seeking money from us. At this point, she has sent hundreds—perhaps thousands—of anonymous emails to disrupt our work. In addition to spreading Islamophobic tropes and conspiracy theories about CAIR, Lori has alleged that the organization is a hostile environment for women." (*Id.*)

5.  "Despite her own words and the fact that women play major leaderships role in CAIR, Lori has sent hundreds of anonymous emails claiming otherwise to our friends, supporters and partners for several years. When we or our chapters participate in public events, Lori often sends anonymous anti-CAIR emails to anyone involved—panelists, organizers, sponsors, political candidates,

journalists. In 2021, Lori also began to launch vitriolic personal attacks against current and past female leaders of CAIR. Her anti-CAIR page in Twitter was repeatedly suspended for violating their rules." (*Id.* at 44.)

## II.   **CAIR's 2022 Press Release Did Not Reference Any of the Topics About Which Ms. Saroya Seeks Discovery in this Lawsuit.**

CAIR's 2022 press release did **not** allege or make reference to any crime or criminal statute. (*See id.*) The press release did not identify any specific communication from Ms. Saroya. (*See id.*) Specifically, the press release did not mention or refer to Ms. Saroya's (or any others') communications regarding: sex discrimination against other employees; former employees of CAIR and its chapters, including Zainab Chaudry, Hassan Shibly, Karen Leslie Hernandez, or Mariam Amer; donations to CAIR; document retention policies; the Sarbanes-Oxley Act; Parvez Ahmed; foreign funding from Saudi Arabia, Qatar, or Kuwait; acquisition of property in Washington, D.C.; or other employees' severance agreements. (*See id.*)[1]

## LEGAL ARGUMENT

### I.   **Legal Standard.**

"[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

---

[1] Ms. Saroya alleges CAIR has produced zero documents in this case. While not relevant to this Motion, this allegation is false. CAIR has produced 55 pages of documents, and is in the process of reviewing and producing additional documents. (Declaration of Zachary Alter ⸢P 2.)

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A court "must limit the frequency or extent of discovery" if it "is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"This rule contemplates a liberal scope of discovery, though this Court has considerable discretion to determine the need for, and form of, discovery. The proponent of the discovery must make a threshold showing of relevance . . . before parties are required to open wide the doors of discovery, in order to limit fishing expeditions." *Yang v. Robert Half Int'l, Inc.*, No. 19-CV-2669 (NEB/DTS), 2021 WL 7909270, at *1 (D. Minn. Sept. 28, 2021) (citations and internal quotations omitted). Therefore, "despite the liberality of discovery, [courts] will remain reluctant to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 635 (D. Minn. 2000) (citations and internal quotations omitted).

Establishing relevance is a two-stage inquiry. "The party seeking discovery bears the initial responsibility for making the threshold showing of relevance before the production of information is required. If that threshold showing is met, the party resisting production then bears the burden of establishing a lack of relevancy or undue burden." *Gardner v. Duluth Pub. Schs. Acad.*, No. 19-CV-2314 (SRN/LIB), 2021 WL 6755014, at *2 (D. Minn. Feb. 12, 2021) (citations omitted). At stage one, "the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation." *Sylva Corp. v. Lewandowski*, No. 20-CV-184 (PJS/LIB), 2021 WL 5087267, at *3 (D. Minn.

May 14, 2021). At stage two, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). Likewise, the requested discovery must "be proportional to the needs of the case" and the "court may find that a request on its face is not proportional to the needs of the case, [even] given the relevance of the requested discovery." *Core & Main, LP v. McCabe*, No. 21-CV-1512 (WMW/DLM), 2023 WL 5815840, at *2 (D. Minn. Sept. 8, 2023) (citations and internal quotations omitted); *see WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (affirming denial of requests which sought some relevant information because it was overbroad).

## II.   Relevant Defamation Case Law.

To establish a defamation claim, Ms. Saroya "must prove that [CAIR] made: (a) a false and defamatory statement about the plaintiff; (b) in [an] unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Maethner v. Someplace Safe, Inc*., 929 N.W.2d 868, 873 (Minn. 2019) (citing *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003)). As to element two, a statement is not actionable if protected by a recognized privilege; however, a plaintiff can overcome this privilege by proving malice. *Maethner*, 929 N.W.2d at 873.

"[I]n defamation suits, the defamatory matter [must] be set out verbatim." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000). "Allegedly defamatory statements must be included in a plaintiff's complaint." *Bebo v. Delander*, 632 N.W.2d 732, 739 (Minn. Ct. App. 2001) (citing *Benson v. Northwest Airlines, Inc.*, 561

7

N.W.2d 530, 538 (Minn. Ct. App. 1997)). The "scope" of a defamation claim is limited to the statements identified in the complaint. *Benson*, 561 N.W.2d at 538 (citing *Thompson v. Campbell*, 845 F. Supp. 665, 680 (D. Minn. 1994)). Defamation claims are also limited to statements published within two years, regardless of when the plaintiff discovers the statement. Minn. Stat. § 541.07(1); *Ernst v. Hunchliff*, 129 F. Supp. 3d 695, 728 (D. Minn. 2015).

III.   <u>**Request Nos. 1-4, 8, 10-16, 18, 24, 25, & 39; Interrogatory Nos. 4, 12, & 13**</u>.

The first set of Requests and Interrogatories at issue on this Motion seeks documents and communications regarding Ms. Saroya, the 2021 litigation, and CAIR's 2022 press release. (*See* ECF 35-2, at p. 1-8.) During the parties' meet-and-confer discussion, Ms. Saroya's counsel confirmed the scope of Request No. 1 includes every document and every communication from January 1, 2016, to present, which references or relates to Ms. Saroya, which was sent by Ms. Saroya, or which was received by Ms. Saroya—irrespective of the topic, issue, or subject matter. (ECF 35-9, at 1.) Request Nos. 2-4, 8, 10-16, 18, 24, 25, and 39, and Interrogatory Nos. 4, 12, and 13 each seek categories of documents which are subsets of, and included in, Ms. Saroya's proposed scope of Request No. 1. This set of Requests, referred to herein as the "Group 1 Requests," will therefore be addressed together herein.

A.  **What CAIR Has Already Agreed to Provide or Produce.**

As to Interrogatory No. 4, CAIR agreed to produce non-privileged statements about Ms. Saroya about any issue raised in the press release. (ECF 35-9, at 3-4.) CAIR inquired

as to what Ms. Saroya intended the term "oral statements," to mean, but Ms. Saroya did not respond. (*Id.*)

As to Interrogatory No. 12, CAIR identified six individuals who complained about Ms. Saroya during her employment. (ECF 35-6, p. 10.) Ms. Saroya does not identify how this answer is deficient.

As to Interrogatory No. 13, "CAIR agrees to produce performance evaluations as well as any documents related to employee complaints against Plaintiff (to the extent these are included in the scope of this Interrogatory) and is further willing to confer to figure out an appropriate scope." (ECF 35-9, p.4.)

As to Request Nos. 8 and 39, CAIR agrees "to produce any non-privileged communications (with the media or internal) in its possession, custody, or control, if any, which relate to the 2021 litigation and any claim or defense in this case." The parties discussed this scope, as it originally included all privileged and non-privileged communications related to the litigation—irrespective of the subject of the communications. CAIR proposed narrowing this Request to documents related to what Ms. Saroya believes are mischaracterizations of the certain motion rulings. It appears the parties are in (or close to) agreement on this Request, as Ms. Saroya agreed to limit this Request to non-privileged communications between CAIR and third parties, or between CAIR employees or leadership. (ECF 35-8, p. 7.)

As to Request No. 10, CAIR agreed to "produce nonprivileged meeting minutes or agendas, if any, which relate to the at-issue press release or otherwise relate to any party's

claim or defense—namely any statement upon which Plaintiff's claims are based." (ECF 35-9, p. 2.)

As to Request No. 18, which seeks all communications between CAIR and Ms. Saroya after she resigned, CAIR agreed to produce "communications between CAIR and Plaintiff which relate to any party's claim or defense—namely any statement upon which Plaintiff's claims are based." (*Id.* at p. 2.) CAIR inquired why Ms. Saroya seeks communications with CAIR to which she was a party, as such communications would seemingly be in her possession, but did not receive a response.

As to Request Nos. 24 and 25, CAIR agreed "to produce documents in its possession, custody, or control which support or relate to the statement(s) in the press release related to 'cyberstalking.'" (ECF 35-9, at p. 3.) It is unclear what additional documents Ms. Saroya is seeking to compel with respect to these Requests.

CAIR also agreed to produce non-privileged documents responsive to requests not at issue on this motion. CAIR agreed to produce: "(1) Documents in its possession, custody, and/or control which relate to drafting and/or publication of the at-issue Press Release; (2) Documents in its possession, custody, or control which reflect or constitute transmission by CAIR of the at-issue Press Release to anyone." (*Id.* at p. 1.) CAIR agreed to produce the documents related to the allegations in CAIR's press release statement that the 2021 litigation "allowed us to prove her conduct . . . ." and that Judge Nelson denied Ms. Saroya's motion for judgment on the pleadings. (ECF 35-5, p. 20.)

4245266.v2

**B.  Ms. Saroya's Context Argument Does Not Establish Relevance**.

Ms. Saroya argues the massive scope of documents included in the Group 1 Requests is needed to provide "context" of the parties' relationship and because "context is important in determining whether an individual engaged in stalking or harassment." (ECF 34, at 21.)

But not every such document and communication over an eight-year period is relevant to prove "context." Instead, "the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation." *Sylva Corp.*, 2021 WL 5087267, at *3. Here, the allegedly defamatory statements in Ms. Saroya's complaint—all of which are based on CAIR's 2022 press release—are the "actual claims" at issue. *See id.* These statements, in turn, form the relevant scope of discovery.[2] Ms. Saroya cites no applicable case law to support her argument that "context" justifies compelling CAIR to produce every document related to Ms. Saroya for more than eight years—more than six of which predate the applicable statute of limitations. Indeed, in response to CAIR's discovery requests to Ms. Saroya in the 2021 lawsuit, Ms. Saroya objected to producing communications which pre-dated the applicable two-year statute of limitations.

Moreover, CAIR offered to discuss search terms to help narrow the scope of these Group 1 Requests to relevant custodians, issues, claims, and defenses. (ECF 35-9, at 5.) Ms. Saroya did not agree. Ms. Saroya's only concession was to limit the time period for

---

[2] Ms. Saroya also alleges a claim for intentional infliction of emotional distress, but does not argue this claim provides any basis for the relief she seeks on this motion.

some of the Group 1 Requests from January 1, 2016, to present. This limitation does little to address CAIR's below objections. Ms. Saroya's "context" argument is unavailing.

### C. The Group 1 Requests are Not Relevant to Whether Ms. Saroya Committed Stalking Crimes Because CAIR Never Alleges She Committed any Crimes.

Ms. Saroya argues CAIR's press release accused Ms. Saroya of violating two criminal statutes and, therefore, the Group 1 Requests are relevant to whether she committed these crimes. This argument fails for three reasons.

First, the "stalking" statutes Ms. Saroya cites in her brief are inapplicable to any claim or defense in this case because CAIR's press release does not accuse Ms. Saroya of violating these statutes. CAIR's press release does not reference either statute (or any other law). It does not suggest Ms. Saroya has been involved in any criminal proceedings. It does not allege she has been, or should be, investigated for these alleged offenses. If Saroya sincerely believed CAIR's press release stated she had been charged or convicted of cyberstalking under these statutes, there would be no need for any of the discovery she seeks, as the truth or falsity of this allegation would be easily verifiable by referencing criminal court records.

Second, even if CAIR's press release could be construed to allege Ms. Saroya committed the "crime of cyberstalking" (which it does not), Ms. Saroya's argument still fails because truth is not an absolute defense to these statutes. Ms. Saroya's basic argument seems to be that she needs discovery to prove her communications were true, which in turn means that did not commit a cyberstalking crime, which in turn will allow her to show CAIR's press release was false. But this argument necessarily requires that "falsity" is an

element of cyberstalking. It is not. Unlike Ms. Saroya's defamation claim, these criminal statutes punish conduct and require proof of criminal intent. Minn. Stat. § 609.749, subd. 5(b); 18 U.S.C. § 2261A. Neither statute requires the criminal act or communication to be "false." Nor does either statute provide that a defendant is not guilty if his or her stalking acts were true.[3] Ms. Saroya's argument fails.

Third, the Group 1 Requests are not targeted to determine whether Ms. Saroya engaged in cyberstalking conduct. Whether she did so necessarily depends on the nature, intent, and frequency of Ms. Saroya's conduct—all of which CAIR is seeking from Ms. Saroya in discovery. Ms. Saroya does not explain or support how eight years of communications and documents from CAIR will show whether Ms. Saroya engaged in cyberstalking conduct.

**D. The Group 1 Discovery is Not Relevant to Ms. Saroya's Constitutional Malice Argument.**

Ms. Saroya's complaint alleges CAIR made "false assertions with **Constitutional Malice** in that it knew they were false or, at the very least, acted with reckless disregard of whether they were false." (ECF ⁋⁋ 6, 76.)

Constitutional malice, as expressly alleged by Ms. Saroya, is synonymous under Minnesota law with actual malice. *Jadwin v. Minneapolis Star & Trib. Co.*, 367 N.W.2d 476, 482 n.7 (Minn. 1985); *Smith v. City of Crosby*, 2022 WL 152015, at *4 n.4 (Minn. Ct.

---

[3] Ms. Saroya cites various cases evaluating whether certain criminal statutes (namely criminal defamation) are unconstitutionally overbroad so as to punish free speech. But no party in this case is challenging the breadth of criminal statutes. This is a standard civil defamation case for which the law is well established.

App. Jan. 18, 2022). Actual malice means that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974). This showing "has nothing to do with motive or ill will in the publishing of otherwise defamatory statements." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 329 (Minn. 2000); *Harte-Hanks Comm'ns, Inc. v. Connaughton*, 491 U.S. 657, 666, n.7  (1989) (noting malice has "nothing to do with bad motive or ill will").

Here, Ms. Saroya argues she needs eight years of communications and documents to determine whether CAIR had a retaliatory motive for issuing the 2022 press release. But under well-established law, this argument has nothing to do with Ms. Saroya's burden to establish CAIR made the statements knowing they were false or in reckless disregard thereof.

Ms. Saroya cites *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258 (Minn. 1980) for the proposition that responsive communications and documents are relevant to determine whether the press release was published negligently, recklessly, or intentionally. *Stuempges* is not applicable because it involved a purely private dispute about a private employment recommendation. *Id.* In contrast, Ms. Saroya was a public figure, as she is "a highly respected and accomplished community leader with a proven track record as a champion of civil rights and female empowerment" and an is an elected city council member. *See* ECF 1 ⁋⁋ 21, 91. *See Monitor v. Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971) (holding candidates for public office are public figures required to prove actual malice). Moreover, her dealings with CAIR were widely publicized, further supporting her status

14

as, at minimum, a limited-purpose public figure. *See Metge v. Central Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 496 (Minn. Ct. App. 2002) (former executive director of nonprofit organization was limited-purpose public figure required to prove actual malice in discrimination claim against nonprofit for statements which received media attention). Accordingly, Ms. Saroya's malice argument does not meet her burden to show the Group 1 Requests are relevant.

### E.  CAIR's Objections to the Group 1 Requests are Valid.

Even if Ms. Saroya could meet her burden to establish any of the Group 1 Requests are relevant (beyond those CAIR has agreed to produce), the Court should deny her Motion as to these Requests because they are overbroad, not proportional to the needs of the case, and seek a burdensome volume of documents unrelated to any party's claim or defense. *WWP, Inc.*, 628 F.3d at 1039 (court may deny motion seeking some relevant documents if request is overbroad); *Core & Main*, 2023 WL 5815840, at *2 (court may deny motion seeking some relevant documents if request is not proportional).

Ms. Saroya seeks more than eight years of documents and communications (including documents she sent or received while working at CAIR) which relate to or reference her. As to documents from 2016 through Ms. Saroya's resignation, there is no claim or defense which puts at issue the massive volume of day-to-day emails and documents responsive to these Group 1 Requests. Ms. Saroya is not alleging any claim with respect to her employment with CAIR. As to documents from Ms. Saroya's 2018 resignation to present, these Requests are not limited to CAIR's allegedly defamatory statements (or any conduct or actions up on which they are based), the 2021 litigation, or

any other claim or defense. Moreover, during this 2018-present period, the parties have been involved in at least three other administrative and legal matters. The Group 1 Requests therefore in large part seek privileged and work product documents and communications related to those separate matters—and unrelated to the claims and defenses in *this* case.

Additionally, searching for, downloading, and reviewing for privilege and confidentiality for each document responsive to these Requests imposes on CAIR an undue burden. This process would be incredibly lengthy and expensive. This is particularly true because while Ms. Saroya has named one defendant in this case— CAIR Foundation, Inc.—she seeks discovery for each Request from the following non-parties:

> CAIR Foundation, Inc. d/b/a Council on American-Islamic Relations and CAIR, including any of its parent or subsidiary organizations, affiliates, chapters, agents, representatives, attorneys, or anyone else acting on its behalf and under its control, and expressly includes but is not limited to Washington Trust Foundation, Inc., CAIR Action Network, Inc., Council on American Islamic Relations Action Network, Inc., and CAIR National Legal Defense Fund, Inc.

(ECF 35-2 p.4.) CAIR (the named defendant) is a separately incorporated 501(c)(3) corporation organized in located in Washington, DC. (Declaration of Lena Masri, Esq. in Support of CAIR's Opposition to Plaintiff's Motion to Compel ⁋⁋ 1-2.) CAIR is the entity on whose behalf the 2022 press release was posted. Separate from CAIR, but related to CAIR, are approximately 20 separately organized, governed, managed, and operated chapters and affiliates across the country. (*Id.* ⁋ 4.) Ms. Saroya seeks documents and communications from each of these chapters. CAIR does not have any contractual or legal basis to access the requested documents from these chapters. (*Id.* ⁋⁋ 5-22.) Ms. Saroya does not stop there, also seeking documents from other third-party entities, including:

4245266.v2

Washington Trust Foundation, Inc., CAIR Action Network, Inc.,[4] Council on American Islamic Relations Action Network, Inc., and CAIR National Legal Defense Fund, Inc. Ms. Saroya has not offered any justification for compelling CAIR to obtain and produce documents from these non-parties.

Ms. Saroya's motion should be denied because the Group 1 Requests remain vastly overbroad, seek documents and communications unrelated to any actual claim or defense, are not proportional to the needs of the case, and impose on CAIR an undue burden.

## IV.   Request Nos. 19-23, 32-38, 40-41; Interrogatory Nos. 10, 11, 15-19.

### a.   Ms. Saroya Does Not Meet Her Burden to Prove Relevance.

The second category of documents Ms. Saroya seeks on this Motion are documents she argues relate to allegations she has made against CAIR ("Group 2 Requests"). These include:

- Request Nos. 19-20: All documents referring or relating to or reflecting or constituting claims, complaints or allegations by any present or former employee of CAIR [or "any chapter or affiliate of CAIR"] concerning allegations of sexual or gender discrimination, sexual harassment or retaliation against those entities or against any officer, director or employee of any such entity.

- Request Nos. 21-22: All documents referring or relating to or reflecting or constituting any investigation or factfinding of any kind conducted by or on behalf of CAIR [or "any chapter or affiliate of CAIR"] related to any claim of gender or sexual discrimination, sexual harassment or retaliation.

- Request No. 23: All documents referring or relating to or reflecting or constituting allegations of misconduct by Zainab Chaudry . . . .

---

[4] CAIR Action Network, Inc. and Council on American Islamic Relations Action Network, Inc., are no longer in existence. (*Id.* ¶ 23.)

- Request No. 32: All documents referring or relating to or listing or reflecting the names of every contributor to CAIR in an amount over $5,000 for any year from 2014 through 2022.

- Request No. 33: All documents referring or relating to or reflecting or constituting contributions to CAIR, or any CAIR affiliate, by any individual or entity within, or any governmental unit of, Saudi Arabia, Qatar or Kuwait between 2007 and 2014.

- Request No. 34: All documents referring or relating to or reflecting the acquisition by CAIR or any CAIR affiliate of property located at 921 2nd Street NE in Washington, D.C., including the sources of the funding for such acquisition.

- Request No. 35: All documents referring or relating to or reflecting the exchange, transfer or division of assets between or among CAIR Foundation, CAIR, Inc., CAIR Action Network and the Washington Trust Foundation, including but not limited to a loan totaling $1 million from CAIR, Inc. to CAIR Foundation disclosed in a Form 1023 filing.

- Request No. 36: All documents referring or relating to or reflecting or constituting any version of CAIR's Whistleblower Policy and Document Retention Policy as required under the Sarbanes-Oxley Act.

- Request No. 37: All documents referring or relating to or reflecting or constituting any report, analysis, or recommendations provided by any consulting or other outside firm relating to CAIR governance or management commissioned or received during the tenure of CAIR Board Chair Parvez Ahmed, and all documents referring or relating to or reflecting discussions between or among members of the Board of Directors relating to the same.

- Request No. 38: All documents referring or relating to or reflecting or constituting allegations of misconduct by Hassan Shibly.

- Request No. 40: All documents referring or relating to or reflecting or constituting communications with, or in any way regarding, Karen Leslie Hernandez.

- Request No. 41: All documents referring or relating to or reflecting or constituting communications with, or in any way regarding, Mariam Amer.

(ECF 35-3, 35-4.)

Ms. Saroya does not meet her burden to establish these Group 2 Requests are relevant. She argues these Requests relate to allegations **she** made against CAIR. She argues, in turn, that because CAIR's 2021 complaint included a defamation claim, and CAIR's 2022 press release claimed the 2021 action allowed CAIR to "prove [Saroya's] conduct," she is entitled to every document related to allegations she has made against CAIR.

First, Ms. Saroya's argument ignores the press release, which specifies the "conduct" CAIR alleged it was able to confirm during the 2021 lawsuit: "the litigation had already allowed us to prove her conduct: working with Islamophobes, sending hundreds of anonymous emails in the middle of the night attacking our civil rights organization, harassing us and our supporters on social media, among many other things." (ECF 1-1, at p. 44.) Ms. Saroya does not limit her discovery to the issues CAIR raised. Instead, she argues that because CAIR used the words "prove her conduct," she is entitled to discovery related to any allegation she has ever raised because such behavior is included in the "conduct" CAIR referred to in its press release.

Second, Ms. Saroya argues the Group 2 Requests relate to CAIR's "motives in commencing the 2021 litigation and issuing the Press Release." There is no claim or defense in this case based on CAIR's alleged motive for commencing the 2021 litigation. Ms. Saroya's motive and malice argument fails for the reasons described above. Moreover, her argument fails because, aside from repeating her general allegation that CAIR is retaliatory, Ms. Saroya makes no effort to connect her "motive" argument to the discovery she seeks. As examples, Ms. Saroya does not explain how CAIR's alleged motive for

19

issuing the 2022 press release makes relevant CAIR's entire donor list, contacts with foreign governments, documents related to various other employees without any connection to Ms. Saroya, or the Sarbanes-Oxley Act.

### b. CAIR'S Objections to the Group 2 Requests are Valid.

CAIR objected to the Group 2 Requests as overbroad, not proportional, and unduly burdensome, among other more specific objections. These objections are valid.

First, most of the Group 2 Requests have no time or geographic limitation. They seek documents across all CAIR affiliates and chapters for the time period spanning many years—if not decades—before CAIR published the 2022 press release. These Requests are overbroad and not proportional.

As one glaring example, Ms. Saroya's Request Nos. 19, 20, 21, 22, 23, 38, 40, and 41, and Interrogatory Nos. 10, 11, 15, and 17 seek documents and communications related to prior acts and complaints of discrimination across all CAIR chapters for more than eight years. However, the Eighth Circuit has affirmed orders limiting discovery in discrimination cases to "complaints filed no more than one year before the actions at issue here." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005). Similarly, courts limit discovery of complaints to those filed by employees in the same "department." *Id.*; *Burns v. Hy-Vee, Inc.*, No. 02-CV-254 (JRT/FLN), 2002 WL 31718432, at *2 (D. Minn. Nov. 21, 2002).

As to the types of discoverable complaints, courts have explained discovery "must be limited to the practices at issue in the case and, where an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should be limited to employees who are similarly situated to the [p]laintiff." *Jackson v.*

*Minn. Dep't of Human Servs.*, No. 20-CV-749 (KMM/TNL), 2022 WL 1261690, at *7 (D. Minn. Apr. 28, 2022) (citations omitted). Here, Ms. Saroya has no discrimination claim, but nonetheless seeks discovery that far exceeds the permitted scope in cases where discriminatory practices are actually at issue. Indeed, Hassan Shibly, Karen Leslie Hernandez, and Mariam Amer—three specific individual about whom she seeks discovery—were never CAIR employees. She offers no support for her argument that this immense scope of discovery is relevant. Moreover, as described below, these Requests seek sensitive personnel information from non-parties. No issue at stake justifies producing such sensitive information and documentation.

Second, Ms. Saroya seeks a wide array of deeply sensitive personal and financial information regarding CAIR and its non-party donors, including every donation made to CAIR since 2014; all documents regarding contributions by donors from Saudi Arabia, Qatar, or Kuwait; funding for property located in Washington D.C.; financial exchanges between CAIR and other non-parties; among others. Ms. Saroya's sole attempt to establish relevance is that she had publicly accused CAIR of receiving foreign funding and of financial mismanagement, and CAIR sued her for defamation in 2021. This argument is absurd. There is no language in CAIR's press release which could remotely be construed to relate to or justify discovery regarding these issues. To the extent she argues there is no harm in disclosing this information because there is a protective order in place, this does not minimize the private nature of the information requested, much less establish relevance. For example, in *Raddatz v. Standard Register Co.*, the court denied a motion to compel personnel non-party employee information, explaining:

4245266.v2

> Furthermore, we respectfully disagree with those Courts which have appeared to suggest that the privacy concerns of non-party employees can be adequately placated by the production of their files under the terms of a Confidentiality Order. . . . In our considered view, the very act of disclosing an employee's sensitive and personal data is a highly, and frequently, an unnecessarily intrusive act—whether or not that disclosure is governed by the terms of a Confidentiality Order. The intrusiveness of the act rests in disclosure to anyone, and the fact that the information may not be openly publicized brings little comfort to the co-employee, whose most private confidences are needlessly divulged. In our view, to order the production of such non-party employee files—even under the restrictions of a Protective Order—is not a step which the Court should lightly undertake.

177 F.R.D. 446, 447-48 (D. Minn. 1997). This principle applies even more directly to information about donors to a religious organization—many under the express representation that their information would be kept strictly confidential. Indeed, such disclosure itself infringes on donors' freedoms of speech and association. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021).

Additionally, as to Ms. Saroya's "foreign donation" argument, no discovery is needed on this issue. Even there was any marginal relevance of this documentation (there is no), there is no need for such documentation because it is undisputed, and public knowledge, that CAIR in some circumstances has received funding from overseas sources. *Dispelling Rumors About CAIR*, CAIR, available at https://www.cair.com/dispelling-rumors-about-cair/ (last visited Aug. 1, 2024).

Ms. Saroya has not met her burden to prove the Group 2 Requests are relevant. Even if marginally relevant, her Motion must be denied because these Requests are overbroad, unduly burdensome, not proportional, and seek confidential information belonging to non-parties.

## V.    <u>Interrogatory No. 14.</u>

Interrogatory No. 14 states: "Please identify every email account, social media account, YouTube account, and Internet address used by CAIR since 2011." (ECF 35-3, p. 6.) Ms. Saroya argues this information is relevant because it may disclose "potential source[s] from which CAIR and/or its agents may have published defamatory matter relating to Saroya." (ECF 34, at p. 17.)  Again, the "defamatory material" at issue in Ms. Saroya's complaint, and on this Motion, is that material included in CAIR's 2022 press release. CAIR agreed to produce all documents in its possession, custody, or control which reflect or constitute transmission by CAIR of the 2022 Press Release to anyone. (ECF 35-5, at p. 7.) This Interrogatory includes every single email address used by any employee of CAIR or any CAIR chapter. There is no basis to compel CAIR to identify hundreds (if not thousands) of email addresses and other accounts used by CAIR or its employees, especially since these accounts are completely unrelated to the publication of CAIR's 2022 press release.

## <u>CONCLUSION</u>

Based on the foregoing, CAIR respectfully requests the Court deny Plaintiff Lori Saroya's Motion in its entirety.

4245266.v2

**FELHABER LARSON**

Date:   August 2, 2024                    */s/ Zachary A. Alter*
                                          Sara G. McGrane (#0233213)
                                          Zachary A. Alter (#0399991)
                                          220 South 6th Street, Suite 2200
                                          Minneapolis, MN  55402
                                          612-339-6321
                                          *smcgrane@felhaber.com*
                                          *zalter@felhaber.com*
                                          **ATTORNEY FOR DEFENDANT**

24