## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lori Saroya,

      Plaintiff,

v.

CAIR Foundation, Inc.,

      Defendant.

Case No. 24-cv-110 (DWF/DTS)

**ORDER**

## INTRODUCTION

Plaintiff Lori Saroya (Saroya) moves to compel discovery from Defendant CAIR Foundation, Inc. (CAIR)[1] and its affiliated regional non-profit organizations. The parties' discovery dispute, arising as it does at the very beginning of the litigation, reveals a fundamental disagreement as to the scope of this case which the court must first resolve. Saroya believes her claims make the case quite broad; CAIR believes her allegations are narrow and technical. Though neither party's conclusions as to the scope of discovery are entirely correct, Saroya's understanding of the breadth of her case is by far the more accurate. Because Saroya's allegations raise claims that define a broad scope of discovery, her motion to compel is granted with limited exceptions.

## FACTS

### I. Background

CAIR is a Muslim civil rights organization in Washington, D.C. that has twenty-six affiliates across the country, including CAIR Minnesota. Decl. Steven C. Kerbaugh

---

[1] This Order will refer to Defendant as CAIR. References to affiliated organizations will either identify the affiliate specifically, or when referring to affiliate entities generally will refer to "the affiliates."

Supp. Pl. Lori Saroya's Mot. Compel Ex. 1 ¶ 1, Dkt. No. 35 [hereinafter Kerbaugh Decl.].
Saroya worked as the Executive Director of CAIR Minnesota from 2007 until 2016. *Id.*
¶¶ 30–31; Compl. ¶¶ 22–23, Dkt. No. 1. In 2016, Saroya joined CAIR as the National
Chapter Development Director and a member of its Board of Directors. Kerbaugh Decl.
Ex. 1 ¶¶ 31–33; Compl. ¶ 22–24. She resigned in 2018. Kerbaugh Decl. Ex. 1 ¶ 51;
Compl. ¶ 36.

After her resignation, Saroya took to the internet accusing CAIR of various
misconduct. Among other things, Saroya accused CAIR of discrimination, harassment,
retaliation, union busting, financial mismanagement, lack of board oversight, board
incompetence, creating a hostile work environment, negatively portraying Muslims,
making mistakes on legal cases, receiving foreign funding, and withholding money it
owed her. *See e.g.*, Kerbaugh Decl. Ex. 1 ¶¶ 79, 116, 119; Compl. ¶ 42. Neither party
disputes that Saroya made these accusations.

In 2021, CAIR sued Saroya for defamation, defamation per se, tortious
interference with business relationships, and breach of contract.  Kerbaugh Decl. Ex. 1
¶¶ 166–99. Shortly after the 2021 litigation concluded, CAIR issued a press release
discussing Saroya and the 2021 litigation. Compl. ¶ 68, Ex. 4. Saroya now sues CAIR
for defamation and intentional infliction of emotional distress (IIED) for statements it
made in that press release. *Id.* ¶¶ 100–16. Because this action expressly implicates the
prior lawsuit, a proper understanding of the scope of permissible discovery in this
lawsuit requires an understanding of the claims and allegations in the 2021 litigation.

A.    The 2021 Litigation

1.    CAIR's Complaint

In its complaint against Saroya, CAIR alleged the following. When Saroya joined CAIR in 2016, she signed a Confidentiality and Nondisclosure Agreement acknowledging she would not use CAIR's confidential information without authorization and would return all such information when her employment ended. Kerbaugh Decl. Ex. 1 ¶¶ 34–36. The agreement expressly identified certain types of confidential information, such as CAIR's donor or supporter information, and defined confidential information generally as "any other valuable information or practices of CAIR." *Id.* ¶ 35, Ex. B.

After Saroya resigned from CAIR in 2018, she allegedly embarked on a "defamation campaign," making false accusations against CAIR via email, social media, blogs, and the comment section of online articles. *Id.* ¶ 52. Saroya emailed CAIR affiliates stating that CAIR improperly withheld grant funding from them. *Id.* ¶ 57. On Facebook postings Saroya accused CAIR of abuse, gender discrimination, religious discrimination, sexual harassment, retaliation, workplace hostility, union busting, financial mismanagement, lack of board oversight, board incompetence, tokenism, using donor funds to pay for attorneys to suppress and silence employees, making mistakes on legal cases, negatively portraying Muslims, and improperly withholding money it owed her. *Id.* ¶¶ 70–94, 102–34 (identifying numerous separate Facebook posts and messages that include the same or related accusations). Saroya sent some of these Facebook posts and messages to CAIR's partners, donors, and religious leaders. *Id.* ¶¶ 127–34. She also left comments on internet articles, stating that CAIR

3

engaged in "sexual abuse and exploitation," "financial abuse and mismanagement," and received "international funding through their Washington Trust Foundation," implying that CAIR had received funding from foreign governments or terrorists. *Id.* ¶¶ 119, 122. She also emailed CAIR's supporters, donors, and partners accusing CAIR of failing to investigate issues at the organization and imploring her audience not to partner with CAIR. *Id.* ¶¶ 139–61.

CAIR alleged Saroya's statements damaged it by causing a decrease in the organization's funding, as well as a loss of partners, donors, and religious leaders. *Id.* ¶¶ 162–63. CAIR sued Saroya for defamation, defamation per se, tortious interference with business relationships, and breach of contract. *Id.* ¶¶ 166–99.

CAIR alleged Saroya's online accusations of, "*inter alia*, failing to pay her wages, committing systemic abuses against its employees, failing to investigate claims of abuse, committing financial misconduct, and other business torts" were defamatory. *Id.* ¶¶ 166–82. It alleged Saroya was liable for defamation per se because she published false accusations of business misconduct, professional misconduct, and criminal activity such as "sexual abuse and exploitation" and "financial exploitation." *Id.* ¶¶ 183–87. CAIR claimed Saroya tortiously interfered with its business relationships by "using her defamatory communications to induce CAIR's partners, donors, and religious leaders . . . to discontinue their existing relationships with CAIR." *Id.* ¶ 190. Relatedly, CAIR alleged Saroya breached the Confidentiality and Nondisclosure Agreement "by retaining CAIR's Confidential Information post-employment and using that Confidential Information to send targeted defamatory communications to CAIR's donors." *Id.* ¶ 198.

### 2.    Resolution of the 2021 Lawsuit

Saroya moved for partial judgement on the pleadings as to CAIR's claims of defamation, defamation per se, and tortious interference with business relationships. Compl. ¶ 60, Ex. 1 at 5–6. In relevant part, she argued the defamation claims were time barred, were based on non-actionable statements, and that CAIR had failed to identify the actionable statements with specificity. *Id*. Ex. 1 at 5.

The Court denied Saroya's motion, ordering CAIR to file an amended complaint to specifically identify the actionable defamatory statements at issue. *Id.* at 24–26, 31. The Court explained that "what is actionable and not actionable is not clear at all from the face of the complaint," and it directed CAIR to clarify which statements it believed were actionable, separating those out from statements of opinion or statements outside the statute of limitations.  *Id.* at 24–27. Instead of filing an amended complaint, however, CAIR voluntarily dismissed its case with prejudice. *Id.* ¶ 65. The Court dismissed the lawsuit on January 11, 2022. *Id.* ¶ 66.

### B.    The Current Litigation

### 1.    The Press Release

On January 20, 2022—less than ten days after dismissal of the 2021 litigation—CAIR issued a press release titled: "Community Update on Cyberstalking by Lori Saroya, Ex-Staffer." *Id.* Ex. 4. It described "a situation that CAIR has been working to resolve for some time"—namely, Saroya's use of email and social media to "cyberstalk, smear, and undermine" the organization, its affiliates, and its members.  *Id.*

In relevant part, the press release described how Saroya began "attacking" CAIR through email and social media after her resignation. *Id.* CAIR explained, "After

enduring this obsessive and destructive cyberstalking for years, we decided to file a defamation lawsuit against [Saroya] in 2021 to expose the truth and protect our team in a court of law, where the truth matters." *Id.* CAIR went on to state, "[Saroya] was not able to defeat our lawsuit" and "the judge overseeing the case ruled in our favor and denied [Saroya]'s motion to dismiss our lawsuit" *Id.* CAIR asserted that even though it could have moved forward with the case, it decided to dismiss the matter in part because:

> [T]he litigation had . . . allowed us to prove her conduct: working with Islamophobes, sending hundreds of anonymous emails in the middle of the night attacking our civil rights organization, harassing us and our supporters on social media, among many other things. She did not deny any of these claims in her response to our lawsuit, so we have already proven those facts.

*Id.*

### 2.    Saroya's Claims

Saroya claims CAIR's press release is false and defamatory and its issuance constitutes intentional infliction of emotional distress.

First, Saroya alleges CAIR falsely accused her of "cyberstalking" in three separate instances—once in the title, and twice in the body of text. *Id.* ¶¶ 68–75. She maintains that because "cyberstalking" is a crime under both federal and state law, the statements are statements of fact that are verifiably false. *Id.* ¶ 75.

Second, Saroya alleges CAIR falsely portrayed the judge's ruling on her motion to dismiss the 2021 litigation when it wrote, "[Saroya] was not able to defeat our lawsuit. A few weeks ago, the judge overseeing the case ruled in our favor and denied [Saroya's] motion to dismiss our lawsuit." *Id.* ¶ 78. She argues the judge in the 2021

litigation did not "rule in CAIR's favor" because the judge identified deficiencies in the complaint but permitted CAIR to file an amended complaint to redress these deficiencies. *Id.* ¶ 79.

Third, Saroya alleges CAIR falsely characterized the outcome of the 2021 litigation when it wrote that the lawsuit "had already allowed us to prove her conduct" and that CAIR had "proven those facts." *Id.* ¶ 80, Ex. 4. Saroya alleges this statement communicates that CAIR had proven its allegations against her, including that her accusations about CAIR—which were the issue in the 2021 litigation—were false and defamatory and that she harassed the organization's members. *See* Pl. Lori Saroya's Mem. Supp. Mot. Compel 13, Dkt. No. 34 [hereinafter Pl.'s Mem.]. As Saroya's counsel argued at the hearing on this motion, these statements, read in the context of the entire press release, may be fairly understood to allege that CAIR had won its lawsuit against Saroya on the merits—that its allegations had been proven and that the court in fact found that Saroya had defamed CAIR, tortiously interfered with its business relations and engaged in the crime of cyberstalking.

Saroya alleges that issuance of the defamatory press release also constitutes extreme and outrageous conduct that passes the bounds of decency in a civilized community. Compl. ¶¶ 111–12. She claims she has had to seek mental health treatment to cope with the severe effects of the press release, which no reasonable person should be expected to endure, and that CAIR's decision to issue the press release thus constitutes IIED. *See Id.* ¶¶ 110–16.

### 3.    CAIR's Defenses

CAIR asserts nineteen affirmative defenses to Saroya's claims. Answer Compl. 10–11, Dkt. No. 23 [hereinafter Answer]. These defenses relate to procedural requirements, the sufficiency of Saroya's complaint, the elements of Saroya's claims, and the damages she seeks. *Id.* Most relevant to this discovery dispute, CAIR asserts several defenses based on privilege and asserts that Saroya must (but cannot) demonstrate constitutional and/or common law malice.

## II.    The Motion to Compel

Saroya now moves to compel discovery related to the issuance of the press release and the merits of the 2021 litigation. These requests fall into five broad categories.[2]

- **Group 1: Saroya, the Press Release, and the 2021 Litigation Generally**
    - Document Requests #1-4, 8, 10-16, 18, 24-25, 39
    - Interrogatories #4, 12-13

The requests in this group seek documents and communications relating to Saroya, the press release, and the 2021 litigation from a variety of sources, including board meeting agendas, statements by board members, officers, directors, and employees, communications CAIR had with affiliates, donors, media outlets, firms, and consultants, and public statements such as social media posts. Plaintiff also specifically requests her personnel file, comments on her job performance, and complaints other officers or employees filed against her.

---

[2] Appendix A lists the discovery requests in full.

- **Group 2**: **Saroya's Statements Against CAIR as Alleged in the 2021 Complaint**
  - Document Requests #19-23, 32-38
  - Interrogatories #10-11, 15-16, 19

The requests in this group seek documents and interrogatories that would tend to prove the truth or falsity of Saroya's accusations of misconduct against CAIR and its affiliates which CAIR alleged in its 2021 lawsuit constituted defamation. For example, the requests seek documentation related to claims of discrimination, harassment, retaliation, and other misconduct at as well as investigations into those claims. They seek information on donors, funding sources, and asset ownership. They cover policies for whistleblowing and document retention. They seek reports and discussions about CAIR's governance and information on lawsuits CAIR filed and legal agreements it joined.

- **Group 3**: **Named Individuals Who Made Claims Against CAIR**
  - Document Requests #40-41

These requests seek documents concerning two named individuals who made accusations against CAIR.

- **Group 4**: **Legal and Administrative Proceedings Against CAIR and Its Officers, Directors, and Employees**
  - Interrogatories #17-18

These requests seek the identity of civil, criminal, and administrative matters involving CAIR or its officers, directors, and employees.

- **Group 5**: **CAIR's Means of Communications**
  - Interrogatory #14

Group 5 contains one request for the identity of CAIR's email addresses, social media accounts, and internet addresses.

## ANALYSIS

### I.      Legal Standard

Federal Rule of Civil Procedure 26(b)(1) entitles parties to obtain discovery regarding nonprivileged matters that are both "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is defined broadly and "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Even if information is relevant, however, it is beyond the scope of permissible discovery if it is disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). When determining whether discovery is proportional to the needs of a case, a court considers, among other things, "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

### II.      The Substance of the 2021 Litigation

Saroya's claims for defamation and IIED arise from CAIR's issuance of the press release and the statements made therein. Compl. ¶¶ 100–09. To prevail on a defamation claim, a plaintiff must show: (1) a defamatory statement of fact about the plaintiff was communicated to a third party, (2) the statement was false, and (3) the statement harms the plaintiff's reputation and estimation in the community. *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018). If the statement is protected by a qualified privilege, a plaintiff would also have to show the

defendant acted with malice.[3] To prevail on an IIED claim, a plaintiff must show the defendant's conduct was (1) extreme and outrageous, (2) intentional or reckless, and (3) the cause of the emotional distress for the plaintiff, which in turn (4) was severe. *Williams v. Nat'l Football League*, 582 F.3d 863, 882 (8th Cir. 2009).

Because Saroya's claims are based on CAIR's press release concerning the 2021 litigation, the scope of discovery in this case depends on that press release. Because Saroya alleges the press release falsely portrayed the merits and outcome of the 2021 litigation, the scope of discovery in turn depends on Saroya's allegedly defamatory allegations that were the heart of the 2021 litigation. In the press release CAIR communicated that it had proven its allegations that Saroya defamed it by falsely and publicly accusing it of gender discrimination, religious discrimination, sexual harassment, retaliation, workplace hostility, union busting, financial mismanagement, lack of board oversight, board incompetence, tokenism, financial abuse and mismanagement, withholdings funds meant for affiliates, and withholding wages, Kerbaugh Decl. Ex. 1, and that, as a result of making these statements, Saroya tortiously interfered with CAIR's business relationships and violated her confidentiality and nondisclosure agreement. *Id.* ¶¶ 166–99. In this case, Saroya's burden of proving the falsity of CAIR's press release requires delving into the truth or falsity of Saroya's statements that gave rise to the 2021 litigation. In short, CAIR's press release has opened the door to litigating—and thus discovering—the merits of the 2021 litigation.

Discovery into the merits of the 2021 litigation encompasses the strength of CAIR's position in that lawsuit and the accuracy of Saroya's statements about CAIR.

---

[3] Malice and its relevance to the scope of discovery is discussed further below.

This is especially broad considering the posture of the prior lawsuit when it ended. Because it was not clear from the face of CAIR's complaint which precise statements it alleged constituted defamation or defamation per se,[4] the scope of discovery as it relates to the veracity of CAIR's defamation claims is defined by the complaint that was never amended. Additionally, discovery into the strength of CAIR's non-defamation claims—that is, whether Saroya tortiously interfered with business relationships or breached her contract—is also appropriate in this action. It gets worse.

CAIR asserts as an affirmative defense that Saroya's claims are barred by, inter alia, qualified privilege. A qualified privilege arises "when a court determines that 'statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.'" *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997) (quoting *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986)). For qualified privilege to apply, a statement "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Id.* (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn. 1980)). A plaintiff can overcome a qualified privilege by showing malice. *Id.* at 148–50. CAIR's affirmative defenses expressly implicate both common law and actual (i.e. constitutional) malice.[5] The scope of discovery thus

---

[4] The judge overseeing the case denied Saroya's motion to dismiss and permitted CAIR to amend its complaint to specifically identify the actionable statements. Compl. Ex. 1, at 24–27, 30.

[5] CAIR's eighth affirmative defense explicitly states Saroya's claims are barred because she cannot show actual malice. Answer at 10. CAIR's fourth affirmative defense asserts Saroya's claims are barred by qualified privilege. *Id.* While qualified privilege may arise from the Constitution and require the plaintiff to show actual malice to prevail, *see e.g.*, *Herbert v. Lando*, 441 U.S. 153, 156 (1979), qualified privilege may also arise under the

necessarily extends to matters that show whether CAIR acted with common law or actual malice.

Common law malice exists when the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn. 1980) (quoting *McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 183 N.W. 516, 517 (1921)). In other words, common law malice focuses on the reason the defendant made the statement. Evidence of the relationship between the parties—such as a strained relationship—can support a showing of ill will or an improper motive. *See id.* at 258 (describing how personality conflicts and hostility between people can support a finding of common law malice). Thus, the nature and history of the relationship between CAIR and Saroya is directly relevant and discoverable. CAIR has made it so.

Actual malice exists when a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Herbert v. Lando*, 441 U.S. 153, 156 (1979) (*quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Reckless disregard exists where the speaker is highly aware of the probable falsity of the statements or has serious doubts about the statements' truth. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). A plaintiff can establish actual malice through any direct or circumstantial evidence so long as it is "not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility

---

common law and require the plaintiff to show common law malice, *see e.g.*, *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn. 1980).

between the parties, . . . . or that defendant had failed to make a proper investigation before publication of the statement in question." *Herbert*, 441 U.S. at 164 n. 12 (1979). While a plaintiff cannot prove actual malice "merely through a showing of ill will," *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 666 (1989), or a failure to investigate a publication before issuing it, such circumstantial evidence may nonetheless support a showing that the defendant made a statement knowing it was false or in reckless disregard of its truth. *Cf. Id.* at 668 ("Although courts must be careful not to place too much reliance on such factors, . . . it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry."). The scope of discovery in this case thus encompasses any matter that bears on CAIR's knowledge about the truth of its statements in the press release at the time it published them, including what it knew about Saroya from their years of interactions as well as a wide range of other similar circumstantial evidence. Such evidence necessarily includes the parties' historical relationship.

Moreover, malice is relevant to Saroya's burden of proof on her claim of IIED. An IIED claim requires showing a defendant "intend[ed] to cause severe emotional distress or proceed[ed] with the knowledge that it is substantially certain, or at least highly probable, that severe emotional distress will occur." *Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 875 (D. Minn. 2015) (alterations in original) (quoting *K.A.C. v. Benson,* 527 N.W.2d 553, 560 (Minn.1995)). CAIR's motive in publishing the press release speaks to its intent towards Saroya. So, too, would CAIR's knowledge or reckless disregard of falsity its statements in the press release. The nature of the parties' relationship with one another is relevant to the issue of malice, which in turn is

relevant to the issue of intent. Thus, the entirety of the parties' history is once again within the heart of discovery.

CAIR argues the scope of discovery is narrowly limited by its press release, and that permissible discovery may not delve into the merits of the 2021 litigation. *See generally* Def.'s Mem. Law Opp'n Pl.'s Mot. Compel 2, Dkt. No. 39 [hereinafter Def.'s Mem.] ("This case is not the 2021 lawsuit. . . . Saroya seeks to blur the lines between the 2021 and current lawsuits . . . ."). CAIR's position is far too narrow. Its argument might be more persuasive had the press release merely stated that the judge in the 2021 litigation denied Saroya's Motion to Dismiss without prejudice and meticulously conveyed the procedural significance of that ruling.  But CAIR did not do that. Instead, CAIR stated that "[Saroya] was not able to defeat our lawsuit. . . .[which] allowed us to prove her conduct," and that "we have already proven those facts." A fair reading of the press release, particularly by a lay audience, would permit the reader to infer that Saroya had committed a crime, had defamed CAIR, had interfered with its business and breached her nondisclosure agreement. Though CAIR objects to the broad discovery Saroya seeks, that breadth is a self-inflicted wound occasioned by its own press release. In commenting on the merits of the 2021 lawsuit in the manner in which it did, CAIR resuscitated the very issues that had just been laid to rest.

CAIR conclusorily asserts that nearly all of Saroya's discovery requests are overbroad, not proportional, and unduly burdensome. *Id.* at 15, 17, 20, 22. These "boilerplate objections" to proportionality are not a sufficient challenge; the party resisting discovery must specify how each request "is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery

request." *Lubrication Techs., Inc. v. Lee's Oil Serv.*, LLC, No. 11-2226, 2012 WL 1633259, at *5 (D. Minn. Apr. 10, 2012); *see also Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."). At the same time, however, CAIR makes several specific arguments regarding the proportionality, breadth, and burden of certain requests.[6]

CAIR argues that most of the discovery requests in Groups 2, 3, and 4 lack a temporal or geographic limitation—reaching back many years before CAIR issued the press release and extending to CAIR's affiliates[7]—and thus are overbroad and not proportional. Def.'s Mem. 20. By way of example, CAIR suggests that requests for information on complaints of discrimination are beyond the scope of discovery because they seek more than eight years of information, when courts in the past have limited discovery in discrimination cases to complaints filed within one year. *Id.* This argument is unpersuasive. As CAIR plainly acknowledges, this is not a discrimination case. *Id.* at 21. At issue is not a particular instance of discrimination at CAIR, but Saroya's accusations about discrimination at CAIR generally. Since the truth of Saroya's statements that were at issue in the 2021 litigation is directly at issue in this case, discovery necessarily spans many years and extends to CAIR's affiliates. Because this

---

[6] Some of CAIR's arguments confuse proportionality with relevance. *See* Def.'s Mem. 15 (arguing no claim or defense puts at issue day-to-day documents and communications about her); *Id.* at 21 (arguing Saroya failed to establish the relevance of discovery on personal and financial information). These matters implicate the relationship between the parties and the merits of the 2021 litigation, which, as previously discussed, are well within the scope of discovery.

[7] CAIR also argues Saroya's definition of CAIR, which includes the affiliates, imposes an undue burden. Def.'s Mem. 16. This argument is addressed below.

discovery is highly relevant and CAIR has made no showing of undue burden the Court finds it is proportionate to the needs of the case.

CAIR also argues that discovery is disproportional to the extent it bears on Saroya's accusation that CAIR received foreign funding because it is public knowledge that CAIR has received foreign funding. *Id.* at 22. In support of its argument, CAIR refers to a page on its own website titled "Dispelling Rumors about CAIR," where CAIR acknowledges it previously received foreign financial support. *Id.*; *see also Dispelling Rumors About CAIR*, CAIR, https://www.cair.com/dispelling-rumors-about-cair/ (last visited Nov. 21, 2024). Yet the thrust of CAIR's allegations against Saroya in the 2021 complaint is that Saroya falsely implied CAIR received funding from foreign governments and terrorists when she stated CAIR accepted "international funding through their Washington Trust Foundation." Kerbaugh Decl., Ex. 1 ¶¶ 119–20. CAIR points to no public admission that it received funding from terrorists or that it received funding through the Washington Trust Foundation. Discovery into these matters is proportionate to the needs of the case.

Broad discovery into the history and relationship between the parties and the truth of Saroya's allegedly defamatory statements against CAIR is proportionate to the needs of this case. This discovery is highly important to resolving issues in this case concerning the truth of CAIR's statements in the press release and CAIR's malice (or lack thereof) in issuing it. CAIR is uniquely positioned to access relevant information on the strength of its claims in the 2021 lawsuit and its subjective knowledge about the veracity of the press release. CAIR has not shown that the burden or expense of the

proposed discovery outweighs its likely benefit, or that it unwarrantedly taxes its resources.

## III.   Application of the Scope of Discovery to the Requests at Issue

### A.   Group 1 Requests

Communications about Saroya, the press release, and the 2021 litigation are well within the scope of discovery because they bear directly on Saroya's claims and CAIR's defense of absence of malice. Communications about Saroya are clearly relevant to malice as they reflect the relationship between the parties, including any indications of ill will between them, and what CAIR knew about Saroya at the time it published the press release. Communications about the press release and the 2021 litigation are likewise relevant to assessing CAIR's motive or state of mind in publishing its statements, such as why it decided to issue the press release and its knowledge of its truth or falsity.

### B.   Group 2 Requests

Documents relating to Saroya's statements against CAIR as alleged in the 2021 complaint are likewise well within the scope of the discovery because CAIR's press release directly raised the merits of the 2021 litigation. CAIR alleged Saroya falsely accused the organization of withholding funds, gender and religious discrimination, sexual harassment, workplace hostility, retaliation, union busting, financial mismanagement, improper management, legal misconduct, receipt of foreign funding, and use of attorneys to suppress and silence employees. *See, e.g.*, Kerbaugh Decl., Ex. 1 ¶ 79, 109, 119. Whether these accusations were true bears directly on whether CAIR falsely stated the 2021 litigation had allowed it "to prove Saroya's conduct."

### C.    Group 3 Requests

Documents about and communications with individuals who made claims or allegations against CAIR are beyond the scope of discovery because they do not reasonably bear on malice or the merits of the 2021 litigation. The requests in this group are about *individuals* who made claims against CAIR. Pl.'s Mem. 15. They do not focus on the claims themselves, which might be relevant to the merits of the 2021 lawsuit if they corroborated Saroya's accusations against CAIR and tended to prove the truth of her allegedly false statements. Nor do discovery requests about other individuals bear on the issue of malice, which concerns CAIR's motive for publishing the press release about Saroya and the relationship between them. Thus, the Group 3 requests are not within the scope of discovery.

### D.    Group 4 Requests

The identity of civil, criminal, and administrative proceedings against CAIR are generally within the scope of the discovery, except to the extent they seek information about employees. As written, these requests seek information on legal and administrative proceedings against CAIR and its directors, officers, and employees. In the 2021 complaint, CAIR alleged Saroya defamed it when she accused CAIR of civil and criminal misconduct. *See e.g.*, Kerbaugh Decl., Ex. 1 ¶¶88–89. Discovery on legal and administrative proceedings is relevant to the truth of Saroya's allegedly defamatory statements, and to the merits of the 2021 lawsuit, but only to the extent the requests relate to CAIR itself rather than individual employees. The Group 4 requests are therefore within the scope of discovery to the extent they seek information pertaining to CAIR and its directors or officers, whose knowledge may, in certain circumstances, be

imputed to the organization. *See e.g. St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 700 (8th Cir. 1992) (explaining that "the corporate officer's knowledge may be imputed to the corporation" when the officer is "acting within the scope of his or her duty").

### E.   Group 5 Request

The identity of CAIR's internet accounts and email addresses are not within the scope of discovery because they do not bear on malice or the merits of the 2021 litigation. The single interrogatory in Group 5 states: "Please identify every email account, social media account, YouTube account, and Internet address used by CAIR since 2011." Kerbaugh Decl., Ex. 3 at 6. Although web-based accounts themselves may contain relevant information, the identity of each and every account and address in an organization with numerous affiliates around the country is not tailored to the needs of this case or implicated within the scope of discovery. The identity of accounts and addresses does not bear on the relationship between the parties, nor on the truth or falsity of any allegations CAIR made against Saroya in its 2021 complaint. Thus, the Group 5 request is not within the scope of discovery.

### F.   Definition of CAIR

In addition to the substance of the discovery requests, Saroya's request also raises an issue of how broadly CAIR is defined for the purposes of responding to the requests. Saroya proposes a broad definition of "CAIR" that includes the CAIR Foundation, Inc. as well as its affiliates. Kerbaugh Decl., Ex. 2 at 4. CAIR argues that "CAIR" should be defined narrowly to apply only to CAIR Foundation, Inc. Def.'s Mem. 16.

The appropriate definition of "CAIR" is shaped by the requests in each category. A broad definition of "CAIR" that includes its affiliates is relevant and proportional for the Group 1 requests. Documents and communications from the affiliates about Saroya, the press release, and the 2021 litigation are highly important to proving Saroya's claims and locating evidence bearing on CAIR's malice, which properly includes circumstantial evidence. Meanwhile, the discovery requests in Group 2 and Group 4 bear on the alleged falsity of Saroya's statements in the 2021 litigation, and thus a proportional definition of "CAIR" extends only to the specific entities about which Saroya made express accusations in her allegedly defamatory statements.

Discovery pertaining to CAIR's affiliates is proportional to the extent CAIR has "possession, custody, or control" of the material. Fed. R. Civ. P. 34(a)(1). While CAIR argues it does not have a contractual or legal basis to access the requested documents, Def.'s Mem. 16, neither is strictly necessary. A party also has control when "that party has the right, authority, or practical ability[] to obtain the documents from a non-party to the action." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.,* 171 F.R.D. 135, 146 (S.D.N.Y.1997)). If CAIR is "capable of obtaining upon demand" the discovery sought, it must do so.[8] *Id.*

---

[8] Nor may CAIR (or its counsel) evade this obligation by suggesting to its affiliates (or their counsel) that they need not supply the information requested. If an affiliate has a bona fide basis on which to decline to provide the information it may raise that objection. However, CAIR and its affiliates are cautioned that raising improper or bad faith objections may subject them to the imposition of appropriate sanctions.

**CONCLUSION**

The scope of discovery in this case is broad because Saroya raises broad claims and CAIR asserts expansive defenses. Saroya's claims of defamation and IIED focus on the alleged falsity of statements CAIR made in its press release. The statements at issue describe Saroya's online activity after her resignation from CAIR as cyberstalking, and they imply CAIR's allegations against her in the 2021 litigation were substantiated and successful in court. Because the truth or falsity of the statements in the press release is directly at issue, and because determining that truth or falsity depends on delving into the merits of the 2021 litigation, the full breadth of that lawsuit is relevant and within the scope of discovery. CAIR's defenses of privilege—based in both common law and the Constitution—are similarly broad. These defenses raise issues of both common law and actual malice, which in turn render the relationship and history between CAIR and Saroya relevant and discoverable.

**ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1.      Plaintiff's Motion to Compel, Dkt. No. 32, is **GRANTED** as to Document Requests #1-4, 8, 10-16, 18-25, 32-39 and Interrogatories # 4, 10-13, 15-16, 17-18 (as limited),19.

2.      Plaintiff's Motion to Compel, Dkt. No 32, is **DENIED** as to Document Requests #40-41 and Interrogatory #14.

Dated: November 25, 2024                         _____s/David T. Schultz_____
                                                DAVID T. SCHULTZ
                                                United States Magistrate Judge

**Appendix A**

This appendix organizes the discovery requests by group. Exhibits 2-4 in the Kerbaugh Declaration contain Saroya's requests for documents and interrogatories.

I.      **Group 1: Saroya, the Press Release, and the 2021 Litigation Generally**

- **Document Request #1:** All documents and communications referring or relating to Lori Saroya, or in any way concerning Lori Saroya, by whatever name.

- **Document Request #2:** All documents referring or relating to or reflecting or constituting communications concerning Lori Saroya's employment with CAIR, including but not limited to, Lori Saroya's personnel file.

- **Document Request #3:** All documents referring or relating to or reflecting or constituting communications concerning Lori Saroya's (1) co-founding of, volunteer efforts for or employment by the Minnesota Chapter of CAIR; (2) employment by CAIR; or (3) appointment to or service on CAIR's Board.

- **Document Request #4:** All documents referring or relating to or reflecting or constituting communications concerning Lori Saroya's resignation from CAIR in 2018.

- **Document Request #8:** All non-privileged documents referring or relating to or reflecting or constituting communications concerning the 2021 Litigation.

- **Document Request #10:** All documents referring or relating to or reflecting or constituting agendas or minutes of any meeting of the Board of CAIR or of any committee of the Board of CAIR, or any committee appointed by CAIR concerning the 2021 Litigation, Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #11:** All documents and communications referring or relating to or reflecting or constituting statements by any member of the

CAIR Board of Directors to anyone concerning the 2021 Litigation, Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #12:** All documents and communications referring or relating to or reflecting or constituting statements by Nihad Awad, Ibrahim Hooper, Edward Mitchell, or any officer, director or employee of CAIR to anyone concerning the 2021 Litigation, Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #13:** All documents referring or relating to or reflecting or constituting communications between CAIR and any news organization or journalist concerning the 2021 Litigation, the Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #14:** All documents referring or relating to or reflecting or constituting communications between CAIR and any CAIR chapter or employee of the same concerning the 2021 Litigation, the Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #15:** All documents referring or relating to or reflecting or constituting communications between CAIR and any donor concerning the 2021 Litigation, the Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #16:** All documents referring or relating to or reflecting or constituting communications between CAIR and any public relations or crisis management firm or consultant concerning the 2021 Litigation, the Press Release, and Lori Saroya from May 11, 2018 to present.

- **Document Request #18:** All documents referring or relating to or reflecting or constituting communications between any officer, employee or director, past or present, of CAIR and Lori Saroya from May 11, 2018 to present.

- **Document Request #24:** All documents referring or relating to or reflecting or constituting social media postings or statements, or public statements of any kind, to CAIR chapters or affiliates, relating in any way

to Lori Saroya or to CAIR's assertions that she has engaged in "cyberstalking," as alleged in the Press Release.

- **Document Request #25:** All documents referring or relating to or reflecting or constituting statements by CAIR that Lori Saroya has engaged in cyberstalking.

- **Document Request #39:** All documents referring or relating to or reflecting or constituting media inquiries about, or media coverage of, the 2021 Litigation, including the filing of the lawsuit, any pleadings filed in connection of the lawsuit, the status of the lawsuit and/or the dismissal of the lawsuit.

- **Interrogatory #4:** Please identify every statement by CAIR to any of its chapters or affiliates, or issued to the media, or posted on social media, referring to or relating to Lori Saroya since January 1, 2018.

- **Interrogatory #12:** Please identify every complaint, grievance or claim of any kind made against Lori Saroya by any officer or employee of CAIR, or any chapter or affiliate thereof, and state the name of the individual, the nature and date of the claim and the name of any individual investigating the complaint, grievance or claim.

- **Interrogatory #13:** Please identify every document referring or relating to or reflecting or constituting in whole or in part an evaluation or comment on Lori Saroya's job performance either with CAIR's Minnesota chapter or with CAIR.

## II.    Group 2: Saroya's Statements Against CAIR as Alleged in the 2021 Complaint

- **Document Request #19:** All documents referring or relating to or reflecting or constituting claims, complaints or allegations by any present or former employee of CAIR concerning allegations of sexual or gender discrimination, sexual harassment or retaliation against those entities or against any officer, director or employee of any such entity.

- **Document Request #20:** All documents referring or relating to or reflecting or constituting claims, complaints or allegations by any present or former employee of any chapter or affiliate of CAIR concerning sexual or gender discrimination, sexual harassment or retaliation by any officer, director or employee of any such entity.

- **Document Request #21:** All documents referring or relating to or reflecting or constituting any investigation or fact-finding of any kind conducted by or on behalf of CAIR related to any claim of gender or sexual discrimination, sexual harassment or retaliation.

- **Document Request #22:** All documents referring or relating to or reflecting or constituting any investigation or fact-finding of any kind conducted by or on behalf of any chapter or affiliate of CAIR related to any claim of gender or sexual discrimination, sexual harassment or retaliation.

- **Document Request #23:** All documents referring or relating to or reflecting or constituting allegations of misconduct by Zainab Chaudry, whether by any CAIR employee, any employee of any CAIR chapter, or by any third party.

- **Document Request #32:** All documents referring or relating to or listing or reflecting the names of every contributor to CAIR in an amount over $5,000 for any year from 2014 through 2022.

- **Document Request #33:** All documents referring or relating to or reflecting or constituting contributions to CAIR, or any CAIR affiliate, by any individual or entity within, or any governmental unit of, Saudi Arabia, Qatar or Kuwait between 2007 and 2014.

- **Document Request #34:** All documents referring or relating to or reflecting the acquisition by CAIR or any CAIR affiliate of property located at 921 2nd Street NE in Washington, D.C., including the sources of the funding for such acquisition.

- **Document Request #35:** All documents referring or relating to or reflecting the exchange, transfer or division of assets between or among CAIR Foundation, CAIR, Inc., CAIR Action Network and the Washington

Trust Foundation, including but not limited to a loan totaling $1 million from CAIR, Inc. to CAIR Foundation disclosed in a Form 1023 filing.

- **Document Request #36:** All documents referring or relating to or reflecting or constituting any version of CAIR's Whistleblower Policy and Document Retention Policy as required under the Sarbanes-Oxley Act.

- **Document Request #37:** All documents referring or relating to or reflecting or constituting any report, analysis, or recommendations provided by any consulting or other outside firm relating to CAIR governance or management commissioned or received during the tenure of CAIR Board Chair Parvez Ahmed, and all documents referring or relating to or reflecting discussions between or among members of the Board of Directors relating to the same.

- **Document Request #38:** All documents referring or relating to or reflecting or constituting allegations of misconduct by Hassan Shibly.

- **Interrogatory #10:** Please identify every officer or employee of CAIR or any chapter or affiliate of CAIR who to Your knowledge has asserted, orally or in writing, that he or she has been the subject of discrimination, harassment or retaliation by any employee or officer of CAIR or one of its chapters or affiliates since 2011, stating the name of the individual, the nature of the claim and the names of the individual(s) or entity(ies) claimed to be responsible.

- **Interrogatory #11:** With respect to every assertion of discrimination, harassment or retaliation identified in response to the preceding interrogatory, please describe any investigation conducted by CAIR.

- **Interrogatory #15:** Please describe any investigation conducted by CAIR or on CAIR's behalf by an external investigator into allegations of misconduct of any kind by any CAIR director, officer or employee thereof, since 2011.

- **Interrogatory #16:** Please identify every lawsuit, including but not limited to those alleging defamation, that CAIR has filed from 2011 to the present,

and include in Your response the parties, the forum in which the action was commenced, the docket number and the year in which it was filed.

- **Interrogatory #19:** Please identify every settlement agreement, severance agreement or non-disclosure agreement entered into with any individual by CAIR since 2011, including in Your response the name of that individual, the nature of the agreement, its date and any financial consideration paid to that individual in connection with that agreement.

## III.    Group 3: Named Individuals Who Made Claims Against CAIR

- **Document Request #40:** All documents referring or relating to or reflecting or constituting communications with, or in any way regarding, Karen Leslie Hernandez.
- **Document Request #41:** All documents referring or relating to or reflecting or constituting communications with, or in any way regarding, Mariam Amer.

## IV.    Group 4: Legal and Administrative Proceedings Against CAIR and Its Officers, Directors, and Employees

- **Interrogatory #17:** Please identify every lawsuit or administrative claim of any kind filed by any individual, entity or agency against CAIR, and/or any director, officer or employee thereof, since 2011, and for each identify the parties, the forum in which it was commenced, the docket or file number and the year in which it was filed.
- **Interrogatory #18:** Please identify every federal or state criminal indictment or information that has been issued against, or guilty plea that has been entered by, any individual who has been an employee, officer or director of CAIR since 2011, and for each such indictment, information or plea state the name of the defendant(s), the court in which it has been issued or entered, the docket number and year in which the matter was instituted.

## V.     Group 5: CAIR's Means of Communications

- **Interrogatory #14:** Please identify every email account, social media account, YouTube account, and Internet address used by CAIR since 2011.