**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Lori Saroya,

       Plaintiff,

v.

CAIR Foundation, Inc. d/b/a
Council on American-Islamic Relations &
CAIR,

       Defendant.

Court File No. 24-CV-110 (DWF/DTS)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

## INTRODUCTION

From 2016 and May 2018, Plaintiff Lori Saroya ("Saroya") worked for Defendant CAIR Foundation, Inc. d/b/a Council on American-Islamic Relations & CAIR ("CAIR"), a Washington D.C.-based nonprofit organization. Saroya resigned in 2018. Nihad Awad, Edward Ahmed Mitchell, Thania Clevenger, Ibrahim Hooper, Roula Allouch, and Ismail Allison ("Individual Defendants") are CAIR board members, emeritus board members, or employees. None of them live, or have at any relevant time lived, in Minnesota.

CAIR posted a statement on its website, dated January 20, 2022, which Saroya contends is defamatory and gives rise to a claim for intentional infliction of emotional distress (IIED). On January 16, 2024, four days before the two-year statute of limitations expired, Saroya sued CAIR. She did not name any of the Individual Defendants.

Saroya now moves to amend her complaint to add the Individual Defendants and new claims, arguing her motion should be granted because it was filed prior to the joinder

1

deadline included in the Court's Amended Pretrial Scheduling Order. While technically timely under the Court's Scheduling Order, Saroya's motion must be denied because, under well-settled law, this Court lacks personal jurisdiction over the Individual Defendants and Saroya's proposed claims against the Individual Defendants are time-barred or otherwise futile. CAIR does not oppose Saroya's request to add a punitive damages claim against CAIR, but all other requested relief must be denied.

## FACTUAL BACKGROUND

### I.    Saroya's Original Complaint.

On January 16, 2024, Saroya sued CAIR, alleging that a statement dated January 20, 2022, which CAIR posted on its website, (ECF 1-1), was defamatory and gave rise to a claim of intentional infliction of emotional distress (IIED). (ECF 1.) She alleged the following statements in the post were defamatory:

1. The title of the statement: "Community Update on Cyberstalking by Lori Saroya, Ex-Staffer." (ECF 1 ⁋ 72.)

2. "As some of you know, a former CAIR national staffer has spent the past several years using anonymous email accounts and social media profiles to cyberstalk, smear and undermine our national office, local chapters, volunteers and community partners with help from anti-Muslim extremists. That former CAIR staffer is Lori Haidri Saroya." (*Id.* ⁋ 73.)

3. "After enduring this obsessive and destructive cyberstalking for years, we decided to file a defamation lawsuit against Lori in 2021 to expose the truth and protect our team in a court of law, where the truth matters." (*Id.* ⁋ 74)

4. "Lori was not able to defeat our lawsuit. A few weeks ago, the judge overseeing the case ruled in our favor and denied Lori's motion to dismiss our lawsuit." (*Id.* ⁋ 78.)

5. "The litigation had already allowed us to prove her conduct: working with Islamophobes, sending hundreds of anonymous emails in the middle of the night

2

attacking our civil rights organization, harassing us and our supporters on social media, among many other things. She did not deny any of these claims in her response to our lawsuit, so we have already proven those facts." (*Id.* ¶ 80.)

6. "She isn't trying to fix a problem within CAIR." (*Id.* ¶ 81.)

Saroya alleges these statements give rise to a defamation claim because she construed these statements to "falsely accuse[] Ms. Saroya of violating both state and federal criminal laws by engaging in 'cyberstalking.'" (*Id.* ¶¶ 69-71.) She specifically alleges these statements are "verifiably false" because she did not commit these alleged crimes. (*Id.* ¶ 75.) She alleges the statement about the outcome of the 2021 lawsuit was false and defamatory because it mischaracterized Judge Nelson's ruling on Saroya's motion for judgment on the pleadings, in which Judge Nelson denied Saroya's motion but did so without prejudice. (*Id.* ¶¶ 64-65.) Saroya alleges these same statements give rise to an IIED claim because CAIR's conduct was extreme and "caused Ms. Saroya severe emotional distress, as demonstrated by the fact that it forced her to mental health treatment, and caused her to experience ongoing dizziness, headaches, restlessness, constant worrying, and recurring nightmares." (*Id.* ¶¶ 110-116.)

## II. **Saroya's Motion to Amend.**

As part of this lawsuit, CAIR answered an interrogatory by identifying "the following individuals who, along with counsel, were involved in drafting and/or revising the January 20, 2022, press release: 1. Nihad Awad, 2. Thania Clevenger, 3. Ibrahim Hooper, 4. Edward Mitchell, 5. Roula Allouch." (ECF 54-1 p.5.) While Mr. Allison was not involved in drafting the post, the screenshot of CAIR's website post, which Saroya

attached as an exhibit to her original complaint, lists Mr. Allison's name at the top next to the date. (ECF 1-1 p.42.)

Based on these two facts, Saroya filed the instant motion to amend, seeking to: (a) add Mr. Awad, Ms. Clevenger, Mr. Hooper, Mr. Mitchell, Ms. Allouch, and Mr. Allison as individual defendants to the defamation and IIED claims; and (b) add new claims for civil conspiracy (against the Individual Defendants and CAIR), aiding and abetting (against the Individual Defendants); and punitive damages (against the Individual Defendants and CAIR). (ECF 50-55.)[1] To support this motion, Saroya concedes each Individual Defendant is not a resident of Minnesota, but alleges personal jurisdiction over the Individual Defendants is proper based on the following:

(a) "the Individual Defendants' high-ranking roles as officers and/or directors and representatives of CAIR, a national organization with a branch[2] in Minnesota";

(b) "on information and belief, the Individual Defendants' regular communications via email and/or telephone with individuals working for CAIR's Minnesota branch";

(c) "the Individual Defendants' regular dissemination by internet post and email of content to residents of Minnesota for purposes that include obtaining donations from Minnesota residents and garnering support for CAIR's work";

---

[1] Saroya alleges she "must now move to amend her Complaint . . ." in order to comply with the Court's Amended Scheduling Order, which set the date to move for joinder as December 13, 2024. (ECF 52 p.2.) CAIR offered to stipulate to move the joinder deadline prior to Saroya filing this motion; Saroya refused. Likewise, while Saroya's brief again alleges CAIR has not produced sufficient documents, she ignores her own role in the parties' *mutual* ongoing discovery delays. *See* ECF 49.

[2] CAIR does not have a "branch" in Minnesota. Council on American-Islamic Relations, Minnesota (CAIR-MN) is a separate legal entity.

(d) "CAIR [sic] has personal jurisdiction over Mr. Awad and Mr. Hooper as a result of their travel to the State of Minnesota, including travel for the purpose of soliciting donations to CAIR from Minnesota residents"; and

(e) "as a result of their intentional and malicious dissemination by internet post and/or email of the defamatory Press Release to Minnesota residents, thereby causing significant harm to Ms. Saroya in Minnesota."

(ECF 50-1 ¶ 17.)

### III.    The Proposed Individual Defendants Have No Relevant Contacts with Minnesota.

The Individual Defendants confirmed their lack of relevant contacts with Minnesota:

- None of the Individual Defendants live in Minnesota;

- Most Individual Defendants have never been to Minnesota, and none of the Individual Defendants have been to Minnesota for any purpose related to Saroya or her lawsuit against CAIR;

- None of the Individual Defendants own property in Minnesota;

- None of the Individual Defendants' roles at CAIR are focused on Minnesota;

- To the extent that the Individual Defendants were involved in drafting, revising, approving, publishing, or disseminating the CAIR statement upon which Saroya's claims are based, this involvement was purely in the Individual Defendants' capacity as CAIR employees and agents;

- None of the Individual Defendants participated in any relevant conduct in their personal or independent capacities; and

- None of the Individual Defendants had any intent that the website statement be shared with any person or entity based in Minnesota.

(*See* Declaration of Ibrahim Hooper; Declaration of Roula Allouch; Declaration of Edward Ahmed Mitchell; Declaration of Thania Clevenger; Declaration of Nehad Awwad Hammad; Declaration of Ismail Allison (collectively, the "Individual Defendant Declarations").)

## ARGUMENT

### I.   Legal Standard.

Rule 15 governs a party's right to amend a pleading. Fed. R. Civ. P. 15(a). Whether to grant leave to amend is entrusted to the sound discretion of the district court. *Niagara of Wis. Paper Corp. v. Paper Indus. Union–Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986). Where, as here, the motion is brought more than 21 days after serving the original pleading, there is no absolute right to amend, and a court may deny the motion if the motion is futile. *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).

### II.   Saroya's Motion to Amend Must be Denied as Futile Because This Court Lacks Personal Jurisdiction Over the Proposed Individual Defendants.

Saroya's Motion to Amend her complaint to add the Individual Defendants must be denied because this Court lacks personal jurisdiction over the Individual Defendants. Courts may deny motions to amend on the basis of futility if the moving party fails to establish personal jurisdiction over the newly proposed parties. *See St. Jude Med. S.C.,*

6

*Inc.*, No. 13-CV-2463 (RHK/JSM) 2014 WL 12656624, at *5 (D. Minn. Aug. 6, 2014) (holding motion to amend to add defendants must be denied as futile because the court lacked personal jurisdiction over the two proposed defendants). Where, as here, Saroya seeks to amend to add parties, she "carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003).

"To satisfy this burden, [Saroya] may not rely on general statements in the pleadings when the defendant's motion to dismiss is supported by affidavits." *Stratasys, Inc. v. ProtoPulsion, Inc.*, 2011 WL 2750720, at *4 (Minn. Ct. App. July 18, 2011). Moreover, "[b]ecause a motion to dismiss for lack of personal jurisdiction is often a test of a plaintiff's actual proof, the Court may properly examine affidavits and other competent evidence to establish the jurisdictional facts." *Carlock v. Pillsbury Co.*, 1988 WL 404838, at *2 (D. Minn. Jan. 4, 1998); *see Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020) (same).

Federal courts apply the law of the forum state to determine whether the court may exercise personal jurisdiction over a party. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Minnesota's long-arm statute runs coextensively with the Constitution, Minn. Stat. § 543.19; therefore, the jurisdictional inquiry over non-residents asks "whether the assertion of jurisdiction . . . offends due process." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). To make this showing, Saroya must establish each Individual Defendant's own actions "create[d] a substantial connection with" Minnesota and provided her or him "fair warning" of being subject to jurisdiction here. *Burger King*

4333225.v1

*Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citation omitted). Fair warning exists if each Individual Defendant "purposefully directed [her or his] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472-73 (internal quotations and citations omitted).

Courts consider five factors when determining personal jurisdiction: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for its residents; and (5) convenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted). Saroya does not meet her burden to establish suit-related contacts sufficient to sustain personal jurisdiction over the Individual Defendants.

### A. Nature and Quality of Contacts.

"To constitute sufficient quality of contacts, a defendant's acts must be purposefully directed to the forum state." *CHS Inc. v. Farmers Propane Inc.*, 397 F. Supp. 3d 1324, 1330 (D. Minn. 2019) (internal citations and quotations omitted). In analyzing this factor, the Individual Defendants' contacts with Minnesota "are not to be judged according to their employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually. The requirements of *International Shoe* . . .

must be met as to each defendant over whom a state court exercises jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).[3]

Relatedly, the Eighth Circuit confirmed "[t]he law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986); *see also Sanford v. Maid–Rite Corp.*, No. 13–cv–2250 (MJD/LIB), at *11 (D. Minn. Jan. 3, 2014) (holding amended complaint alleging claims against individual defendant which merely "alleged actions largely attributable to MRC as a corporation" was insufficient to "create personal jurisdiction over that officer as an individual but may be used to subject the corporation to jurisdiction").

Here, each of the allegations upon which Saroya relies to establish personal jurisdiction over the Individual Defendants is based purely on the Individual Defendants' alleged conduct while working as an officer or employee of CAIR, rather than actions taken in his or her personal or individual capacity. Saroya alleges: "the Individual Defendants' **high-ranking roles as officers and/or directors and representatives of CAIR**, a national organization with a branch in Minnesota; (b) on information and

---

[3] Courts in this district follow this binding rule and analyze the individual defendant's "personal" contacts instead of professional contacts on an employer's behalf. *Jacobs Trading, LLC v. Am. Eagle Trading Grp., LLC*, No. 16-cv-406 (SRN/KMM) 2016 WL 5508805, at *5 (D. Minn. Sept. 28, 2016); *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996), *aff'd sub nom.* 130 F.3d 1305 (8th Cir. 1997).

belief[4], the Individual Defendants' regular communications via email and/or telephone with individuals working for CAIR's Minnesota branch; and/or (c) the Individual Defendants' regular dissemination by internet post and email of content to residents of Minnesota for **purposes that include obtaining donations from Minnesota residents and garnering support for CAIR's work**." (ECF 50-1 ¶ 17 (emphasis added).) She also alleges "CAIR [sic] has personal jurisdiction over Mr. Awad and Mr. Hooper as a result of their travel to the State of Minnesota, including **travel for the purpose of soliciting donations to CAIR** from Minnesota residents" and "as a result of their intentional and malicious dissemination by internet post and/or email of the defamatory Press Release to Minnesota residents, thereby causing significant harm[5] to Ms. Saroya in the state." *Id.*

These allegations relate solely to the Individual Defendants' purported connections to Minnesota in their **professional** capacity as CAIR officers or employees. Moreover, Saroya's allegation that the Individual Defendants hold important roles at CAIR, communicated with individuals from Minnesota, and traveled to Minnesota to solicit Minnesota-based donations does not meet Saroya's burden because they are not suit-related contacts. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding contacts for purposes of personal jurisdiction must be "suit-related," meaning the lawsuit arises out of the Individual Defendants' contacts with the state). Saroya's allegations do not amount to

---

[4] A plaintiff's allegations made "upon information and belief" are alone "inadequate to establish a *prima facie* case of personal jurisdiction." *Schneeweis v. Nw. Tech. Coll.*, No. 97-1742 (JRT/RLE), 1998 WL 420564, at *9 (D. Minn. June 1, 1998).

[5] Saroya's alleged harm is irrelevant to personal jurisdiction. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [the defendant] to the forum in a meaningful way." *Walden*, 571 U.S. at 289-90; *see infra* Section II.F.

evidence showing any Individual Defendant personally (outside of their CAIR capacity) engaged in contacts, the nature or quality of which personally connected them with this State. This is particularly true as to Mr. Allison, who Saroya alleges is subject to personal jurisdiction solely because he posted the statement on CAIR's website at the direction of the other Individual Defendants. (ECF 50 ¶ 15.)

In contrast to Saroya's conclusory allegations seeking to impute CAIR's alleged Minnesota contacts to each of the Individual Defendants, each Individual Defendant has confirmed his or her lack of suit-related contacts with this State:

- None of the Individual Defendants live in Minnesota;

- Most Individual Defendants have never been to Minnesota, and none of the Individual Defendants have been to Minnesota for any purpose related to Saroya or her lawsuit against CAIR;

- None of the Individual Defendants own property in Minnesota;

- None of the Individual Defendants' roles at CAIR are focused on Minnesota;

- To the extent that the Individual Defendants were involved in drafting, revising, approving, publishing, or disseminating the CAIR statement upon which Saroya's claims are based, this involvement was purely in the Individual Defendants' capacity as CAIR employees and agents;

- None of the Individual Defendants participated in any relevant conduct in their personal or independent capacities; and

4333225.v1

- None of the Individual Defendants had any intent that the website statement
  be shared with any person or entity based in Minnesota.

(*See* Individual Defendant Declarations.)[6]

In light of the lack of any well-pled allegations suggesting the Individual Defendants have any personal suit-related connections to this State, this factor strongly favors the Individual Defendants and the corresponding conclusion that Plaintiff's amended complaint is futile.

### B.  Quantity of Contacts.

In addition to Saroya's failure to show each Individual Defendant purposefully – and personally – directed acts to this State, she cannot show any Individual Defendant has the requisite quantity of contacts to confer personal jurisdiction. As a general rule, where "contacts are few and isolated, this factor weighs against jurisdiction and [Saroya] must instead rely on the nature and quality of contacts to establish personal jurisdiction." *Newman Lakka Cancer Found. v. Briggs*, 2016 WL 854776, at *6 (Minn. Ct. App. Mar. 7, 2016).

Here, the Individual Defendants have few, if any, relevant contacts with this State. (*See* Individual Defendant Declarations.) Saroya alleges they authored or were involved

---

[6] Of note, any allegation that Saroya lived in Minnesota when working for CAIR until May 2018 is irrelevant to personal jurisdiction because the minimum contacts necessary to exercise personal jurisdiction "must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003); *see Eklund v. Eklund*, 1995 WL 520781, at *2 (Minn. Ct. App. Sept. 5, 1995) (holding contacts with forum which pre-date cause of action and "are irrelevant for purposes of establishing personal jurisdiction").

with the allegedly defamatory website post, but the post (ECF 1-1) does not mention or focus on Minnesota. This again weighs against the exercise of personal jurisdiction. *Id.* at *7 (holding factor weighed against jurisdiction because the at-issue post was not directed to Minnesota and was "only generically available to the Internet community at large").

### C. Relationship Between the Cause of Action and the Contacts.

As to "the third factor—the relationship of the cause of action to the contacts—[courts] distinguish between specific and general jurisdiction." *Burlington Indus, Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) (internal quotations and citation omitted). In contrast, "an individual is subject to general jurisdiction in [his or] her place of domicile." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021). Saroya does not allege the Individual Defendants are subject to general jurisdiction, and it is undisputed no general jurisdiction exists because the Individual Defendants are residents of Virginia, Florida, Georgia, and Maryland. (ECF 50-1 ¶¶ 10-15.) Thus, the focus of this factor is on specific jurisdiction.

"In analyzing the third factor, courts consider whether a defendant directed actions at residents of the forum and the extent to which the claims at issue arose from those particular contacts." *Henley v. Neesen Chevrolet, Inc.*, 24-cv-196 (JMB/LIB) 2024 WL 4202716, at *6 (D. Minn. Sept. 16, 2024). Here, as explained above with respect to factors one and two, the Individual Defendants did not direct actions at Minnesota residents. Instead, the sole relationship between the cause of action and the Individual

Defendants' contacts with Minnesota is the fact Saroya lives here. But a "plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Likewise, the fact that Saroya—a Minnesota resident—was the subject of CAIR's 2022 post does not create a relationship between the Individual Defendants and Saroya's cause of action. *See Young v. Maciora*, 940 N.W.2d 509, 516 (Minn. Ct. App. 2020) (allegedly defamatory communications targeting Minnesota resident on website, via phone, and via email were insufficient to establish personal jurisdiction over nonresident because communications targeted the plaintiff, **not** the forum). Here, absent any connection between the Individual Defendants' conduct and Saroya's cause of action, this factor weighs against exercising personal jurisdiction.

### D. State's Interest in Providing a Forum for its Residents.

Factors four and five are "secondary" factors. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). Saroya's "inability to establish jurisdiction under any of the factors discussed above necessarily requires a conclusion that [her] assertion of jurisdiction must fail regardless of the last two factors." *Walker Mgmt., Inc. v. FHC Enterprises, Inc.*, 446 N.W.2d 913, 916 (Minn. Ct. App. 1989). As to factor four, to the extent this factor is considered, it is neutral because Minnesota has no significant interest in providing a forum for Saroya's claims against the Individual Defendants since they are not Minnesota residents and do not have business or personal contacts here. *Id.*

### E. Convenience to the Parties.

The convenience of the parties factor "is irrelevant unless the defendant also has, as a threshold matter, sufficient contacts with the forum state." *Briggs*, 2016 WL 854776,

14

4333225.v1

at *8. To the extent there is any possibility the Individual Defendants have sufficient contacts with Minnesota, this factor weighs against jurisdiction. While Minnesota "may be a more convenient forum for [Saroya, this] does not mean that [Minnesota] courts have personal jurisdiction over [defendant]." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 824 (8th Cir. 2014). Instead, where, as here, the central events deal with CAIR and its non-resident employees, "it would clearly be inconvenient to drag [Individual Defendants] and [nonresident] witnesses to Minnesota." *Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012). This factor weighs against exercising personal jurisdiction. *Id.*

### F. Alternatively, Saroya Cannot Establish Personal Jurisdiction over the Individual Defendants under *Calder*.

Some courts have applied the *Calder* "effects" test to evaluate personal jurisdiction over non-resident defendants. Saroya's proposed claims against the Individual Defendants fare no better under *Calder*. In Minnesota, "[t]he test requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity." *Griffis v. Luban*, 646 N.W.2d 527, 534 (Minn. 2002). "The Eighth Circuit construes the *Calder* effects test narrowly, holding that 'absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.'" *NexGen HBM, Inc. v. ListReports, Inc.*, No. 16-CV-3143, 2017 WL 4040808, at *9 (D. Minn. Sept. 12, 2017) (quoting *Johnson*, 614 F.3d at 794).

15

Even assuming, *arguendo*, that factors one and two are met, Saroya cannot establish factor three. "[T]o satisfy the third prong, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the **defendant expressly aimed its tortious conduct at the forum**." *Id.* (citation omitted) (emphasis added); *see also Viracon, Inc. v. J&L Curtain Wall LLC*, 929 F. Supp. 2d 878, 886 (D. Minn. 2013) ("[W]hile *Calder* has been described as an 'effects' test, more than mere effects supported that holding. . . . To invoke *Calder*, a plaintiff must show the **defendant's acts were performed for the very purpose of having their consequences felt in the forum state**.") (citations omitted) (emphasis added).

Courts have consistently held that absent specific allegations that defendants' tortious activity specifically targeted the forum, "mere effects in [Minnesota] are insufficient to confer personal jurisdiction" over a non-resident. *Johnson*, 614 F.3d at 797. This is particularly true in defamation actions against non-resident defendants. *See, e.g.*, *Wood v. Kapustin*, 992 F. Supp. 2d 942, 946 (D. Minn. 2014); *Moyer v. Jackson, et al.*, No. 23-cv-138 (JWB/LIB) 2023 WL 5417828, at *7 (D. Minn. Aug. 2, 2023); *St. Jude Med S.C., Inc. v. Hanson*, 2014 WL 12656624, at *10 (D. Minn. Aug. 6, 2014) (denying motion to amend complaint as futile for lack of personal jurisdiction).

Here, Saroya does not allege the Individual Defendants specifically targeted Minnesota or expressly aimed their allegedly tortious conduct here. Instead, she alleges they "caused CAIR to publish the Press Release to a **nationwide** audience, both through internet post and through widely circulated email(s)" and that "thousands of individuals

16

**across the country** have viewed [the press release] and it continues to receive views from individuals **across the county**." (ECF 1 ⁋ 78, 98 (emphasis added).) Moreover, the at-issue statement was not a widely-distributed "press release," as Saroya alleges; CAIR posted the statement on its website, but did not distribute it to any media outlet or community email lists, much less target the statement to Minnesota. (Mitchell Decl. ⁋ 9.) Saroya does not meet her burden to show, under *Calder*, that the Individual Defendants expressly aimed their allegedly tortious conduct at this State, such that it was the focal point of the tortious activity. *Griffis*, 646 N.W.2d at 534. Thus, Saroya's motion to amend must be denied in its entirety for lack of personal jurisdiction.

### III.    Saroya's Motion to Amend Should Be Denied Because, Even if this Court Has Personal Jurisdiction Over the Proposed Individual Defendants, Saroya's Claims Against Them Are Futile.

Even if this Court holds the Individual Defendants are subject to personal jurisdiction in Minnesota (they are not), Saroya's motion to amend must be denied because her proposed claims against the Individual Defendants are futile under Federal Rules of Civil Procedure 15(a) and 12(b)(6).

#### A.  Legal Standard.

"Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850-851 (8th Cir. 2010) (internal quotation marks omitted). "Thus, in assessing futility under Rule 15, all well-pleaded factual allegations in the proposed amended complaint must be accepted as true." *Butler v. Bank of Am., N.A.*, 690 F.3d 959,

961 (8th Cir. 2012). However, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" need not be credited. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The well-pleaded factual allegations must nudge the complaint over the line from the merely possible to the plausible. *See id.* (citing *Twombly*, 550 U.S. at 556-57). Where the complaint merely recites facts consistent with the cause of action but no more, it "stops short of the line between possibility and plausibility." *Ashcroft*, 556 U.S. at 678.

In determining whether a plaintiff has stated a plausible claim, the Court considers only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Cox v. Mortgage Elect. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012); *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).

### B. Saroya's Claims Against the Individual Defendants are Time-Barred and Futile.

"A proposed amendment may be deemed futile if it is time-barred by an applicable statute of limitations." *Afremov v. Sulloway & Hollis, PLLC*, 09-cv-3678 (PJS/JSM) (D. Minn. June 11, 2011) (citing *United States ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 558 (8th Cir. 2006)). "Under Minnesota law, the statute of limitations applicable to [Saroya's] defamation, conspiracy to defame, and intentional infliction of emotional distress claims is two years." *Fredin v. Kreil*, No. 20-CV-1929 (SRN/JB) 2020 WL 7427048, at *2 (D. Minn. Dec. 18, 2020) (compiling authority). "Lack of knowledge of a defamatory publication will not toll the statute of limitations; the statute of limitations

begins to run at the time of publication." *McGaa v. Glumack*, 441 N.W.2d 823, 825 (Minn. Ct. App. 1989).

Here, Saroya's proposed amended complaint seeks to bring defamation, IIED, and derivative claims against the Individual Defendants nearly three years after the January 20, 2022, website post on which her defamation and IIED claims are based. The proposed claims are barred by the two-year statute of limitations. This is fatal to Saroya's claims and alone grounds for denial of her motion to amend.

Additionally, Saroya cannot argue the claims against the Individual Defendants relate back to the January 16, 2024, date of her original complaint against CAIR. The law is clear that in circumstances where, as here, the proposed amendment seeks to add a **new party,** Rule 15(c) permits an amended complaint to relate back to an earlier complaint only in cases involving a mistake concerning the identity of the proper party. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n. 1 (2000); *see* Fed. R. Civ. P. 15(c)(1)(C)(ii). Saroya's purported "lack of knowledge of the proper party's identity" is not a "mistake" and is insufficient to justify relation back of her proposed amended complaint to her original complaint. *Heglund v. Aitkin Cty.*, 871 F.3d 572, 581 (8th Cir. 2017). Her amended complaint is untimely and futile.

Even if Saroya and her counsel's apparent lack of knowledge was somehow a sufficient basis to bring time-barred claims against new defendants, Saroya cannot credibly claim that she lacked knowledge of the Individual Defendants. The most blatant illustration of this fact is Saroya's allegations and proposed claims against Mr. Allison. The entire basis of her motion for leave to add Mr. Allison as a new defendant is that his

name is listed on CAIR's website at the top of the post, which Saroya states means he was the employee who posted the statement to the website. But this has been true since the date the post was made in 2022. Saroya offers no reason for waiting until after the statute of limitations expired to seek to bring a claim against him. The same holds true for the other Individual Defendants. The post on CAIR's website identifies CAIR's National Board of Directors as the group who made the at-issue statement. Saroya, a former employee and board member, has been tracking CAIR's every move for years following her resignation, was without question aware of the individuals she now seeks to add as defendants.

### C. Even if Not Time-Barred, Saroya's IIED Claim Against the Individual Defendants is Futile.

Under Minnesota law, Saroya's IIED claim requires that she show (1) the Individual Defendants engaged in extreme and outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). Here, Saroya failed to plead allegations sufficient to state a claim.

**First**, Saroya has not pled facts sufficient to make plausible the allegation that any Individual Defendant engaged in extreme and outrageous conduct. The Minnesota Supreme Court has stated that an IIED claim "is sharply limited to cases involving particularly egregious facts." *Hubbard United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983). To be actionable, the defendant's conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."

4333225.v1

*Id.* This is because, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* Thus, "[a] claim for intentional infliction of emotional distress does not lie when the offending conduct consists only of a defamation."). *Couzens v. Donohue*, 854 F.3d 508, 519 (8th Cir. 2017).

Here, Saroya's entire IIED claim is based on the same allegations as her defamation claim. Saroya makes no specific allegations against any Individual Defendant which meet her burden to show any Individual Defendant engaged in conduct which was so severe that no reasonable person could be expected to endure the resulting distress. Because posting an allegedly defamatory statement is not alone sufficient to constitute extreme and outrageous conduct, absent any such well-pled allegations, her proposed IIED claim against the Individual Defendants is futile.

**Second**, Saroya did not plead facts sufficient to make plausible that she suffered distress sufficiently severe to establish elements three or four of her IIED claim. "Just as the plaintiff must meet a high threshold of proof in proving the extreme nature of the conduct, the plaintiff must also meet a high threshold of proof regarding the severity of the mental distress." *Langeslag*, 664 N.W.2d at 868.

Saroya alleges "CAIR's and the Individual Defendants' conduct has caused Ms. Saroya severe emotional distress, as demonstrated by the fact that it forced her to mental health treatment, and caused her to experience ongoing dizziness, headaches, restlessness, constant worrying, and recurring nightmares." (ECF 50-1 ¶ 126.) As an initial matter, these general statements are not sufficient to overcome a motion to dismiss because she does not allege any particularized facts suggesting that any Individual Defendant's (or

CAIR's) conduct caused her severe emotional distress. *See Lopez Prater v. Trustees of Hamline Univ.*, 693 F. Supp. 3d 1009, 1030-31 (D. Minn. 2023); *Albert v. Ind. School Dist. No. 709*, 2013 WL 1500986, \*4 (Minn. Ct. App. April 15, 2013) ("[G]eneralized complaints of distress do not establish distress beyond what a reasonable person could be expected to endure" and do not "state a legally sufficient claim for relief.").

As to the general symptoms Saroya does allege, courts analyzing nearly identical allegations have routinely rejected IIED claims because these allegations do not amount to severe emotional distress. For example, in *Elstrom v. Indep. Sch. Dist. No. 270*, the court held that "insomnia, crying spells, a fear of answering her door and telephone, and depression, **which caused her to seek treatment** [did] not state a valid [IIED] claim." 533 N.W.2d 51, 57 (Minn. Ct. App. 1995) (emphasis added). Other courts have likewise rejected claims where, as here, the only symptoms were emotional distress symptoms, related physical manifestations requiring treatment, or vague allegations of harassment and reputational harm. As examples:

- *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (holding loss of sleep, stress, anxiety, unsteady nerves, depression, loss of self-confidence, and medical and psychological treatment insufficient);

- *Allen v. Bank of Am. Corp.*, No. 10-CV-4205 (MJD/JSM) 2011 WL 3837150, at \*9 (D. Minn. July 22, 2011) (loss of income, forced child support proceeding, shingles, sleeplessness, migraines, and constant worrying do not state a claim for IIED);

- *Besett v. Wadena Cty.*, No. 10-cv-934 (JRT/LIB), 2010 WL 5439720 at * 17 (D. Minn. Dec. 7, 2010) (collecting cases holding allegations of vomiting, skin rashes, stomach disorders, high blood pressure, crying spells, humiliation, embarrassment, insomnia, difficulty sleeping, anxiety, lightheadedness, and shortness of breath are insufficient to support a claim for intentional infliction of emotional distress);

- *Hubbard*, 330 N.W.2d at 440 (plaintiff's claim of depression, vomiting, stomach disorders, skin rash, and high blood pressure were insufficient to establish severe emotional distress);

- *Kearney v. Orthopaedic & Fracture Clinic, P.A.*, 2015 WL 5194732, at *7 (Minn. Ct. App. Sept. 8, 2015) (holding bullying, ostracism, hostility, and insensitive comments are insufficient); and

- *Peterson v. City of Plymouth*, 945 F.2d 1416, 1421 (8th Cir. 1991) (holding loss of reputation, illness, sleeplessness, anxiety, mental anguish, and other distress insufficient).

Saroya's allegation that she endured dizziness, headaches, restlessness, worrying, nightmares that required mental health treatment, and unspecified harassment and reputational harm are as a matter of law insufficient to establish the Individual Defendants caused her a level of severe emotional distress required to state an IIED claim. Her IIED claim is futile.

### D. Saroya's Aid and Abet and Civil Conspiracy Counts (III and IV) are Futile.

Saroya alleges in Count III that the Individual Defendants are jointly and severally liable for aiding and abetting CAIR's commission of defamation and intentional infliction of emotional distress. (ECF 50-1 ¶¶ 129-137). Count IV alleges CAIR and the Individual Defendants are jointly and severally liable for conspiring to commit defamation and intentional infliction of emotional distress. (*Id.* ¶¶ 138-143.) "[L]iability for civil conspiracy is in substance the same thing as aiding and abetting liability." *K & S P'ship. v. Continental Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991). Consistent this with rule, aside from a conclusory recitation of the elements of these counts, Saroya's allegations with respect to these counts are nearly identical and will be addressed in tandem.

**First**, Saroya's conspiracy and aid and abet counts do "not set forth an independent cause of action but rather [are] sustainable only after an underlying tort claim has been established." *Id.* (citations and internal quotations omitted); *Lipka v. Minn. Sch. Emps. Ass'n, Loc. 1980*, 537 N.W.2d 624, 632 (Minn. Ct. App. 1995), *aff'd*, 550 N.W.2d 618 (Minn. 1996) ("[I]f the underlying claim fails, the conspiracy claim likewise fails."); *MathStar, Inc. v. Tiberius Capital II, LLC*, 712 F. Supp. 2d 870, 885 (D. Minn. 2010). Here, since Saroya's Defamation and IIED claims fail as against the Individual Defendants (and CAIR) for the above-described reasons, so must her derivative aid and abet and conspiracy counts as against all named defendants.

**Second**, under the intra-corporate conspiracy doctrine, the Individual Defendants are not liable for aiding, abetting, or conspiring with CAIR. Under this doctrine, "an

agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017). "The doctrine stems from basic agency principles that attribute the acts of a corporation's employees to the corporation itself, so that all their acts are treated as the acts of a single legal entity. Because the acts of corporate employees are treated as the acts of a single legal entity (the corporation), such corporate employees are a single actor and thus cannot constitute the plurality of persons required for a conspiracy." *Burbridge v. City of St. Louis*, 2 F.4th 774, 782 n.6 (8th Cir. 2021). Therefore, "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his [or her] employment." *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985).

The same principles apply to Saroya's aid and abet theory. *See Bardell v. Banyan Delaware, LLC*, 2024 WL 727711, at *3 (D. Del. Feb. 22, 2024) ("As an officer or employee of [employer], Mr. Gamaitoni therefore cannot be held liable for aiding and abetting his corporate employer in the commission of defamation."); *cf. Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 801 (Minn. 2013) (refusing to extend aid and abet liability to employer's agent in discrimination context because "holding [agent] liable for aiding and abetting essentially would reverse this liability pathway, making the Employers the primary wrongdoer, whose wrongdoing [agent] must have aided and abetted").

25

Here, Saroya alleges CAIR and the Individual Defendants aided and conspired with CAIR to engage in the tortious acts of defamation and IIED. Saroya seeks to attribute CAIR's actions to the Individual Defendants and then separate CAIR from the Individual Defendants to be able to satisfy the plurality requirement essential to a conspiracy theory of liability. This is the precise conduct the intra-corporate conspiracy doctrine forbids. Saroya cannot have it both ways. Her motion for leave to add a conspiracy count as against all defendants based on their collective corporate conduct should be denied.

**Third**, Saroya's aid and abet and civil conspiracy counts is futile because she fails to adequately plead them. To plead a civil conspiracy, Saroya "must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose." *Tatone v. SunTrust Mortg.*, Inc., 857 F. Supp. 2d 821, 838 (D. Minn. 2012) (citations omitted). Saroya "must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to injure." *Id.* at 839. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556–57; *see Zayed v. Assoc. Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019) (holding aid and abet claim requires plaintiff to establish that a primary tortfeasor committed a tort, the defendant knew the primary tortfeasor's conduct breached a duty to plaintiff, and the defendant substantially assisted or encouraged the primary tortfeasor in committing such breach).

Here, the <u>sole</u> allegations against the Individual Defendants are that, according to CAIR's interrogatory answer, they were the individuals who were involved in drafting or revising the website post. These bare allegations do not sufficiently establish any mutual agreement, any overt act taken to accomplish an unlawful purpose, any Individual Defendant's knowledge of CAIR's alleged tortious conduct, or any substantial assistance in committing such conduct. Absent any such well-pled allegations, Saroya's aid and abet and conspiracy counts are futile.

## CONCLUSION

Based on the foregoing, CAIR respectfully requests the Court deny Saroya's Motion for Leave to Amend in its entirely, except to the extent Saroya seeks leave to include a punitive damages claim.

**FELHABER LARSON**

Date:   December 19, 2024          /s/ Zachary A. Alter
Sara G. McGrane (#0233213)
Zachary A. Alter (#0399991)
220 South 6th Street, Suite 2200
Minneapolis, MN  55402
612-339-6321
*smcgrane@felhaber.com*
*zalter@felhaber.com*

**ATTORNEYS FOR DEFENDANT**

4333225.v1