# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Lori Saroya,

        Plaintiff,

v.

CAIR Foundation, Inc. d/b/a Council on
American-Islamic Relations & CAIR,

        Defendant.

Case No.: 24-cv-110 (DWF/DTS)

**PLAINTIFF LORI SAROYA'S
REPLY BRIEF IN SUPPORT
OF HER MOTION TO AMEND**

*PLAINTIFF LORI SAROYA,
By her counsel at Saul Ewing* **LLP**

Steven C. Kerbaugh (MN #0390429)
33 S. 6th St., Suite 4750
Minneapolis, MN 55402
(612) 225-2946
steve.kerbaugh@saul.com

Jefferey S. Robbins
(admitted pro hac vice)
Joseph D. Lipchitz
(admitted pro hac vice)
Kelsey M. Westrich
(admitted pro hac vice)
131 Dartmouth Street, Suite 501
Boston, MA 02116

Dated: January 3, 2025

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................5

I.   There Is Clear Personal Jurisdiction Over The Individual Defendants ...........5

    A.   CAIR's Argument That The Individual Defendants' Conduct In Their Capacity As Employees And Agents Of CAIR Exempts Them From Personal Jurisdiction Is Willfully Misleading And Directly Contrary To Controlling Precedent ...........................................5

    B.   Under *Calder*, There Is Clear Personal Jurisdiction Over the Individual Defendants Where They Knowingly Directed The Defamatory Press Release About CAIR's Minnesota Lawsuit Against Ms. Saroya, A Minnesota Resident, Knowing She Lived In Minnesota and Intending Its Harmful Effects To Be Felt In Minnesota Where They Were, In Fact, Felt ..........................................9

    C.   Defendants Hooper and Awad's Continuous And Extensive Contacts With Minnesota Subject Them To General Personal Jurisdiction ...............................................................13

II.  To the Extent That There Is Any Doubt As To Whether This Court Has Personal Jurisdiction Over The Individual Defendants, The Court Should Order Jurisdictional Discovery, Particularly In Light Of CAIR's Non-Compliance With This Court's Existing Discovery Order ...................16

III. Ms. Saroya's Claims Against The Individual Defendants Are Timely .........20

    A.   The Relation-Back Doctrine Permits Ms. Saroya's Claims Against Individual Defendants ..........................................................20

    B.   Given CAIR's Well-Documented Refusal To Produce Discovery, Including Into Its Media Relations Operations, For Over Three Years, It Is Estopped From Asserting Any Purported Untimeliness Related To The Amended Complaint ...........................24

IV.    Saroya's Aiding And Abetting Claims Against The Individual Defendants Who Directly Ordered, Directed, Drafted, Approved and Published The Defamatory Press Release Are Clearly Not Futile ...............27

        A.    The Individual Defendants Have Direct Liability For Their Conduct In Furtherance Of Publishing The Press Release In Addition To Aiding and Abetting Liability ........................................28

        B.    CAIR's Attempt To Impose The Pleading Standard Of Civil Conspiracy On The Aiding And Abetting Claim Is Not Only Meritless, But Disingenuous ...............................................................29

V.    Saroya's Proposed IIED Claim Is Clearly Viable .........................................32

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Allina Health Sys. v. Gentox Med. Servs., LLC*,
   2022 WL 3647822 (D. Minn. Aug. 24, 2022) ..................................................11

*American Dairy Queen Corp. v. Blume*,
   2011 WL 6994715 (D. Minn. Dec. 2, 2011) ......................................2, 10, 12, 13

*Ames v. Vavreck*,
   356 F. Supp. 931 (D. Minn. 1973).......................................................................22

*Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*,
   797 F.2d 565 (8th Cir. 1986) ............................................................................5, 8

*Bardell v. Banyan Delaware, LLC*,
   2024 WL 727711 (D. Del. Feb. 22, 2024)............................................................31

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989) ................................................................................27

*Bishop v. St. Jude Med. S.C., Inc.*,
   2020 WL 4352682 (D. Minn. July 29, 2020) .................................................4, 22

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017).............................................................................................14

*Calder v. Jones*,
   465 U.S. 783 (1984)..........................................................2, 5, 6, 7, 9, 10

*Carlock v. Pillsbury Co.*,
   1988 WL 404838 (D. Minn. Jan. 4, 1988) ........................................................7, 8

*Coleman v. Marriott Int'l, Inc.*,
   2017 WL 957446 (D. Kan. Mar. 13, 2017) ...................................................22, 23

*Couzens v. Donohue*,
   854 F.3d 508 (8th Cir. 2017) ..............................................................................32

*Draves v. Big Dutchman, Inc.*,
   2012 WL 7984628 (D. Idaho Nov. 8, 2012)........................................................23

*ECTG Ltd., Trustwater, Ltd. v. O'Shaughnessy*,
   2014 WL 6684982 (D. Minn. Nov. 25, 2014)....................................................31

*Fredin v. Middlecamp*,
   2018 WL 1838100 (D. Minn. Apr. 18, 2018)..............................................35, 36

*Hek, LLC v. Votum Enter.s, LLC*,
   2022 WL 329682 (D. Minn. Feb. 3, 2022)........................................................11

*Hmong Coll. Prep Acad. v. Woodstock Cap., LLC & Clark Reiner*,
   2021 WL 4690978 (D. Minn. Oct. 7, 2021)......................................................11

*Johnson v. Arden*,
   614 F.3d 785 (8th Cir. 2010) ............................................................................10

*K & S P'ship v. Cont'l Bank, N.A.*,
   952 F.2d 971 (8th Cir. 1991) ............................................................................30

*Kruger v. Lely N. America, Inc.*,
   2020 WL 12991167 (D. Minn. Dec. 14, 2020) ................................................18

*Krupski v. Costa Crociere S. p. A.*,
   560 U.S. 538 (2010)................................................................................3, 21, 22

*NextGen HBM, Inc. v. ListReport, Inc.*,
   2017 WL 8229442 (D. Minn. Feb. 9, 2017)......................................................17

*Osorio v. Minneapolis Hotel Acquisition Grp., LLC*,
   335 F. Supp. 3d 1141 (D. Minn. 2018)........................................................20, 21

*Pudlowski v. The St. Louis Rams, LLC*,
   829 F.3d 963 (8th Cir. 2016) ............................................................................17

*Ransom v. VFS, Inc.*,
   918 F. Supp. 2d 888 (D. Minn. 2013)..................................................................6

*Sandoval v. American Bldg. Maint. Indus., Inc.*,

2007 WL 142174 (D. Minn. Jan. 17, 2007) ......................................................26

*Sanford v. Maid–Rite Corp.*,
2014 WL 12540484 (D. Minn. Jan. 3, 2014) ...............................................5, 8, 9

*Santistevan v. City of Colorado Springs*,
2012 WL 280370 (D. Colo. Jan. 31, 2012) .......................................................23

*Schrader v. Royal Caribbean Cruise Line, Inc.*,
952 F.2d 1008 (8th Cir. 1991) ....................................................................4, 25

*Scoular Co. v. Ceres Glob. AG Corp.*,
2014 WL 12937887 (D. Minn. Sept. 26, 2014).................................................18

*Shank v. Carleton Coll.*,
2018 WL 4961472 (D. Minn. Oct. 15, 2018) ....................................................34

*Smithrud v. City of St. Paul*,
746 F.3d 391 (8th Cir. 2014) ...........................................................................26

*Steinbuch v. Cutler*,
518 F.3d 580 (8th Cir. 2008) ...........................................................................17

*VKK Corp. v. Nat'l Football League*,
244 F.3d 114 (2d Cir. 2001) ............................................................................20

*Zimmer v. United Dominion Indus., Inc.*,
193 F.R.D. 620 (W.D. Ark. 2000) ....................................................................27

### STATE CASES

*Anderson v. U.S. Bank Nat'l Ass'n*,
2014 WL 502955 (Minn. Ct. App. Feb. 10, 2014)............................................30

*DeRosa v. McKenzie*,
936 N.W.2d 342 (Minn. 2019) ...................................................................28, 29

*Graff v. Robert M. Swendra Agency, Inc.*,
776 N.W.2d 744 (Minn. Ct. App. 2009), *aff'd*, 800 N.W.2d 112 (Minn. 2011)..6

*Hill v. Orangehook, Inc.*,
  2020 Minn. Dist. LEXIS 9119 (Minn. Dist. Ct. July 21, 2020) ........................30

*Hubbard v. United Press Int'l*,
  330 N.W.2d 428 (Minn. 1983) ...................................................................33

*Jirak v. Eichten*,
  2012 WL 2505748 (Minn. Ct. App. July 2, 2012) ............................................33

*Kesanen v. D & H Const. of Eveleth, Inc.*,
  2006 WL 3303970 (Minn. Ct. App. Nov. 14, 2006) .........................................28

*M.H. v. Caritas Fam. Servs.*,
  488 N.W.2d 282 (Minn. 1992) ...................................................................33

*Rasmussen v. Two Harbors Fish Co.*,
  832 N.W.2d 790 (Minn. 2013) ...................................................................31

*Solum v. Childs*,
  2007 Minn. Dist. LEXIS 59 (Minn. Dist. Ct. June 11, 2007) ...........................33

*State by Woyke v. Tonka Corp.*,
  420 N.W.2d 624 (Minn. Ct. App. 1988).......................................................5, 33

*US Dominion, Inc. v. Fox News Network, LLC*,
  2023 WL 2730567 (Del. Super. Ct. Mar. 31, 2023).........................................28

## STATE STATUTES

Minn. Stat. § 549.20, subd.1(a).................................................................1, 12, 33

## OTHER AUTHORITIES

6A Fed. Prac. & Proc. Civ. § 1500 (3d ed.)..................................................27

## **INTRODUCTION**

CAIR and six of its high-ranking officers and employees ("the Individual Defendants"), having issued the false and defamatory Press Release about CAIR's Minnesota federal lawsuit against Ms. Saroya, a Minnesota resident, accusing her of committing crimes of cyberstalking and harassment in Minnesota, knowing that Minnesota was the center of Ms. Saroya's professional and personal life and intending to cause her maximum harm in Minnesota, now oppose Ms. Saroya's motion to amend to add the Individual Defendants as parties despite admitting that they were directly involved in the drafting, approval and publication of the Press Release. Tellingly, CAIR and the Individual Defendants concede that Ms. Saroya has a valid amendment for punitive damages. *See* Minn. Stat. § 549.20, subd. 1(a) (punitive damages allowed upon "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others") (emphasis added). CAIR opposes the amendment on two primary grounds.

***First***, it incorrectly asserts that this Court cannot exercise personal jurisdiction over the Individual Defendants because their conduct was undertaken in their capacity as employees or agents of CAIR. In so arguing, it ignores controlling precedent from the U.S. Supreme Court and this Court directly on point, holding that out-of-state employees of a publication can be subject to personal jurisdiction for their tortious conduct in drafting, editing, or publishing a defamatory article

targeting a plaintiff in her forum state. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (affirming the exercise of jurisdiction over out-of-state employees of National Enquirer in a defamation case where "focal point" of defamatory article was California; "[T]heir status as employees does <u>not somehow insulate them from jurisdiction.</u>") (emphasis added); *American Dairy Queen Corp. v. Blume*, 2011 WL 6994715, at *9 (D. Minn. Dec. 2, 2011) (exercising jurisdiction over out-of-state defendants; the tort of defamation "encompass[es] the intent to harm [the plaintiff] and that harm would be suffered in Minnesota, [plaintiff's] principal place of business" and "this Court can exercise personal jurisdiction over Defendants because Defendants must reasonably have anticipated being haled into court in Minnesota" based on their conduct).

Indeed, as set forth below and in the accompanying declaration of Ms. Saroya, not only is this case the quintessential scenario envisioned by *Calder*, where the entire "focal point" of the defamatory Press Release was Minnesota, the Individual Defendants have very longstanding, persistent and purposeful contacts with Minnesota that span decades. This includes the Individual Defendants' education in Minnesota, businesses in Minnesota, political activities in Minnesota, fundraising in Minnesota, trips to and meetings in Minnesota, and communications within Minnesota to lobby Minnesota public officials to: (i) remove or arrest Minnesota public officials; (ii) change Minnesota laws; (iii) close Minnesota facilities; or (iv)

pay attention to lawsuits that CAIR has filed in Minnesota. Put bluntly, CAIR's assertion that exercising jurisdiction over the Individual Defendants would offend "traditional notions of fair play and substantial justice," given their purposeful contacts with Minnesota, cannot be, and is not, serious. (*See* Decl. of Lori Saroya dated Jan. 3, 2025 ("Saroya Decl.") ¶¶ 4-5, 8-16, 19-27, 31-34, 37-39.)

**_Second_**, CAIR, once again ignoring controlling precedent and its own conduct in both concealing the role of the Individual Defendants in drafting and issuing the Press Release and thwarting discovery into its public relations operations, contends that the claims against the Individual Defendants are time-barred. They are not. Pursuant to Rule 15(c)(1)(C), the claims relate back to the date of the filing of the original Complaint because CAIR, in issuing the defamatory Press Release and in sharp contrast to its numerous other press releases that provide specific individual points of contact involved in the press release, concealed the names and roles of the Individual Defendants in the Press Release. Rather, CAIR's website listed Mr. Allison, and only Mr. Allison, as the author and poster of the Press Release. CAIR's website obscured and, indeed, concealed the role that the Individual Defendants had in actually drafting and publishing the Press Release, which is **_precisely_** the circumstance where Rule 15 allows the amendment of parties to relate back to the date of the original complaint. *See, e.g., Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548-49 (2010) (if a plaintiff sues the wrong party based upon a

3

misunderstanding of the roles the parties played in the conduct, transaction, and occurrence giving rise to the plaintiff's claim, then the plaintiff has made a "mistake concerning the proper party's identity," even if the plaintiff knew of the existence of both parties); *Bishop v. St. Jude Med. S.C., Inc.,* 2020 WL 4352682, at *10 (D. Minn. July 29, 2020) ("A plaintiff who is aware of the existence of two parties but misunderstands the roles that each party played in the conduct that gave rise to her claim has made a mistake within the meaning of Rule 15(c)(1)(C).").

Further, CAIR's continuous and multi-year campaign of thwarting all discovery, including discovery prior to the Press Release into its public relations operations, equitably estops it from contending that Ms. Saroya's proposed amendment against the Individual Defendants is somehow untimely. *See Schrader v. Royal Caribbean Cruise Line, Inc*., 952 F.2d 1008, 1013 (8th Cir. 1991) ("[T]he doctrine of equitable estoppel has been applied to prevent a defendant from relying on a limitations bar if that defendant contributed to confusion about who the proper defendant was.").

**_Finally_**, CAIR has offered a hodge podge of arguments asserting that Ms. Saroya's claims against the Individual Defendants for aiding and abetting and intentional infliction of emotional distress ("IIED") are somehow not viable, including asserting that Ms. Saroya has not alleged sufficiently "extreme and outrageous conduct," despite conceding that she has sufficiently alleged facts that

would support her punitive damage claims.  *See State by Woyke v. Tonka Corp.*, 420 N.W.2d 624, 629 (Minn. Ct. App. 1988) ("[T]he standards for punitive damages are similar to those required to find intentional infliction of emotional distress.").  As discussed herein, those arguments are meritless.

## **ARGUMENT**

### I.    **There Is Clear Personal Jurisdiction Over The Individual Defendants**

#### A.    **CAIR's Argument That The Individual Defendants' Conduct In Their Capacity As Employees And Agents Of CAIR Exempts Them From Personal Jurisdiction Is Willfully Misleading And Directly Contrary To Controlling Precedent**

As a threshold matter, CAIR represents to this Court that a "a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity," to contend that because the Individual Defendants' conduct at issue was undertaken in their capacity as employees or agents of CAIR, they are somehow exempt from personal jurisdiction.  (Opp. Br. at 9.)  In so doing it misleadingly cites *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986) and *Sanford v. Maid–Rite Corp.*, 2014 WL 12540484, at *11 (D. Minn. Jan. 3, 2014).  CAIR not only misleadingly cites to those cases to mischaracterize the rule of law, but willfully ignores the controlling law, including U.S. Supreme Court precedence directly on point.  *See Calder*, 465 U.S. at 790 (affirming the exercise of jurisdiction over out-of-state employees of National

Enquirer in a defamation case; "[T]heir status as employees does <u>not somehow</u> <u>insulate them from jurisdiction.</u>") (emphasis added).

The law is plain that a court may not exercise personal jurisdiction over an employee merely for acts undertaken in his/her corporate capacity when unconnected to the tortious conduct at issue. However, when the employee or agent engages in the underlying tortious conduct on behalf of his principal, then personal jurisdiction can be exercised based on the employee's conduct.[1] *See id.* at 790-791.

In *Calder*, plaintiff-actress Shirley Jones sued two out-of-state employees of the National Enquirer, a Florida company, for libel in California court based on an article they authored and edited in Florida and published to a nationwide audience. *Id.* at 784-786. The employees' only contacts with California were almost exclusively a few business trips and phone calls. *Id.* Plaintiff lived and worked in California, and the defendants were well-aware of that fact. *Id.* The California

---

[1] This rule of law is simply an extension of the well-established legal principle that agents who participate in the commission of a tort are personally liable as well as the principal whom they serve. *See Graff v. Robert M. Swendra Agency, Inc.*, 776 N.W.2d 744, 749 (Minn. Ct. App. 2009), *aff'd*, 800 N.W.2d 112 (Minn. 2011) (imposing liability on both the agent and the principal; "This liability is based on an agent's conduct and is justified because persons are responsible for the legal consequences of the torts they commit."); *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 895 (D. Minn. 2013) (holding corporate officers and employees individually liable for their involvement in tortious conduct, regardless of whether they were acting in their corporate or employment capacity; "Simply because a corporation may be vicariously liable for its employee's allegedly tortious conduct, it does not follow that the employee is not liable for her own conduct.").

Superior Court granted a motion to dismiss, ruling that there was no personal jurisdiction. The California Court of Appeals reversed. *Id.*

In affirming that California had jurisdiction over the defendants, the Supreme Court rejected the same argument made by CAIR here, namely that the defendant-employees' ancillary contacts with the forum did not give rise to personal jurisdiction.

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, <u>their status as employees does not somehow insulate them from jurisdiction</u>. Each defendant's contacts with the forum must be assessed individually . . . . In this case, <u>petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis</u>.

*Id.* at 790 (emphasis added).

Similarly, in *Carlock v. Pillsbury Co.*, 1988 WL 404838 (D. Minn. Jan. 4, 1988), plaintiff-franchisees brought suit against an out-of-state defendant-franchisor and the owners of such franchise for fraud and intentional misrepresentation. *Id.* at *8. Importantly, plaintiffs alleged that the both the franchisor and certain individual defendants, themselves, made false representations and intentionally omitted material facts from plaintiffs. *Id.* The District Court, relying on *Calder*, held that employees "are <u>not automatically exempted from jurisdiction merely because their contacts with a forum result from their business dealings</u>." *Id.* at *6 (emphasis added). As such, the Court was required to examine the contacts of the individual

7

defendants to determine if personal jurisdiction was proper. While the District Court found that only one of the individual defendants had sufficient contacts with the state to be subject to personal jurisdiction, this was appropriate because there was no evidence that the other individual defendants directly participated in the misconduct. *Id*. at \*7.

It is for this very reason that CAIR's misleading citation of legal authority is so eyebrow-raising. For example, in *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 567 (8th Cir. 1986), the operator of a rice processing plant brought a breach of contract and negligent design action against the developer of the processing plant. Additionally, the operator sought to enforce guaranties by non-residents. *Id.* Importantly, there were no allegations of intentional tortious conduct against the guarantors. Moreover, the evidence of their "contact" with the forum state was completely unrelated to the claim itself, making *Ark. Rice Growers* inapposite to this case. *Id.* at 573.

Similarly, CAIR relies on *Sanford v. Maid-Rite Corp.*, 2014 WL 12540484 (D. Minn. Jan. 3, 2014), a case that was reversed and remanded on other grounds, a fact which CAIR fails to bring to the Court's attention. In that case, plaintiff-franchisees brought fraud and negligent misrepresentation claims against defendant-franchisor and the franchisor's directors. *Id.* at \*1. The District Court refused to exercise personal jurisdiction over the defendant-directors, who were named only

because of their status as directors, because plaintiff failed <u>to allege any contacts</u> <u>with the forum</u> state in any capacity or provide any evidence that the directors actually engaged in any tortious act. *Id.* at *7.

Here, as was the case in *Calder*, the Individual Defendants "are primary participants in an alleged wrongdoing intentionally directed at a [Minnesota] resident, and jurisdiction over them is proper on that basis." *See Calder,* 465 U.S. at 790.

**B.    Under *Calder*, There Is Clear Personal Jurisdiction Over the Individual Defendants Where They Knowingly Directed The Defamatory Press Release About CAIR's Minnesota Lawsuit Against Ms. Saroya, A Minnesota Resident, Knowing She Lived In Minnesota and Intending Its Harmful Effects To Be Felt In <u>Minnesota Where They Were, In Fact, Felt</u>**

Despite intentionally drafting the defamatory Press Release about the 2021 Litigation – a federal lawsuit filed by CAIR <u>in Minnesota</u> against Ms. Saroya - - knowing that Ms. Saroya lived and worked <u>in Minnesota</u> and falsely characterizing <u>a Minnesota judicial ruling</u> from Judge Nelson and intending its effects to be felt <u>in</u> <u>Minnesota</u>, CAIR now takes the absurd position that there is no personal jurisdiction over the Individual Defendants who were directly involved in the drafting, approval and publication of that Press Release.  CAIR is wrong as a matter of well-established Supreme Court precedence in *Calder* and Minnesota case law applying that precedence.

In *Calder*, the Supreme Court held that given the individual defendants' intentional conduct in Florida in drafting and publishing the defamatory article, which was allegedly calculated to cause harm in California where its effects were felt, exercising jurisdiction over them in California did not offend traditional notions of fair play and substantial justice where the "focal point" of the allegedly libelous article and the harm suffered was California. *Id.* at 788-89.

> The allegedly libelous story <u>concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California</u>.  The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation was suffered in California. In sum, <u>California is the focal point both of the story and the harm suffered</u>.

*Id.* (emphasis added).

Minnesota Courts have applied *Calder* where the plaintiff has made a "prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).  For example, in *American Dairy Queen*, 2011 WL 6994715, at *9, this Court held that defamatory statements targeted at a Minnesota entity satisfied the *Calder* test because the tort of defamation "encompass[es] the intent to harm [the plaintiff] and that harm would be suffered in Minnesota, [plaintiff's] principal place of business." *Id.*  ("this Court can

exercise personal jurisdiction over Defendants because Defendants must reasonably have anticipated being haled into court in Minnesota" based on their conduct).  *See also Hek, LLC v. Votum Enters., LLC*, 2022 WL 329682, at *5 (D. Minn. Feb. 3, 2022) (exercising jurisdiction under *Calder* because defendants knew that plaintiff was in Minnesota and that their communications were directed into Minnesota and negative effects of their conduct were felt primarily within the state); *Allina Health Sys. v. Gentox Med. Servs., LLC*, 2022 WL 3647822, at *3 (D. Minn. Aug. 24, 2022) (exercising jurisdiction under *Calder* because individual member's tortious conduct was felt primarily within Minnesota and that defendant would naturally be aware that the effects of his alleged fraud would be felt in Minnesota); *Hmong Coll. Prep Acad. v. Woodstock Cap., LLC & Clark Reiner*, 2021 WL 4690978, at *4 (D. Minn. Oct. 7, 2021) (exercising jurisdiction under *Calder* because individual defendant-employee "intentionally made material misrepresentations aimed at [plaintiff], which is located in Minnesota, and [plaintiff suffered financially] as a result").

Here, CAIR and the Individual Defendants intentionally published the false and defamatory Press Release, aimed at Ms. Saroya in Minnesota, causing harm to Ms. Saroya in Minnesota, which they knew and intended was likely to be felt in this state.  Indeed, the Individual Defendants had a detailed knowledge of Ms. Saroya's personal and professional presence in Minnesota and her ongoing involvement in the Minnesota community.  (*See* Saroya Decl. ¶¶ 48-49.)

Moreover, as reflected by *Calder*, the "focal point" of the defamatory Press Release was Minnesota. It focused on CAIR's attempt to justify its dismissal of its federal Minnesota lawsuit against Ms. Saroya, a resident of Minnesota. It was published knowing that Minnesota was the heart of Ms. Saroya's professional, personal, and religious life. It also accused Ms. Saroya of committing crimes of cyberstalking and harassment from Minnesota and it falsely characterized a judicial ruling from Judge Nelson, a federal Minnesota judge. Further, as Ms. Saroya alleges, CAIR and the Individual Defendants knew and intended that the devastating effects of falsely accusing Ms. Saroya of criminal conduct would be felt in Minnesota. Indeed, the devastating effects on Ms. Saroya were, in fact, felt in Minnesota, as intended, which included lost employment opportunities, bullying and harassment, severe emotional distress requiring medical attention, and hostility from a member of her local mosque. (*See* Saroya Decl. ¶¶ 47-49.)

Under these circumstances, the Individual Defendants' professed claim that they did not "intend" the effects of the Press Release to be felt in Minnesota is not only ridiculous, but mendacious. Indeed, their position is eviscerated by their acknowledgment that Ms. Saroya's allegations support a claim for punitive damages, which requires a clear and convincing showing of "<u>deliberate disregard for the rights or safety</u>" of Ms. Saroya. *See* Minn. Stat. § 549.20, subd. 1(a). As this Court noted in *American Dairy Queen*, it can readily determine based on the circumstances that

"Defendants must reasonably have anticipated being haled into court in Minnesota." 2011 WL 6994715 at *9.

Moreover, the Individual Defendants' purposeful contact with Minnesota in issuing the Press Release was not isolated.  As set forth in detail in Ms. Saroya's declaration, Individual Defendants Hooper, Mitchell, and Allison, for years and continuing to present day, have drafted and issued scores of press releases into Minnesota, making themselves the "points of contacts" for information relating to the substance of those press releases, addressing significant Minnesota political and social issues.  By way of limited example, these have included issuing press releases into Minnesota calling for the resignation of certain Minnesota political leaders, demanding the arrest of Minnesota law enforcement members, urging municipal and state authorities to institute or change various Minnesota laws, and advertising CAIR's initiation of legal actions in Minnesota against Minnesota residents and entities.  (*See* Saroya Decl. ¶¶ 23, 31-34, 37-39.)  Accordingly, there is clear personal jurisdiction over the Individual Defendants for their intentional tortious conduct in issuing the Press Release at issue.

### C.    Defendants Hooper and Awad's Continuous And Extensive Contacts With Minnesota Subject Them To General Personal Jurisdiction

In addition to the Individual Defendants' being subject to personal jurisdiction under *Calder* and *American Dairy Queen* based on their conduct of directly drafting,

reviewing, approving and publishing the Press Release targeting Ms. Saroya in Minnesota, Defendants Hooper and Awad are subject to general jurisdiction given their continuous and systemic contacts with Minnesota.  The U.S. Supreme Court had made clear that general jurisdiction exists over a nonresident defendant when that defendant's contacts with the forum are so continuous and systemic that they render the defendant "essentially at home" in the forum state.  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

Mr. Hooper grew up in Minnesota, attended the University of Minnesota both as an undergraduate and as a graduate student, and attended William Mitchell College of Law in St. Paul for at least one semester.  He was at one point employed by KSTP-TV in Minnesota as a news producer.  (*See* Saroya Decl. ¶ 22.)

From 1987 through at least 1997, Mr. Hooper lived, or at least owned a residence, at 2612 16th Avenue South in Minneapolis, Minnesota.  According to Minnesota state databases, he owned and operated two Minnesota businesses, one called Halal Company and the other called Press Pass Media Relations, which both list 2612 16th Avenue South as their principal place of business.  (*Id.* ¶ 21.)

Mr. Hooper was a member and representative of the Islamic Council of Minnesota, the public relations director for the Islamic Center of Minnesota, the office manager for the Minnesota Council for Peace and Justice in the Middle East, a member of the Twin Cities Commission for the Liberation of South Africa, the

community coordinator for the Islamic Information Service, and a member of various other Minnesota-based groups. Mr. Hooper even ran for the Minnesota State Senate in 1982. (*Id.* ¶ 19.)

Mr. Hooper also continuously travels to Minnesota to offer in-person media trainings to Muslim and non-profit leaders in Minnesota in partnership with CAIR-Minnesota. He is regularly invited to speak at banquets, dinners and galas in Minnesota, and fundraise in Minnesota. For over twenty years, continuing to present day, he also regularly issues press releases into Minnesota on political and social issues deeply tied to Minnesota, including on a state and municipal level, in which Mr. Hooper has involved himself and his attempt to spark public change in Minnesota. By way of limited example, this has included calling for the resignation of certain Minnesota political leaders, demanding the arrest of Minnesota law enforcement members, urging municipal and state authorities to institute or change various Minnesota laws, and advertising CAIR's initiation of legal actions in Minnesota against Minnesota residents and entities. (*Id.* ¶¶ 23-24.)

Similarly, Mr. Awad's contacts with Minnesota are extensive and continuous. Mr. Awad resided in Minnesota for years where he was an engineering student at the University of Minnesota involved in numerous campus organizations, an office worker at the University of Minnesota Hospital and Clinic, a member of the Board of Directors of the Islamic Center of Minnesota, and a writer/publisher of op-eds in

Minnesota newspapers, in particular the Star Tribune.  Moreover, Mr. Awad was married in Hennepin County, Minnesota in May of 1987.  (*Id.* ¶ 8.)

Continuously for the last twenty years, Mr. Awad has travelled to Minnesota to meet with friends, fundraise from Minnesota donors, and speak at dinners and galas.  He also regularly travels to Minnesota to personally be involved in the selection and training of Minnesota board members and hiring and onboarding of Minnesota residents to work in the CAIR-Minnesota office.  (*Id.* ¶¶ 11-13.)

## II.    To the Extent That There Is Any Doubt As To Whether This Court Has Personal Jurisdiction Over The Individual Defendants, The Court Should Order Jurisdictional Discovery, Particularly In Light Of CAIR's <u>Non-Compliance With This Court's Existing Discovery Order</u>

To the extent that there is any doubt as to personal jurisdiction over the Individual Defendants, which there should be none, Ms. Saroya requests that the Court order expedited jurisdictional discovery with specific court-ordered deadlines, particularly given CAIR's well-established and ongoing discovery violations, including its non-compliance with this Court's existing Discovery Order.  Indeed, CAIR still <u>has not produced documents and answered interrogatories</u> that it agreed to produce over six (6) months ago relating to the drafting, approval, publication and dissemination of the Press Release and communications about the Press Release.[2]

---

[2] Specifically, this basket of discovery that CAIR agreed to produce and which is also encompassed by the Court's existing Discovery Order consists of 13 Documents Requests (Req. Nos. 5, 6, 7, 8, 9, 18, 24, 25, 28, 29, 30, 31, and 39) and 7 Interrogatories (Interrog. Nos. 2-7, 13).

Obviously, this discovery is not only directly relevant to CAIR's liability, but is also germane to the exercise of personal jurisdiction over the Individual Defendants that created and published it and ensured its dissemination in Minnesota. For the Court's convenience, Ms. Saroya attaches, as Exhibit A to the accompanying Declaration of Steven C. Kerbaugh, a proposed Jurisdictional Discovery Order, providing for documents to be produced and depositions for the Individual Defendants for no more than three hours each, limited to jurisdictional

issues, to be taken within the next thirty (30) days.

It is well-settled in the Eighth Circuit that "discovery is not limited to the merits of a case; where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016). Jurisdictional discovery should be permitted when a plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations," regarding a defendant's contacts with the forum state. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (reversing the denial of jurisdictional discovery in defamation case); *NextGen HBM, Inc. v. ListReport, Inc.*, 2017 WL 8229442, at *3 (D. Minn. Feb. 9, 2017) (allowing jurisdictional discovery in defamation case; "[F]ederal courts operate generally on an assumption that the plaintiff's forum choice is a convenient one. Given this degree of deference, Plaintiffs must be provided an opportunity to gather limited discovery in support of

17

their chosen forum.") (citation omitted).  *See also Kruger v. Lely N. America, Inc.*, 2020 WL 12991167, at *4 (D. Minn. Dec. 14, 2020) (granting jurisdictional discovery where the record raised issues affecting jurisdiction and plaintiff had limited access to information that would help resolve such issues); *Scoular Co. v. Ceres Glob. AG Corp.*, 2014 WL 12937887, at *2 (D. Minn. Sept. 26, 2014) (finding that evidence of defendant's initiation of a potential business relationship with plaintiff, who had an office in Minnesota, and the attendance of two executives of defendant at a meeting at plaintiff's office, met the threshold for the availability of discovery into additional information that could support personal jurisdiction).

Here, not only did the Individual Defendants draft, review, approve for publication and then publish the Press Release about CAIR's Minnesota lawsuit against Ms. Saroya, knowing that Ms. Saroya lived in Minnesota, and intending its effects to be felt in Minnesota, there is extensive existing evidence of each of the Individuals Defendants' contacts with Minnesota warranting further jurisdictional discovery.   Indeed, as set forth in Ms. Saroya's Declaration, the Individual Defendants have consistently and purposely availed themselves of Minnesota.  *See* (Saroya Decl. ¶¶ 7-39.)

By way of limited example, Messrs. Awad and Hooper regularly travel to Minnesota to speak at banquets, dinners and galas and to provide in-person media trainings to Muslim and non-profit leaders in Minnesota.   In addition, Messrs.

Hooper, Mitchell, and Allison have issued press releases on behalf of CAIR-Minnesota and CAIR to lobby Minnesota public officials to: (i) remove or arrest Minnesota public officials; (ii) change Minnesota laws; (iii) close Minnesota facilities; or (iv) pay attention to lawsuits that CAIR has filed in Minnesota. Messrs. Hooper, Mitchell and Allison list themselves as points of contact for the media, public officials, and others to contact them on these and other Minnesota issues. By way of limited example, on August 7, 2024, Hooper, Mitchell and Allison issued a press release into Minnesota on behalf of CAIR-Minnesota, entitled: "CAIR-MN Calls for Resignation of Lino Lakes City Council Member." All three men identified themselves as points of contact should any Minnesota resident or member of the media wish to communicate with CAIR regarding these Minnesota issues. (*See id.* ¶¶ 11, 23, 31-34, 37-39.)

Similarly, Ms. Allouch is former Chair of the CAIR National Board of Directors and is currently co-chair on its Emeritus Board. Not only was Ms. Allouch involved in drafting and/or revising the Press Release that forms the basis of this litigation, CAIR has flown her to Minnesota, including to be a featured speaker at a CAIR-Minnesota banquet and fundraiser. Ms. Allouch also provides monthly conference calls and online and in-person trainings for chapter board chairs, including CAIR-Minnesota's board chair. (*See id.* ¶¶ 26-28.)

19

Put bluntly, as set forth in Ms. Saroya's Declaration, there is extensive evidence that the Individual Defendants have had and continue to have purposeful contacts with Minnesota such that jurisdictional discovery would be warranted, should the Court deem it necessary.

## III.   Ms. Saroya's Claims Against The Individual Defendants Are Timely

### A.   The Relation-Back Doctrine Permits Ms. Saroya's Claims Against Individual Defendants

CAIR's argument that Ms. Saroya's claims against the Individual Defendants are time-barred is without merit, given that the claims relate back to Ms. Saroya's original timely Complaint. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001) ("If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint.").  Pursuant to Rule 15:

> an amendment to a pleading relates back to the date of the original pleading when the amendment changes the party or the naming of the party against whom a claim is asserted, if the claim arises out the same conduct, transaction, or occurrence set out in the original complaint and if, within the ninety-day period provided by Rule 4(m) . . . the party to be brought in by amendment:
>
> [1] received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> [2] knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Osorio v. Minneapolis Hotel Acquisition Grp., LLC*, 335 F. Supp. 3d 1141, 1144-45 (D. Minn. 2018) (citing Fed. R. 15(c)(1)(C)) (holding that an amended complaint related back because plaintiff was aware of new defendant's existence but did not fully understand the relationship between the new and original defendants).

As the United States Supreme Court has held, the Court's analysis under Rule 15(c) must focus on the <u>proposed defendants' knowledge of the action</u>, not the plaintiff's knowledge at the time they filed their original Complaint. *Krupski*, 560 U.S. at 548-49 ("The only question under Rule 15(c)(1)(C)(ii) . . . is whether party A knew or should have known that, absent some mistake, the action would have been brought against him."). Here, the proposed individual defendants all clearly knew or should have known, immediately after the Complaint was filed and served in January 2024, that the action should have been brought against them as well.

First, defendants Nihad Awad and Ibrahim Hopper were <u>personally</u> served with the original Complaint at their home and in hand respectively on January 16, 2024, prior to the expiration of the statute of limitations, in their roles as senior leaders at CAIR and for the purpose of ensuring service on CAIR. (*See* Aff. of Service dated Jan. 18, 2024 (ECF No.10); Aff. of Posting dated Jan. 19, 2024 (ECF No.11).) Thus, they had immediate knowledge of the lawsuit.

Second, the Complaint is based on the false and defamatory Press Release that all the Individual Defendants directly participated in drafting and publishing. It

defies belief that they did not know that Ms. Saroya's defamatory action should have been brought against them as well.

Third, the Individual Defendants are current and former employees of CAIR represented by the same attorneys representing CAIR in the current action. Thus, all of the Individual Defendants clearly received timely notice of the action. *See Ames v. Vavreck*, 356 F. Supp. 931, 942 (D. Minn. 1973) (allowing amendment to add new defendants after statute of limitations expired and holding Rule 15(c) was satisfied where the same attorney represented both the originals and proposed defendants).

In interpreting Rule 15, federal courts have recognized that a mistake, misunderstanding, or erroneous belief as to an individual's <u>role</u> in the transaction or conduct giving rise to the lawsuit is <u>precisely</u> the type of "mistake" contemplated by the Supreme Court in *Krupski*. *See*, *e.g.*, *Krupski*, 560 U.S. at 549 (if a plaintiff sues the wrong party based upon a misunderstanding of the roles the parties played in the conduct, transaction, and occurrence giving rise to the plaintiff's claim, then the plaintiff has made a "mistake concerning the proper party's identity," even if the plaintiff knew of the existence of both parties); *Bishop*, 2020 WL 4352682 at *10 ("A plaintiff who is aware of the existence of two parties but misunderstands the roles that each party played in the conduct that gave rise to her claim has made a mistake within the meaning of Rule 15(c)(1)(C)."); *Coleman v. Marriott Int'l, Inc.*,

2017 WL 957446, at *3 (D. Kan. Mar. 13, 2017) (allowing motion to amend to add party; plaintiff failed to sue party in original complaint due to "her counsel's misunderstanding of the roles of True North and the other Defendants in the alleged negligence causing Plaintiff's injuries"); *Draves v. Big Dutchman, Inc.*, 2012 WL 7984628, at *7 (D. Idaho Nov. 8, 2012), *report and recommendation adopted*, 2013 WL 1715477 (D. Idaho Apr. 19, 2013) (plaintiff's mistake as to the role that parties played in the conduct at issue was "precisely the type of factual mistake contemplated by the Supreme Court in *Krupski*"; "[A] plaintiff might know that a prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression.") (citation omitted); *Santistevan v. City of Colorado Springs*, 2012 WL 280370, at *6 (D. Colo. Jan. 31, 2012) (allowing amended complaint to add new party which related back to date of original complaint; "Plaintiff's misunderstanding regarding Sergeant Rodgers' role in the alleged search constitutes a 'mistake' within the meaning of Rule 15(c)(1)(C)(ii).").

Here, CAIR's website listed Mr. Allison, and only Mr. Allison, as the author and poster of the Press Release. CAIR's website concealed from Ms. Saroya the roles that each Individual Defendant <u>actually had in drafting the Press Release</u>. (*See* Saroya Decl. ¶¶ 50-53.) Accordingly, Rule 15(c) provides that Ms. Saroya's claims

against the Individual Defendants are timely and relate back to her original Complaint.

**B.     Given CAIR's Well-Documented Refusal To Produce Discovery, Including Into Its Media Relations Operations, For Over Three Years, It Is Estopped From Asserting Any Purported Untimeliness Related To The Amended Complaint**

For over three years, CAIR has engaged in a well-documented and continuous effort to stonewall ***all*** discovery, including but not limited to discovery concerning its structure, operations, officers, and its media relations operations. This was the case well before Ms. Saroya initiated this lawsuit and CAIR thumbed its nose at this Court's discovery Order dated Nov. 25, 2024. Specifically, in the 2021 Litigation, Ms. Saroya, on August 4, 2021, served Rule 34 Requests on CAIR. At the time of CAIR's dismissal of the 2021 Litigation, CAIR had not produced a single document—***not one***—in response to those Requests. Similarly, CAIR pursued the same gambit with Ms. Saroya's interrogatories that were served on them on August 23, 2021, largely refusing to provide any substantive information. This prompted Ms. Saroya to serve a motion to compel in the 2021 Litigation. (*See* CASE 0:21-cv-01267-SRN-TNL, Doc. 36, Filed 10/18/21.)

As set forth in that motion to compel and the accompanying Declaration of Steven C. Kerbaugh (CASE 0:21-cv-01267-SRN-TNL, ECF No. 38), Ms. Saroya's discovery sought, among other things:

24

- documents and communications relating to CAIR's media relations, public relations or crisis management operations (Req. Nos. 34, 35);

- documents relating to or constituting social media postings or statements, or public statements of any kind, relating in any way to Lori Saroya or to CAIR's assertions that she has engaged in "defamation" or "harassment." (Req. No. 59);

- documents referring or relating to or reflecting or constituting evidence that Lori Saroya has ever engaged in "harassment" or "abusive" conduct of any kind (Req. No. 60);

- documents relating to meetings or calls with CAIR's Executive Director, chapter officials or senior staff, including officials of CAIR-MN (Req. No. 36); and

- minutes or notes taken by CAIR officers at CAIR National Council meetings (Request Nos. 38-39).

CAIR never produced any documents in response to these or any of Ms. Saroya's Rule 34 requests and had failed to substantively answer her interrogatories. Of course, this discovery in the 2021 Litigation would have provided information on the media relations team and CAIR officials likely to be involved in issuing the Press Release at issue in this case.

Given CAIR's continuous and multi-year campaign to violate its discovery obligations, CAIR is equitably estopped from contending that Ms. Saroya's proposed amendment against the Individual Defendants is somehow untimely. *See Schrader*, 952 F.2d at 1013 ("The doctrine of equitable estoppel has been applied to prevent a defendant from relying on a limitations bar if that defendant contributed to confusion about who the proper defendant was."). To invoke the doctrine, a

plaintiff must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014). "Plaintiffs' failure to bring a claim is reasonable if 'despite all due diligence, [they are] unable to obtain vital information bearing on the existence of [the] claim.'" *Sandoval v. American Bldg. Maint. Indus., Inc.*, 2007 WL 142174, at *3 (D. Minn. Jan. 17, 2007) (citation omitted).

As this Court well-knows, CAIR has completely thwarted Ms. Saroya's attempts to obtain discovery germane to the individuals involved in creating and publishing the defamatory Press Release, at every turn. It began in the 2021 Litigation when CAIR refused to produce any discovery, including discovery into CAIR's media relations team, its operations, and communications with the public and its various chapters, including CAIR-MN. CAIR's complete stonewalling continued unabated in this case. CAIR has not produced a single document in discovery beyond its limited Initial Disclosures, despite Ms. Saroya serving her Document Requests <u>over seven months ago</u>.

Moreover, CAIR falsely represented in June 2024, **<u>over six months ago</u>**, that it would produce its documents concerning the drafting and publication of the Press Release, but to date, CAIR has failed to produce any documents at all. Accordingly, CAIR has stood in Ms. Saroya's way and prevented her from obtaining the necessary information to determine the proper defendants in her action. Accordingly, CAIR's

stonewalling and discovery misconduct estops it from contending that Ms. Saroya's proposed Amended Complaint against the Individual Defendants is untimely. *See Bechtel v. Robinson*, 886 F.2d 644, 650 (3d Cir. 1989) (holding that defendant was estopped from pleading statute of limitations defense where plaintiff was unable to identify the proper owner of the restaurant due to defendant's conduct); *Zimmer v. United Dominion Indus., Inc.*, 193 F.R.D. 620, 623–24 (W.D. Ark. 2000) (allowing amended complaint where the defendant's misleading conduct, including incomplete answers to valid inquiries from plaintiff, made it difficult or impossible to file a timely claim against the correct party); 6A Fed. Prac. & Proc. Civ. §1500 (3d ed.) ("If the originally named defendant or the party sought to be added either knowingly allows plaintiff to think plaintiff has sued the proper party or actually misleads plaintiff as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute-of-limitations defense.").

## IV.    Saroya's Aiding And Abetting Claims Against The Individual Defendants Who Directly Ordered, Directed, Drafted, Approved and <u>Published The Defamatory Press Release Are Clearly Not Futile</u>

CAIR seeks to evade having its officers and employees held liable for ordering, directing, drafting, approving and publishing the defamatory Press Release by arguing that any purported aiding and abetting claim is "futile" because it should held to the pleading standards of a <u>different claim</u> - - civil conspiracy - - one which is legally distinct from aiding and abetting.    However, before the Court even

27

addresses the meritless nature of CAIR's position, it is worth noting that even without regard to any aiding and abetting claim, the Individual Defendants still have direct liability for drafting, approving, and/or publishing the Press Release.

**A.    The Individual Defendants Have Direct Liability For Their Conduct In Furtherance Of Publishing The Press Release In Addition To Aiding and Abetting Liability**

As Minnesota Courts have made clear, liability for defamation is not limited to the individuals who authored the defamatory statements, but also extends to those individuals who participated in the creation and publication of the offending statements.  Indeed, "a corporate officer who did not author a defamatory statement, but participated in the publication of the statement, may be held personally liable for defamation." *DeRosa v. McKenzie*, 936 N.W.2d 342, 346 (Minn. 2019) (<u>reversing</u> dismissal of personal defamation claim against corporate officer, where officer was alleged to have authorized and approved the defamatory publication and had control over the publication); *Kesanen v. D & H Const. of Eveleth, Inc.*, 2006 WL 3303970, at *5 (Minn. Ct. App. Nov. 14, 2006) (holding that a corporate officer could be held personally liable, in addition to the corporation, where the officer personally took part in the commission of defamatory statements).

Indeed, the Delaware Superior Court recently considered this same legal principle in the Dominion voting case, *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *22 (Del. Super. Ct. Mar. 31, 2023).  There, Dominion

sought to hold Fox Corporation liable for the publication of defamatory statements by hosts of Fox News Network ("FNN"), a separate corporation, by arguing that the Chair of Fox Corporation, Rupert Murdoch, played a direct role in FNN's publishing the statements. Specifically, Dominion argued that Murdoch weighed in on the direction of both the tone and narrative of FNN's coverage and was fundamentally involved in FNN's day-to-day operations. *Id*. at *17. The Court noted:

> To ascertain who is responsible for the publication of a statement, the Court examines who participated in the creation or the publication of the challenged statements, because all who take part in the procurement, composition and publication of a libel are responsible in law and equally so.

*Id*. at *22 (emphasis added). Here, the Individual Defendants have direct liability for the defamatory Press Release in addition to any ancillary liability under an aiding and abetting claim.

### B.    CAIR's Attempt To Impose The Pleading Standard Of Civil Conspiracy On The Aiding And Abetting Claim Is Not Only Meritless, But Disingenuous

CAIR disingenuously attempts to impose the pleading standard of civil conspiracy claims on aiding and abetting claims. Tellingly, CAIR fails to cite a single Minnesota case holding that aiding and abetting claims are subject to a civil conspiracy pleading standard. Rather, CAIR supports its false syllogism that because "liability for civil conspiracy is in substance the same thing as aiding and abetting liability," they are subject to the same pleading standard by

29

mischaracterizing the significance of that quote from *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991).  The *K&S* Court's quote was made in the context that both causes of action are predicated on an underlying tort.  *Id.*  The Court did not hold that the two causes of action are exactly the same, or that the pleading standard for each is identical.

Indeed, Minnesota courts apply different pleading standards to the two causes of action.  While CAIR argues that the "sufficient particularity" pleading standard for civil conspiracy claims also applies to aiding and abetting, this is not the law. Rather, courts hold that pleading a claim for aiding and abetting need only make it "possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded."  *Anderson v. U.S. Bank Nat'l Ass'n*, 2014 WL 502955, at *11 (Minn. Ct. App. Feb. 10, 2014); *Hill v. Orangehook, Inc.*, 2020 Minn. Dist. LEXIS 9119, at *22-23 (Minn. Dist. Ct. July 21, 2020) ( "[T]o state a claim for aiding and abetting . . . the allegations of knowledge and assistance or encouragement need only satisfy Rule 8's requirement of 'a short and plain statement of the claim.'").

Even the "knowledge" element of aiding and abetting "may be averred generally. *See Hill*, 2020 Minn. Dist. LEXIS 9119 at *22-23 (finding that plaintiff's general allegations that the defendants "had knowledge of the violation," and "substantially assisted" another in achieving such violations "while minimal, are

sufficient to put the defendants on notice as to the claims against them"); *ECTG Ltd., Trustwater, Ltd. v. O'Shaughnessy*, 2014 WL 6684982, at *4 (D. Minn. Nov. 25, 2014) (finding a pleading of aiding and abetting sufficient where plaintiffs merely alleged that defendant "was aware of the underlying tortious conduct and that he assisted that conduct by investing a substantial portion of the funds . . . .").

Similarly, CAIR fails to cite a single controlling Minnesota case applying the intra-corporate conspiracy doctrine to a common law cause of action for aiding and abetting. Indeed, the cases relied on by CAIR are completely inapplicable. First, it relies on *Bardell v. Banyan Delaware, LLC*, 2024 WL 727711 (D. Del. Feb. 22, 2024), which is a Delaware case applying Delaware law to a Delaware issue and makes no mention of, or even a passing reference to, the specific intra-corporate conspiracy doctrine.

The second inapplicable case relied upon by CAIR, *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 801 (Minn. 2013), interprets a statutory aiding and abetting claim under the Minnesota Human Rights Act. Specifically, the District Court conducted an extensive analysis of the statutory framework, legislative intent, purpose, and scope of the statute in determining its aiding and abetting provisions apply in certain situations. *Id.* The *Rasmussen* decision has nothing whatsoever to do with the pleading requirements of common law aiding and abetting claims.

## V.    Saroya's Proposed IIED Claim Is Clearly Viable

Despite conceding that Ms. Saroya should be allowed to amend her complaint to assert her punitive damages claims against CAIR and the Individual Defendants for the publication of the Press Release, CAIR takes the untenable position that Ms. Saroya's proposed IIED claim is non-viable because (1) the same Press Release that supports her punitive damages claim is somehow not sufficiently extreme and outrageous; and (2) she has not pled that she suffered distress sufficiently severe. CAIR is wrong on both counts.

First, CAIR misleadingly asserts that an IIED claim "does not lie when the offending conduct consists only of a defamation," relying on the Eighth Circuit's decision in *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017). CAIR's use of *Couzens* is eyebrow-raising in several respects. As a threshold matter, *Couzens* has nothing to do with Minnesota law. It applied Missouri law to Missouri issues that originated in Missouri federal court. *Id.* Moreover, the Court was not proclaiming that the two causes of action are mutually exclusive. Rather, the Court simply held that successfully pleading the elements of defamation does not automatically satisfy the requirements of intentional infliction of emotional distress. *Id.*

Second, Minnesota courts have recognized that the standard for asserting a punitive damages claim under Minnesota law is sufficiently similar to the "extreme and outrageous" element of an IIED claim such that both IIED and punitive damage

standards can be satisfied based on the same set of facts. Specifically, punitive damages in Minnesota "shall be allowed in civil actions only upon <u>clear and convincing evidence</u> that the acts of the defendant show <u>deliberate disregard for the rights or safety of others</u>." Minn. Stat. § 549.20, subd. 1(a) (2010) (emphasis added); *Jirak v. Eichten*, 2012 WL 2505748, at *7 (Minn. Ct. App. July 2, 2012) ("[A] punitive-damages claim requires deliberate disregard for the plaintiff's rights, while defamation is merely premised on publication of a false statement."). Similarly, IIED claims require "extreme and outrageous" conduct, meaning "it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438-439 (Minn. 1983).

Minnesota Courts have made clear that given the substantively similar standards, both IIED and punitive damage standards may be based on the same set of operative facts. *See*, *e.g.*, *State by Woyke*, 420 N.W.2d at 629 ("[T]he standards for punitive damages are similar to those required to find intentional infliction of emotional distress."); *M.H. v. Caritas Fam. Servs.*, 488 N.W.2d 282, 289–90 (Minn. 1992) (suggesting that the same "allegations of outrageous and willful misconduct" may support both claims for IIED and punitive damages); *Solum v. Childs*, 2007 Minn. Dist. LEXIS 59, at *4 (Minn. Dist. Ct. June 11, 2007) (finding defendant's conduct was both "extreme and outrageous" and done "with deliberate disregard for the rights or safety of others"); *Shank v. Carleton Coll.*, 2018 WL 4961472, at *8

(D. Minn. Oct. 15, 2018) ("[G]iven the conclusions already drawn by Judge Schiltz with regard to the adequacy of the existing . . . IIED claims, the Court is satisfied that [plaintiff] alleges a plausible claim 'that the acts of the defendant show[ed] deliberate disregard for the rights or safety of others'" for purposes of a punitive damage claim).

Here, Ms. Saroya alleges that CAIR and the Individual Defendants intentionally targeted her with a knowingly false Press Release accusing her of criminal conduct for the express purpose of causing maximum damage to her reputation and emotional health as part of their efforts to silence Ms. Saroya and others who had raised serious concerns about CAIR's pattern of behavior.  Ms. Saroya further asserts that CAIR's and the Individual Defendants' conduct was done with deliberate disregard to her rights and safety and with full awareness of the high probability of injury to her rights and safety, which included the resulting online harassment and bullying that became so pervasive that Ms. Saroya had concerns about her physical safety.  (*See*, *e.g.*, Am. Compl. ¶¶ 1-3, 59, 73-76, 99-101, 108, 125, 145, 147.)  CAIR's concession that these allegations support punitive damage claims eviscerates its claim that this same conduct somehow does not constitute "extreme and outrageous" conduct.

Third, on the issue of whether Ms. Saroya has alleged distress that is sufficiently severe at the pleading stage, it is worth noting that the vast majority of

cases that CAIR relies on are summary judgment or post-trial decisions, not motion to dismiss decisions. CAIR, in addition to failing to cite adequate severity cases in the context of a motion to dismiss, also fails to cite cases with similar operative facts. Indeed, this Court's decision in *Fredin v. Middlecamp*, 2018 WL 1838100 (D. Minn. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 4616456 (D. Minn. Sept. 26, 2018), is particularly illustrative.

In *Fredin*, the defendant reposted content on twitter accusing the plaintiff of criminal conduct in raping a woman seven years prior, being a danger to women, and falsely identified the plaintiff as a stalker. *Id.* at *1. The plaintiff pleaded IIED, in part, by emphasizing that she subsequently "suffered immense harm, was permanently stigmatized, [and] was subjected to public ridicule" in addition to suffering "severe and ongoing mental anguish due to Defendant's statements" and losing employment and financial opportunities. *Id.* This Court found that the plaintiff adequately pled that he suffered severe distress as a result of Defendant's statements because the Plaintiff alleged specific facts to support his claim and did not rely on conclusory statements. *Id.* at *4.

Here, CAIR and the Individual Defendants also targeted Ms. Saroya with false accusations of criminal conduct, including harassment, that stigmatized her, subjected her to ridicule, and caused her to suffer:

- extremely serious emotional distress, which resulted, among other things, in the requirement <u>that she seek medical treatment</u>;

35

- physical manifestations of emotional distress that include ongoing dizziness, headaches, restlessness, constant worrying, and recurring nightmares;

- online harassment and bullying that was so pervasive that it caused her fear over her physical safety;

- alienation from her fellow Minnesota Muslims such that she stopped attending her mosque that she had attended for years due to the hostility that she experienced in her place of worship; and

- lost employment opportunities with potential employers specifically raising the Press Release during Ms. Saroya's interviews.

(*See* Am. Compl. ¶¶ 7, 99-110.)   Ms. Saroya has more than sufficiently alleged sufficiently severe emotional distress.   *See Fredin*, 2018 WL 1838100 at *4 ("Reading the complaint as a whole, and in a light most favorable to Plaintiff, we find that Plaintiff has adequately pled that he suffered severe distress as a result of Plaintiff's statements.").

## CONCLUSION

For the foregoing reasons, Ms. Saroya respectfully submits that the Court should grant her motion to amend.

Dated: January 3, 2025         **SAUL EWING LLP**

By:    *s/ Steven C. Kerbaugh*
        Steven C. Kerbaugh (MN #0390429)
        33 S. 6th St., Suite 4750
        Minneapolis, MN 55402
        (612) 225-2946
        steve.kerbaugh@saul.com

        Jefferey S. Robbins
        (admitted pro hac vice)
        Joseph D. Lipchitz
        (admitted pro hac vice)
        Kelsey M. Westrich
        (admitted pro hac vice)
        131 Dartmouth Street, Suite 501
        Boston, MA 02116

        ***Attorneys for Plaintiff Lori Saroya***