# **<u>EXHIBIT Q</u>**

```
 1                      UNITED STATES DISTRICT COURT
                           DISTRICT OF MINNESOTA
 2
        -----------------------------------------------------------
 3                                      )
        CAIR Foundation, Inc., doing    )   File No. 21-cv-1267
 4      business as Council on          )           (SRN/TNL)
        American-Islamic Relations,     )
 5      doing business as CAIR,         )
                                        )   Saint Paul, Minnesota
 6              Plaintiff,              )   December 13, 2021
                                        )   9:30 a.m.
 7      vs.                             )
                                        )   Zoom for Government
 8      Asma Lori Haidri Saroya,        )   Videoconference
                                        )
 9              Defendant.              )
                                        )
10      -----------------------------------------------------------

11           BEFORE THE HONORABLE SUSAN RICHARD NELSON
                UNITED STATES DISTRICT COURT JUDGE
12                      (MOTIONS HEARING)

13      APPEARANCES
         For the Plaintiff:          RUBIN FORTUNATO & HARBISON, PC
14                                   CYNTHIA MORGAN, ESQ.
                                     10 South Leopard Road
15                                   Paoli, Pennsylvania 19301

16                                   RUBIN FORTUNATO & HARBISON, PC
                                     MICHAEL J. FORTUNATO, ESQ.
17                                   1200 Liberty Ridge Drive
                                     Suite 220
18                                   Wayne, Pennsylvania 19087

19                                   CHRISTENSEN LAW OFFICE, PLLC
                                     CARL E. CHRISTENSEN, ESQ.
20                                   800 Washington Avenue North
                                     Suite 704
21                                   Minneapolis, Minnesota 55401

22       For the Defendant:          SAUL EWING ARNSTEIN & LEHR
                                     STEVEN C. KERBAUGH, ESQ.
23                                   ALAIN M. BAUDRY, ESQ.
                                     KELSEY MARRON, ESQ.
24                                   33 South Sixth Street
                                     Suite 4750
25                                   Minneapolis, Minnesota 55402
```

1      Court Reporter:                CARLA R. BEBAULT, RMR, CRR, FCRR
                                      316 North Robert Street
2                                     Suite 146 U.S. Courthouse
                                      Saint Paul, Minnesota 55101
3

4

5          Proceedings recorded by mechanical stenography;
       transcript produced by computer.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

**VIA ZOOM FOR GOVERNMENT VIDEO TELECONFERENCE**

1
2
3
4     THE COURT:  We are here today in the matter of
5  CAIR Foundation, Inc., doing business as the Council on
6  American-Islamic Relations and CAIR, versus Asma Lori
7  Haidri-Saroya, and I'm sure I have not pronounced that
8  correctly.  I apologize to the defense.  This is civil file
9  number 21-1267.  Let's take appearances, please, and we'll
10  begin with the plaintiff.
11     MS. MORGAN:  Good morning, Your Honor.  Cindy
12  Morgan, and that's my colleague Mr. Fortunato.  And here on
13  the line as well, but not on video, is Carl Christensen from
14  Christensen Law who is our local counsel in Minnesota.
15     THE COURT:  Very good.  Good morning.
16     And for the defense, please.
17     MR. BAUDRY:  Good morning, Your Honor.  Alain
18  Baudry and Steven Kerbaugh; and I think she's not on the
19  video screen, Kelsey Marron from Saul Ewing for the
20  Defendant, and Mr. Kerbaugh will be handling the oral
21  argument this morning.
22     THE COURT:  Very good.  Can you tell me how to
23  correctly pronounce the defendant's name, please?
24     MR. BAUDRY:  It's Lori Saroya.
25     THE COURT:  Saroya.  There we go.  All right.

1    Thank you very much.  And, yes, I actually see Kelsey Marron

2    on the little screen, so she's there.

3              MR. BAUDRY:  Great.

4              THE COURT:  We are here today to consider the

5    defendant's motion for partial judgment on the pleadings.

6    Who wishes to be heard?

7              MR. KERBAUGH:  Your Honor, Steve Kerbaugh from

8    Saul Ewing on behalf of Defendant Lori Saroya who is also

9    with us today in the virtual courtroom.

10              And, Your Honor, I've prepared a PowerPoint

11    presentation to help guide today's discussion.  If it

12    pleases the Court, I will go ahead and pull that up right

13    now.

14              THE COURT:  Sure.  And I have a copy of it, too.

15    Go ahead.

16              MR. KERBAUGH:  Okay.  Your Honor, by this motion

17    Ms. Saroya seeks dismissal of Counts I, II, II and V of

18    Plaintiff CAIR Foundation, Inc.'s complaint, particularly

19    CAIR's defamation claims.  Counts I and II fail to state a

20    claim on which relief can be granted because, one, they are

21    time barred to the extent that they are based on statements

22    made before May 21st, 2019; two, they are based on

23    non-actionable statements of opinion or hyperbole; and,

24    three, CAIR has failed to specifically identify the alleged

25    inflammatory statements.

1          CAIR's tortious interference claim, Count III,

2    fails for all of the same reasons because tortious

3    interference claims that are premised entirely on unviable

4    defamation claims likewise fail as a matter of law.

5          Furthermore, CAIR has failed to adequately plead a

6    tortious interference claim under Minnesota law, and the

7    causation of the damages elements are the particularly

8    problematic ones in this context.

9          Finally, CAIR's claim for injunctive relief, Count

10   V, fails because injunctive relief is not a cause of action;

11   it's a remedy.  But more fundamentally, CAIR's injunction

12   claim seeks what in essence would be an unconstitutional

13   prior restraint.

14         With regard to the statute of limitations, as the

15   Court well knows, it's a two-year statute for defamation

16   claims under Minnesota.  Pursuant to the *Wild versus Rarig*

17   case, it's also a two-year statute of limitations for

18   tortious interference when the tortious interference claim

19   is premised on a defamation claim.

20         The complaint in this matter was filed on May 21st

21   of 2021, so claims based on statements prior to May 21st,

22   2019, two years before, are not viable.  Paragraphs 59

23   through 94 of the complaint relate entirely to statements

24   made prior to May 21st, 2019, and CAIR tacitly admits that

25   these claims are time barred in its complaint by focusing on

1    the statements that were made after May 21st, 2019.

2         There's simply no reason for CAIR to have included

3    the allegations contained in paragraphs 54 through 94 of the

4    complaint in the complaint, thus forcing Ms. Saroya to

5    defend herself against those allegations.  And Ms. Saroya

6    respectfully requests that Court dismiss the claims to the

7    extent that they are premised on them.

8         With regard to nonactionable statements, it is

9    axiomatic under Minnesota law that only statements that

10   imply the existence of fact that can be proven as true or

11   false are actionable.  Statements of opinion are subject to

12   the full protection of the First Amendment.  This includes

13   statements relating to subjective views, interpretations,

14   theories, conjecture, surmise, mere vituperation or abuse,

15   or a rhetorical hyperbole, none of which are actionable in a

16   defamation action.  Claims based on nonactionable opinion

17   are subject to dismissal as a matter of law.

18        In Ms. Saroya's briefing, the Court will see

19   examples of numerous cases in which courts have determined

20   that statements are nonactionable as a matter of law.  This

21   slide points to a couple.  The *Others First, Inc. versus*

22   *Better Business Bureau of Great St. Louis* case from the

23   Eighth Circuit relating to a statement warning consumers to

24   exercise caution when dealing with a charity, comparable to

25   the statements at issue here.

1          The *Alexander versus Strong* case relating to

2    statements that a plaintiff and his wife were bad and

3    dangerous people were deemed to be inherently subjective

4    statements and, thus, not actionable.  *Fredin versus*

5    *Clysdale*; *Clysdale*, similarly, a social media posting

6    implying that the plaintiff posed a risk to women's safety

7    was deemed a nonactionable opinion.

8          And there are numerous others in the reply brief.

9    For example, the *Geraci versus Eckankar* case, which included

10   statements relating to, for example, poisoning the board or

11   the party being out of control.  Those were nonactionable.

12         *Northland Merchandisers versus Menard* relating to

13   a conflict of interest, terrible ethics, likewise deemed

14   nonactionable, and the list goes on and on.

15         CAIR's complaint is replete with these types of

16   nonactionable statements, and here is but one example.  This

17   is an example from paragraph 107 of the complaint, and you

18   can see from the parallel citation on this particular slide,

19   it also appears in various other forms at paragraphs 82, 92,

20   116, and the list goes on.

21         But in this statement Ms. Saroya said:  "I worked

22   with CAIR in various capacities for 11 years, and I'm

23   convinced that CAIR creates more victims than it helps.  It

24   does more harm than good.  Whether it's the continuous

25   negative portrayal of Muslims as victims in the media, lack

1    of strategy, making serious mistakes on people's cases,

2    providing inconsistent services, the all-male press

3    conferences, failure to build a legitimate nationwide

4    infrastructure, lack of community engagement on the national

5    level," and so on and so forth.  And these are all

6    statements of Ms. Saroya's opinion regarding her experiences

7    at CAIR and her perception that the organization does more

8    harm than help.

9          Moreover, whether CAIR negatively portrays Muslims

10    in the media, lacks strategy, makes mistakes in people's

11    cases, lacks community engagement and so forth, are all

12    inherently subjective issues on which reasonable minds could

13    differ; not verifiable fact.

14          And I note that it's but one example of such

15    statements in Ms. Saroya's opening brief at pages 9 through

16    12.  There are many others.  And to the extent that CAIR's

17    claims are based on such statements that are not objectively

18    verifiable as true or false, or they're rhetorical

19    hyperbole, or they're an expression of Ms. Saroya's views

20    and not reasonably understood otherwise, they cannot serve

21    as a basis for a defamation claim.

22          Moving forward to the context in which these

23    statements were made as well, CAIR's defamation claims fail

24    because they are based on lengthy statements which are laden

25    with opinion.  The entirety of these communications need to

1    be taken into account when considering whether any

2    particular statement contained therein could arguably

3    construe as a factual connotation.  And in light of the

4    context of the broader statements, the Court should read

5    them for what they are.  Statements of subjective belief,

6    rhetorical hyperbole and vituperation, which were posted in

7    online forums where one would, you know, particularly expect

8    to see statements of opinion.

9         But even taking the pleadings in the light most

10   favorable to CAIR, it has failed to specifically identify

11   the alleged defamatory statements.  Minnesota courts

12   repeatedly conclude that defamation claims based on lengthy

13   communications, based principally on opinion, must be

14   dismissed where the plaintiff does not adequately identify

15   what portions of them are false and thus allegedly

16   actionable.

17        And we've cited, for example, the *Clancy versus*

18   *Vacationaire Estates* case, *Smith v. Britton* as some examples

19   in the brief.  But that's exactly what CAIR has done here.

20   Its allegations are based on lengthy online posts or e-mails

21   or comments to newspaper articles or other Internet content

22   that are laden with opinion, and then CAIR cursorily alleges

23   that the entirety of those lengthy communications are false.

24        And here's an example that is drawn from paragraph

25   82 of the complaint, and this is a two-slide quotation and

1    this is not, by far, the longest statement that CAIR is

2    alleging is the basis for its defamation claim.  But I just

3    wanted to put this up here and I'll give the Court a brief,

4    you know, moment here to read it.  I won't read it to you,

5    but I did want to focus on just a couple of aspects of this

6    particular post.

7        Notably, the context for this entire post, the

8    statement that kind of sets the tone for it, is an opening

9    couple of sentences whereby Ms. Saroya indicates that it was

10   empowering for her to leave her job at CAIR and all of the

11   dysfunction and abuse at that job.  This is a statement of

12   her personal feelings upon leaving her position.  It could

13   not be viewed as anything other than a statement of

14   Ms. Saroya's subjective beliefs.

15       Reading through this statement, Ms. Saroya also

16   starts to talk about, you know, being diligent and doing

17   your research and asking tough questions when considering

18   nonprofit support and donations.  This is the second portion

19   of paragraph 82 of the complaint.  It's a list of rhetorical

20   questions, and these questions don't purport to be factual

21   statements.  To the extent any factual implication could be

22   drawn from these statements, again, it would be a function

23   of Ms. Saroya's subjective belief.

24       It is clear that this post is replete with opinion

25   and rhetoric.  And rather than identify what portions of

1   this statement CAIR claims are untrue, it alleged in

2   paragraph 83 that, and I'm quoting:  "At the time that

3   Saroya published the above statement, she knew the

4   allegations contained therein were false or made with

5   reckless disregard for their truth or falsity," thus

6   suggesting that this entire paragraph forms the basis for

7   CAIR's defamation claim.  Since CAIR has failed in its

8   complaint to adequately identify what statements that it has

9   quoted it believes are true and thus -- or false, and thus

10  actionable, the Court should dismiss CAIR's defamation

11  claims.

12          Moving forward to tortious interference with

13  business relations.  As a preliminary matter, CAIR's

14  tortious interference claim is premised entirely on its

15  defamation claims.  And when defamation claims fail, the

16  tortious interference claims that are entirely premised on

17  them also fail as a matter of law.  There's a number of

18  cases that stand for this proposition, including the

19  *European Roasterie* case which you see here.

20          This tortious interference claim also fails from

21  another defect and this is that it has failed to plead a

22  fundamental element of its claim, and that's that Ms. Saroya

23  caused CAIR damages.  Under Minnesota law, this requires

24  pleading facts that specifically identify at least one

25  third party or third parties that the defendant induced or

1    otherwise caused not to enter into a relationship with the

2    plaintiff.  CAIR's complaint contains no such allegations of

3    any purported lost donors, partners, or religious leaders as

4    a result of Ms. Saroya's statements.  Therefore, CAIR's

5    claim fails because of the fundamental pleading defect.

6         And finally, Your Honor, I want to briefly discuss

7    injunctive relief.  As a preliminary matter, you know,

8    injunctive relief is a remedy.  It's not a cause of action.

9    The purported injunctive relief claim should be dismissed on

10   that basis alone.

11        But the more fundamental flaw in CAIR's claim for

12   injunctive relief is that it seeks from this Court an order

13   that would be violative of Ms. Saroya's First Amendment

14   right to free speech.  As the Supreme Court has held, the

15   First Amendment forbids any branch of the government, which

16   includes the judiciary, from dictating what we see or read

17   or speak or hear.  Such an action is an impermissible prior

18   restraint, which restraints the Supreme Court has held are

19   the most serious and least tolerable form of encroachment on

20   First Amendment rights.

21        Now, that's not to say that there can never be a

22   prior restraint, but such orders need to be central to the

23   needs of public order, and when those -- can only be issued

24   when those needs cannot be achieved through less restrictive

25   means.

1        Injunctions like the one CAIR is seeking here

2   would be, according to the Court in *Sindi vs. El Moslimany*

3   issued by the First Circuit, a very well reasoned and recent

4   case, a dynamic example of a prior restraint.  I think the

5   breadth of the prior restraint that CAIR seeks here is

6   staggering.  CAIR seeks an order that Ms. Saroya cease and

7   desist from any further defamation of CAIR in any forum on

8   any platform.  This extends to future statements?  Surely.

9   By its plain terms, this would also extend to statements

10  that have not even been adjudicated as defamatory after a

11  trial on the merits.

12       And as the First Circuit recently and persuasively

13  concluded in the *Sindi* case, even a prohibition on

14  statements that have previously been found to be defamatory

15  at trial can constitute an overbroad prior restraint that is

16  in violation of the First Amendment.  And the reason for

17  that is clear and it makes just a lot of sense and that's

18  that when one utters a statement in one context, it doesn't

19  necessarily mean it wouldn't be true or spoken without

20  malice on another.

21       Defamation is an inherently contextual tort.  And

22  by its very broad, you know, request for injunctive relief

23  seeking an order that bars Ms. Saroya from defamation, you

24  know, whatever that means to CAIR, CAIR seeks to muzzle

25  Ms. Saroya and chill her willingness and ability to discuss

 1   her experiences at CAIR simply because it does not want the

 2   exposure.  But CAIR cannot be allowed to so trample on

 3   Ms. Saroya's First Amendments rights.

 4          Moreover, an inunction of the type that CAIR is

 5   suggesting relating to the type of statements that CAIR

 6   claims are actionable here, for example, relating to

 7   harassment, discrimination and so forth, would be

 8   particularly insidious given its chilling effect on whistle

 9   blowers and on complaints relating to wrongful and

10   potentially unlawful conduct.  For that reason, CAIR's

11   injunctive relief claim is overbroad and should be

12   dismissed.

13          And, Your Honor, for all of these reasons, and

14   those discussed in the briefing, Ms. Saroya respectfully

15   requests that the Court dismiss Counts I, II and III and V

16   of CAIR's complaint.  And I'm happy to answer any questions

17   that the Court may have for me.  Otherwise, I'll pass the

18   proverbial podium.

19          THE COURT:  Thank you very much, Mr. Kerbaugh.

20   Perhaps you can take us off of your shared screen.

21          MR. KERBAUGH:  Absolutely.

22          THE COURT:  Very good.

23          All right.  Who wishes to be heard for CAIR?

24          MS. MORGAN:  I will, Your Honor.  Cindy Morgan on

25   behalf of CAIR.

1          THE COURT:  Very good.

2          MS. MORGAN:  Thank you.  Good morning, Your Honor.

3          Saroya's motion for judgment on the pleadings is

4     the wrong tool for the wrong job.  She seeks to prematurely

5     and permanently bar CAIR from recovery based on incorrect

6     legal standards and case law that even with just a cursory

7     review has no plausible applicability to the issues at hand.

8          Her attempts to stifle CAIR well before the close

9     of discovery, and it has no basis in fact.  CAIR's complaint

10    charges Saroya with only five causes of action, four of

11    which are at issue in this motion.  Because each count is

12    well pleaded and falls within the applicable statutes of

13    limitations, Saroya's motion must fail and we respectfully

14    request that it be denied in its entirety.

15          The questions for Your Honor to decide here today

16    are really quite simple.  It's whether CAIR has pleaded at

17    least one statement capable of defamatory meaning within the

18    applicable statute of limitations and whether CAIR has put

19    Saroya on notice of its defamation, tortious interference

20    and injunctive relief claim.  If the answers to those two

21    questions are yes, which we submit, Your Honor, that they

22    are, then CAIR's complaint survives in its entirety and

23    Saroya's motion fails.

24          Notably and tellingly, Your Honor, Saroya doesn't

25    argue that CAIR did not plead any communications within the

1       applicable SOL, which would be post May 21st of 2019; nor

2       does she argue that CAIR didn't plead any actionable

3       statements of fact.  Instead she admits that CAIR pleaded

4       communications containing statements of fact capable of

5       defamatory meaning within the past two years of when it

6       filed its complaint.  So even Ms. Saroya agrees that CAIR

7       pleaded actionable claims here.

8               Instead of using a 12(c) motion for its intended

9       purpose, she appears to be using it almost akin to a motion

10      to strike.  She appears to be asking this Court to strike

11      certain numbered paragraphs from the complaint that place

12      her in a bad light.  And it's understandable that she

13      wouldn't want a jury to see the extent of her intent to harm

14      CAIR or to be able to put her more recent publications and

15      statements in their full context within the breadth of her

16      history of defamatory communications.

17              And, you know, we understand the desire to want to

18      wash these allegations from the complaint because they prove

19      without a doubt her malicious intent to destroy an entire

20      nonprofit organization, but a motion for a judgment on the

21      pleadings is not the correct mechanism to accomplish this

22      task.  She can't parse out the pleadings simply to benefit

23      her.

24              The standard for Your Honor's decision here is

25      well-known, but I think it bears repeating here today

1    because it's a burden that's almost entirely ignored by

2    Ms. Saroya in her motion and in her argument here.

3            Because granting a 12(c) motion summarily

4    extinguishes litigation at the threshold because it

5    forecloses CAIR from the opportunity for discovery and for

6    factual presentations, courts have to treat these motions

7    with the greatest of care.  They cannot be granted except in

8    the most unusual and rare circumstances where the plaintiff

9    includes allegations on the face of the complaint that show

10   that there's some insuperable bar to relief.  Meaning that

11   to grant CAIR's motion here, Your Honor would have to find

12   that all of CAIR's pleaded defamatory statements are outside

13   the statute of limitations and that none of them are capable

14   of defamatory meaning.  It's an exceptionally high burden

15   and it's not met here.

16           I know Your Honor has read the briefings and is

17   familiar with the pleadings.  I want to keep the factual

18   recitation brief, but I want to point out a few facts that I

19   think are particularly germane to this motion and to Your

20   Honor's motion.

21           CAIR, as you know, is the nation's largest civil

22   rights organization.  It represents and provides legal

23   services to Muslims who have been discriminated against and

24   persecuted against because of their religious beliefs,

25   because of their national origins.  Because of its mission,

 1    CAIR, like the Muslim community it represents, has been

 2    subject to profound hatred and vitreal across the country

 3    since the organization's inception and it has been attacked

 4    on numerous occasions by numerous individuals and

 5    organizations.

 6            What makes Saroya's defamation particularly

 7    egregious is the fact that she claims to have witnessed and

 8    to have personally observed a series of atrocities as

 9    egregious as sexual abuse of its employees during her

10    employment that simply never occurred.  And because of her

11    position of authority within the organization, when she

12    makes these allegations the public at large looks at them

13    and believes that because she's a person with knowledge of

14    this organization because she worked there, that she's

15    describing incidents that she observed; and, therefore, they

16    are way more likely to believe that what she's saying is

17    true.

18            Now, Saroya began publishing her false statements

19    about CAIR on multiple social media platforms and websites

20    using various forms of her name, her initials, pseudonyms,

21    almost immediately after her employment ended with CAIR in

22    May of 2018.  And although she began making the publications

23    on her personal Facebook and blog under her own personal

24    social media accounts, at some point, perhaps during this

25    impending lawsuit, she began making statements anonymously

1    through a gmail account.  And she admits in her answer, Your

2    Honor, that she has access to this gmail account and that

3    she has used it to make some of these statements.

4        She claims in her publications that she has

5    witnessed CAIR discriminate against its employees, sexually

6    abuse its employees, and harass its employees.  She claims

7    that she has observed male supervisors regularly yelling at

8    herself and other female employees.  She claims that CAIR

9    knew of the sexual abuse suffered by 35 separate

10   individuals; that it did nothing to investigate the 35

11   separate complaints.  And because of that, she in her

12   publications asks CAIR's donors not to donate.  She asks

13   CAIR's partners not to allow CAIR employees to speak at

14   different speaking engagements and fund raise, and she asks

15   reporters to stop reporting on CAIR and its civil rights

16   activity.

17       Her intent has been clear from the beginning, and

18   her intent is to destroy CAIR's reputation in the community

19   and that forms the basis for all of CAIR's claims that are

20   subjects to the instant motion.

21       With respect to Saroya's statute of limitations

22   argument, the motion fails summarily because CAIR pleaded at

23   least 13 different defamatory publications which contained

24   multiple different false statements of fact that occurred

25   within the applicable two-year limit.  A statute of

1    limitations is certainly proper fodder for a 12(c) motion.

2    It's the only issue that Saroya addresses that could

3    constitute grounds by which to grant the 12(c) motion, but

4    the problem here is that CAIR pleaded a myriad of defamatory

5    communications that occurred during that time period.

6              So I'm not really sure that I quite understand the

7    argument, Your Honor, but I think that Saroya is asking Your

8    Honor to dismiss individual defamatory statements from a

9    complaint, and she appears to be claiming that because she

10   published hundreds of statements and because CAIR included

11   ones outside the statute of limitations to prove her

12   identity for the anonymous postings, to show malice, to show

13   her intent to destroy the organization, that she should be

14   absolved of all liability for statements made within the

15   SOL.

16             And that argument doesn't make any sense, of

17   course, and it's hard to imagine a scenario in which it

18   could be brought because there's no legal mechanism by which

19   this Court could conceivably strike a certain number of

20   paragraphs just because the conduct occurred outside the

21   statute of limitations.

22             The law, of course, permits CAIR to plead facts

23   showing the context of the communications at issue, the

24   history and pattern of her malice, and her identity as the

25   publisher of these statements.

1          So respectfully, Your Honor, we ask that you deny

2     Saroya's motion on those grounds.

3          Turning to the argument that the defamation counts

4     and the tortious interference counts were not properly pled,

5     CAIR submits that it sufficiently identifies Saroya's

6     defamatory allegations.  Minnesota is a notice pleading

7     state.  That was affirmed as recently as 2014 in the *Walsh*

8     case for defamation.  As Your Honor knows, CAIR must

9     ultimately prove that Saroya made a false and defamatory

10    statement about CAIR in an unprivileged publication and that

11    the statement marked CAIR in the community.  For the

12    defamation per se count, the third factor is presumed and it

13    need not be pleaded.

14         To survive dismissal, we needed to plead three

15    things:  Who made the statements, to whom they were made,

16    and in what forum.  And we've done that.  The plaintiff is

17    not required to plead the effect of defamatory statements,

18    although we've included them.  Instead, we only have to put

19    Ms. Saroya on notice of the claims against her.  Because

20    Ms. Saroya published hundreds of statements since her

21    employment terminated, it would have been impossible for

22    CAIR to plead each and every publication.

23         As it is, Saroya repeatedly complains in her

24    briefing about the length of CAIR's 200-count complaint.  If

25    CAIR had pled every single publication that she had ever

1    made, our complaint would be thousands of paragraphs long.

2          It would have also been exceedingly redundant to

3    plead each time Saroya made a false statement because at

4    some point, as we pleaded, Saroya began just copying and

5    pasting the same diatribe and sending it out to more and

6    more individuals.

7          So instead of pleading every single, you know, 200

8    communications that she sent and every single time there was

9    a false statement contained therein, CAIR attached or quoted

10    a series of publications in the complaint that accurately

11    showed the breadth of her defamatory activity and the

12    substance of her false factual allegations.

13          And then it pleaded the specific facts, the

14    specific statements within those publications that were

15    false.  And those statements, Your Honor, I won't go over

16    all of them, they are outlined on pages 9 and 10 of CAIR's

17    opposition brief.

18          In addition to pleading the defamatory

19    publications at issue in the complaint and pleading the

20    false statements within the complaint, CAIR also of course

21    pleaded that Saroya made the statements and pleaded the mode

22    and manner in which she made them and the forums and the

23    audience who read them.

24          Saroya is properly on notice of the alleged

25    defamatory communications.  To the extent that she seeks

1    clarity on which statements could be submitted to a jury for

2    ruling, the proper mechanism would be to file a motion in

3    limine prior to trial, but a 12(c) motion does not provide

4    grounds for dismissal of individual numbered paragraphs in

5    the complaint.

6              The next argument that Saroya --

7              THE COURT:  Ms. Morgan, can I just interrupt you

8    there?

9              MS. MORGAN:  Yes.

10             THE COURT:  The Court hears you and, you know,

11   your response brief was well done.  I think my concern, and

12   you have just hit it on the nail, is that the appropriate

13   time to sort out what the defamatory claims allegedly are is

14   not at the motion in limine stage.  That's right before

15   trial.  That's where we talk about evidentiary issues and

16   the like.  That is not.  We need to have that sorted out now

17   so that the discovery can focus on that.  And I appreciate

18   that a complaint can certainly create context and tell a

19   story and your complaint does that, but it's very hard to

20   sort out what is actionable and what's not.

21             It's not at all hard to see what you believe is

22   defamatory, but what is actionable and not actionable is not

23   clear at all from the face of the complaint.  You do make an

24   effort in your brief to clarify that, but that's still not

25   in the complaint.

1          What I think the Court needs -- and I appreciate

2     the magnitude of this undertaking and the number of

3     publications and the like.  But keeping in mind the law

4     about defamatory opinions not being actionable, claims made

5     before May 21st of 2019 not being actionable and the like, I

6     need some sense, I think the parties need some sense, of

7     what the discovery should focus on.  What are the actionable

8     false statements that you claim occurred here, and it's hard

9     to sort that out.  And, trust me, we can't do that at the

10    motion in limine stage.  Even at the motion for summary

11    judgment stage some of that can get sorted through.

12          So help me figure out a way to address this.

13    Perhaps an amended complaint is the way to do it where you

14    specifically -- because the defamation complaints that I've

15    seen in my 20 years on the bench actually specifically

16    identify the allegedly false facts.  It's fine to have in

17    the context the story, the opinions, the out of statute

18    stuff.  But under Counts I and II, I would like to see

19    precisely what you believe is verifiable.  Not opinion.  And

20    there's so much of that in your complaint.  So much general

21    unrest and opinion.  So I need to see more of that.

22          You know, social media is such a forum for cruelty

23    and that goes many ways.  I'm not blaming anybody for

24    anything here.  But that's not actionable.  We really need

25    to specifically identify verifiable facts that you believe

1    are false.

2            So, Ms. Morgan, with that guidance, what do you

3    think CAIR would be willing to do here to give this a second

4    shot, if you would?

5            MS. MORGAN:  CAIR would certainly be willing to

6    amend the complaint, Your Honor, to identify the specific

7    defamatory communications at issue.  We agree that I think

8    that would help narrow and limit the scope of discovery,

9    which is a large looming issue in this case as well, Your

10   Honor.

11           And we did request -- we have not filed for a

12   motion for leave to amend.  We did in our opposition ask for

13   Your Honor to grant us leave to amend to the extent that

14   Your Honor was inclined to either grant the motion for

15   judgment on the pleadings for the defamation or the tortious

16   interference claim.  So CAIR would certainly be willing to

17   amend its complaint to narrow the issues and identify for

18   Your Honor the actionable statements of fact which are

19   contained in the defamatory communications.

20           THE COURT:  The amendment, for instance, couldn't

21   just incorporate the context into the count.  I mean, that's

22   really important because then you're confused about what the

23   basis of the count is.  So it's important to say this is

24   context.  Much of it is outside of the statute.  And under

25   Counts I and II here are the only statements that we

1    believe, one at a time, we believe are false statements of

2    fact and are actionable.

3         And then I would give Ms. Saroya the chance to

4    bring another motion, either judgment on the pleadings or

5    12(b), whatever you believe is appropriate.  But now the

6    Court is left with the task of sorting through this language

7    and trying to figure out what on earth; and it's concerning

8    to me, Ms. Morgan, because so much of it is opinion.

9         If you look at some of these cases that the --

10   that have been cited here, I know just from my personal

11   experience all the opinions about terrible judges and

12   terrible politicians online; and none of that, trust me,

13   unfortunately is actionable.  So we have to be really

14   careful to sort out these general opinions.

15        MS. MORGAN:  And I can respond to that, Your

16   Honor, because I understand what Your Honor is saying there,

17   and I understand that her statements do contain some

18   nonactionable opinions.

19        But where this case falls, where some of her

20   statements differ from all that case law about, you know,

21   that someone being a bad influence is a nonactionable

22   opinion, or someone being a terrible judge or a terrible

23   lawyer is a nonactionable opinion.  And really, quite

24   frankly, all of the cases that Ms. Saroya cited in her brief

25   are all related to adjective statements, as in they are all

1    related to words used to describe a person or an entity

2    versus an action.

3         And the cases where the defamatory communications

4    have been upheld on a motion for summary judgment or a

5    motion to dismiss are where the person is accusing the

6    individual or the organization of taking some type of

7    action.  So the ones that we cited where a statement that

8    someone failed to supervise their child, a statement that

9    someone misrepresented his background, so statements about

10   actual incidents that occurred are capable of defamatory

11   meaning.  There's a lot of case law on that as opposed to

12   statements that are adjectives about someone's personality,

13   or just hyperbolic rhetoric like saying someone poisoned the

14   board when no reasonable person could believe that someone

15   had actually poisoned the board.

16        The reason that Ms. Saroya's statements differ

17   from those cases is the context in which they are made, and

18   is her position within the organization, because she is

19   making clear to her readers that she is this long-term

20   employee of CAIR at a branch level and at the national

21   organization.  She doesn't use the cautionary language like

22   "I believe" or "I think" or "I feel" or "in my opinion,"

23   which is -- is something that this Court can look at as a

24   factor for this Court's determination; and instead she says

25   things like "I witnessed," "I observed," "I personally was

1    subjected to."

2          And she talks about actual actions.  I mean, she

3    does claim that CAIR sexually abused its employees.  She

4    does claim that CAIR repeatedly yelled at -- or male

5    individuals at CAIR repeatedly yelled at female

6    subordinates.  She does claim there are 35 women who have

7    all alleged that they were sexually abused or harmed by CAIR

8    in some manner.  And all of those particular statements,

9    Your Honor, would be statements of fact that are actionable

10   under the case law in Minnesota and in other jurisdictions.

11          So as I understand, Your Honor's desire would be

12   for us to request leave to amend and then to succinctly

13   state those in a list form for each specific statement that

14   we believe is actionable facts that are false and

15   defamatory.

16          THE COURT:  And to be very disciplined about it so

17   we can focus discovery just on those facts.  She doesn't

18   need to say the words "I believe."  I mean, opinions are

19   opinions and it really has to be verifiable.  So there needs

20   to be something concrete about it, you know, and time and

21   space with people so that there's some clarity about what

22   the claim is.

23          And I'll ask Mr. Kerbaugh to weigh in at this

24   point.  I'm sure this isn't exactly the result you were

25   looking for, but I think it's a journey here to try to get

1   to clarity about this case and right now there's so little.

2         Mr. Kerbaugh, your thoughts.

3         MR. KERBAUGH:  Your Honor, it's hard to say

4   without having seen the complaint.  I do have some concerns

5   with regard to some of the comments that I've just heard

6   with regard to statute of limitations, for example, and with

7   some other statements that, you know, I think that there's

8   likelihood to be a disagreement about whether they actually

9   constitute facts when we see the other reconstituted

10  complaint, that we might be back here again.  And in the

11  event that that happens, you know, we're pushing this

12  litigation further down the road.  We're already, you know,

13  several months into discovery.

14        So that's my big concern.  And I think that really

15  they've had an opportunity to do this.  They didn't.  You

16  know, there's authority standing for the proposition that,

17  you know, a defamation claim can be dismissed with

18  prejudice.  Of course, as Your Honor had indicated, an

19  amended complaint might not be the result we're seeking.  We

20  would request our dismissal with prejudice of the defamation

21  claims.

22        But in the event, you know, that there is an

23  amended complaint, we would have to see what it looked like

24  to decide, you know, appropriate next steps in terms of

25  potentially bringing it again before Your Honor.

1          THE COURT:  Okay.  All right.  I think that's how

2     we should proceed at this point.

3          So for clarity, and for the sake of moving things

4     ahead, I am going to rule from the bench that the motion is

5     denied without prejudice and that the plaintiff is permitted

6     to amend -- I know it's the holidays but we do have to move

7     this ahead.  So I'm going to ask you to do that promptly.

8     I'll give you two weeks to do that.

9          And I want there to be a lot of -- I want to see a

10    lot of discipline in that because the -- a lot of these

11    complaints, although they may be valid, they may be

12    defamatory, they are not actionable.  I mean, we really have

13    to get down to what's actionable and what's clear.

14         This is especially true of the statute of

15    limitations.  There will be an opportunity to provide the

16    jury with context, but there can't be any confusion that

17    statements made outside of the statute are somehow

18    actionable.  So I want to see a lot of discipline to this

19    amendment; and once that's done, I invite the defense to

20    make a decision about what you chose to do next.  I think

21    that's the best way to move ahead here.

22         MS. MORGAN:  Thank you, Your Honor.

23         THE COURT:  All right.  Any questions about that

24    ruling?

25         MS. MORGAN:  No, Your Honor.

1          MR. KERBAUGH:  No, Your Honor.

2          THE COURT:  All right.  Very good.  I hope to --

3    this is the kind of case in my magistrate judge days I would

4    love to bring you all in on a weekend and sort it through,

5    if you will.  But there isn't a weekend and I'm not a

6    magistrate judge.  But other than that, I would encourage

7    you to seek out some -- a good mediator who can try to detox

8    some of this and come up with a path forward that's

9    acceptable to both sides.

10         All right.  With that, I wish you a happy holiday

11   and Court is adjourned.

12         MS. MORGAN:  Thank you.

13         MR. KERBAUGH:  Thank you, Your Honor.

14         MR. BAUDRY:  Thank you, Your Honor.

15         (Court adjourned at 10:14 a.m.)

16                    *    *    *

17         I, Carla R. Bebault, certify that the foregoing is

18   a correct transcript from the record of proceedings in the

19   above-entitled matter.

20

21

22         Certified by:  s/Carla R. Bebault
                           Carla Bebault, RMR, CRR, FCRR
23

24

25