UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lori Saroya,<br><br>        Plaintiff,<br><br>v.<br><br>CAIR Foundation, Inc. d/b/a<br>Council on American-Islamic Relations &<br>CAIR,<br><br>        Defendant. | Court File No. 24-CV-110 (DWF/DTS)<br><br>**DEFENDANT'S <u>AMENDED</u> OBJECTIONS TO NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE** |

## INTRODUCTION

Defendant CAIR Foundation, Inc. ("CAIR") is the nation's largest grass-roots Muslim civil rights and advocacy organization. Plaintiff Lori Saroya ("Saroya") is a former CAIR employee who resigned from CAIR in 2018. Saroya sued CAIR for defamation, alleging CAIR's 2022 website statement was defamatory. Saroya moved to compel responses to 41 discovery requests. The Honorable David S. Schultz granted, in part, Saroya's motion (the "Magistrate Judge's Order"). (ECF 43). CAIR objects in limited part to the Magistrate Judge's Order.

## ARGUMENT

**I.    Legal Standard**.

As a general rule, the District Court must reverse a Magistrate Judge's order if the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a)(3)(A); 28 U.S.C. § 636(b)(1)(A). The clearly erroneous standard, "[a]t its

1

broadest, [] is limited to factual findings." 12 *Fed. Prac. & Proc.* § 3069 (3d ed. 2024). Under this standard, a factual "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1995) (citations and internal quotation marks omitted).

Moreover, a Magistrate Judge's "decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (citations and internal quotation marks omitted).

In addition to evaluating a Magistrate Judge's factual findings for clear error or misapplication of law, the district court judge can also reconsider other matters on his or her own. D. Minn. L.R. 72.2(a)(3)(C).

## II. The Magistrate Judge Clearly Erred in Ordering CAIR to Produce Confidential Donor Documents and Identities (RFP Nos. 32 and 33).

The Magistrate Judge's Order with respect to Request Nos. 32 and 33 was clearly erroneous and contrary to law. "The Constitution protects against the compelled disclosure of political associations and beliefs. Such disclosures can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 (1982). "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [a] restraint on freedom of association . . . ." *NAACP v. Alabama ex rel. Patterson*, 357

2

U.S. 449, 462 (1958). This chill on donors' freedom to associate exists "even if there is no disclosure to the general public," and the possibility that "some donors might not mind" is irrelevant. *Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021).

"[T]he First Amendment right to associate creates a qualified privilege from disclosing information in discovery that would chill exercise of that right." *Demuth v. Fletcher*, No. 08-CV-5093 (JRT/RLE), 2010 WL 11646710, at *4 (D. Minn. Mar. 18, 2010) (citations omitted). Accordingly, "[c]ourts routinely decline to permit discovery of information disclosing the identities of members of an organization, which is often requested through membership or volunteer lists." *Id.* at *7.

> Courts have developed a burden-shifting analysis to determine whether a party may assert a First Amendment privilege in response to sought-after discovery. In the first step of the analysis, the party asserting the privilege must make a prima facie showing that the First Amendment privilege applies.
>
> [I]f the party asserting the privilege carries its burden, the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information[.] To determine whether there is a compelling need for that information, considers: (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. Under the first factor, the **relevancy standard for purposes of First Amendment analysis is more exacting than the general relevancy standard for discovery under [Rule] 26(b)(1). Thus, [t]he interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter, that is, unless it is crucial to the party's case.**

*Id.* (citations omitted) (emphasis added).

In *Demuth*, Judge Tunheim, facing the same procedural posture present here, evaluated objections to a magistrate judge's order compelling disclosure of non-party individual identities, applied the above-described analysis, and held "the Magistrate

3

Judge's Order clearly erred in determining that the information was relevant." *Id.* at *8.[1] This Court should do the same.

### A. CAIR Meets Its Burden to Make a Prima Facie Showing that the First Amendment Privilege Applies.

CAIR satisfies its burden to make prima facie showing that the First Amendment privilege applies. "In order to make a prima facie showing that the organization's internal associational activities are protected, the party must demonstrate: (1) that a reasonable probability exists that compelled disclosure of the information sought; (2) will adversely affect the organization's ability to advocate its beliefs; (3) causing active members to withdraw from the organization or dissuading prospective members from joining the organization; (4) because of a fear that exposure of their beliefs will subject them to threats, harassment, or reprisal. The Associational Privilege will protect the disclosure of the information if the movant demonstrates these four requirements." *Demuth*, 2010 WL 116546710, at *7 (citing *Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1237 (D. Wyo. 2002)).

Under this framework, "[f]ederal courts have consistently held that disclosure of internal associational activities (*i.e.*, **membership lists, volunteer lists, financial**

---

[1] While *Demuth* involved a public actor, "the First Amendment privilege may apply even if all of the litigants are private entities." *Int'l Bhd. of Teamsters, Airline Div. v. Allegiant Travel Co.*, 2014 WL 6069851, at *5 (D. Nev. Nov. 12, 2014) (citing *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140, n. 5 (9th Cir. 2010)).

**contributor lists**[2], and past political activities of members) satisfy[ies] [the] prima facie showing because disclosure of these associational activities chills freedom of association." *Id.* at *4, *7 (citing *Wyoming*, 239 F. Supp. 2d at 1237 *and NAACP v. Alabama,* 357 U.S. 449, 462 (1958)) (emphasis added).

Here, ordering CAIR to produce all "**documents referring or relating to or listing or reflecting the names of every contributor to CAIR**" over an eight-year period, and other donor and funding documents dating back to 2007, creates a reasonable probability donors and members would be dissuaded from joining or contributing to CAIR, and it would adversely affect CAIR's ability to advocate. Courts have routinely denied comparable motions. *Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 WL 831918 (S.D. Ohio Mar. 12, 2012); *In re Heartland Inst.*, 2011 WL 1839482 (N.D. Ill. May 13, 2011); *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371 (Tex. 1998).

Additionally, any argument by Saroya that CAIR's donors will not likely be impacted is undermined by Saroya and her counsel's actions immediately following the Magistrate Judge's Order. Within three hours of the November 25 Order being issued, the Order had been shared with the media, and media sources began publishing articles about disclosure of CAIR donor's identities. For example, the *New York Post* published an article titled "Controversial Muslim Nonprofit CAIR once 'linked to Hamas' must reveal

---

[2] The United States Supreme Court has "not drawn fine lines between contributors and members," but has instead "treated them interchangeably." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976).

donors after ex-employee claims it accepts foreign funding." Victor Nava, *Controversial Muslim Nonprofit CAIR once 'linked to Hamas' must reveal donors after ex-employee claims it accepts foreign funding*, NEW YORK POST (Nov. 25, 2024), available at https://nypost.com/2024/11/25/us-news/controversial-muslim-group-cair-forced-to-reveal-sources-of-funding-after-defamation-case-against-former-employee-backfires/.

The article then notes that Saroya's counsel had already been interviewed by the New York Post, and he was quoted in the article describing the ruling as "the mother of all legal boomerangs" and representing that the order will force CAIR to turn over evidence about its fundraising and "fork over the names of its secret donors soon." *Id*. Commenters on the article instantly replied: "I can't wait to read the donor list." *See id*.

Thereafter, more than a dozen news organizations posted similar articles, including (without limitation):

- The Editorial Board, *The Court Case About Who Funds CAIR: A federal magistrate says the anti-Israel nonprofit must hand over donor information*, WALL STREET JOURNAL (Nov. 27, 2024), available at https://www.wsj.com/opinion/the-court-case-about-who-funds-cair-180926ac.

- Post Editorial Board, *Great News – CAIR will be forced to open its books so US can see how deep the rot goes*, NEW YORK POST (Nov. 26, 2024), available at https://nypost.com/2024/11/26/opinion/great-news-cair-will-be-forced-to-open-its-books-so-us-can-see-how-deep-the-rot-goes/.

- Zach Jewell, *Muslim American Civil Rights Group' That Celebrated Hamas Attack Must Reveal Donors, Judge Rules*, THE DAILY WIRE (Nov. 26, 2024), available at https://www.dailywire.com/news/muslim-american-civil-rights-group-that-celebrated-hamas-attack-must-reveal-donors-judge-rules.

Many comments posted in response to the articles include religious-, ethnicity-, and racially-focused threats and statements about CAIR and its donors which, without question, may dissuade donors and members from contributing to or affiliating with CAIR. While the examples are too voluminous to include here, glaring examples include, from the November 25 New York Post article:

- "When Cair's list of donors has been disclosed, … all of the leadership and employees of Cair must be rounded up, tried for being terrorists or being linked to terrorist groups or persons, and be given the harshest punishments possible."

- "CAIR . . . need[s] to be defunded and disbanded. Nothing but terrorist funding leeches that scam to get taxpayers money for evil stuff."

From the November 26 New York Post article:

- "DEPORT ALL CAIR members immediately!"

- "Deport everyone of them!"

- "Then lock them all up with their buddies at Guantanamo!"

Accordingly, even if, as the above precedent suggests, disclosure of donor information was not alone sufficient to carry CAIR's burden to make a prima facie showing that the First Amendment privilege applies to Request Nos. 32 and 33, the immediate and widespread news coverage regarding the alleged public disclosure of CAIR's donors (in which Saroya's counsel was quoted), and the vulgar comments directed at CAIR in each article and related comment sections therein, clearly discourage

7

others from exercising First Amendment rights to associate with CAIR.[3] This further confirms CAIR meets its minimal prima facie showing.

### B. Saroya Does Not Meet Her Heightened Burden to Show a Compelling Need for the At-Issue Donor Information.

Because CAIR meets its burden to make a prima facie showing that the First Amendment privilege applies, Saroya must meet her heightened burden to show "the information goes to the heart of the matter, that is, . . . it is crucial to the party's case." *Demuth*, 2010 WL 116546710, at *4 (citation omitted) (reversing Magistrate Judge's order on motion to compel).

Here, the only alleged relevance of the donor documents is that Saroya alleges CAIR's 2022 press release—which does **not** mention donors, funding, or make any comparable references—defamed Saroya because it misrepresented the outcome of CAIR's 2021 lawsuit which, in turn, included an allegation that Saroya falsely accused CAIR of accepting international funding through WTFI. (ECF 35-1 ¶¶ 119-120.) This tenuous relevance does not meet Saroya's burden to show the requested documents go to "the heart of the matter." Specifically, donor identities and documents, which are not referenced in the allegedly defamatory press release, are not the "the heart of" this matter.

In addition, the Magistrate Judge failed to consider or analyze the "nature of the information" requested. *Demuth*, 2010 WL 116546710, at *7. The Magistrate Judge instead lumped Requests 32 and 33, which seek the identities and documents related to

---

[3] CAIR's status as a 501(c)(3) organization (ECF 1 ¶ 9) further supports its prima facie showing and duty to protect its donors. *See* 26 U.S.C. § 6104(d)(3)(A).

each of CAIR's donors, into a group of document requests seeking information generally related to Saroya's prior allegations. The Magistrate Judge did not analyze the First Amendment concerns differentiating the donor information from other requests, and instead granted in full Saroya's Request Nos. 32 and 33. This was erroneous.

Moreover, even assuming, *arguendo*, that some donor information was "the heart of" this matter (it is not), the donor information must be tailored and limited to the only donor-related allegation in the 2021 lawsuit: the truth of Saroya's allegation that CAIR (**but not any CAIR chapter or affiliate**) received foreign funding through WTFI. (ECF 35-1 ¶¶ 119-120.) *See Bonta*, 594 U.S. at 619 (holding requests for donor information which may chill associational rights must be narrowly tailored and pass "exacting scrutiny"). Saroya's specific allegation about CAIR receiving foreign donations WTFI at an unknown time does not justify discovery of the information and documents Saroya seeks in Request numbers 32 and 33, much less meet Saroya's heightened showing to show such information lies at the heart of this case. That is, even if donations from foreign sources to WTFI were somehow relevant, the Magistrate Judge clearly erred and issued a decision contrary to law by compelling CAIR to produce documents related to donors who (a) never contributed to the WTFI; (b) are based domestically; (c) donated to any separately operated and funded chapter or affiliate of CAIR (aside from the WTFI) which falls under Saroya's overbroad definition of "CAIR" in her requests. *See* ECF 40 (explaining CAIR's relationship with chapters). Accordingly, as to Request Nos. 32 and 33, CAIR's objection should be sustained.

9

**III.     Request No. 34.**

Document Request 34 states: All documents referring or relating to or reflecting the acquisition by CAIR or any CAIR affiliate of property located at 921 2nd Street NE in Washington, D.C., including the sources of the funding for such acquisition. (ECF 43 p. 26.) The Magistrate Judge clearly erred in compelling production of documents responsive to this Request. Saroya alleged without support that this request somehow "relat[es] to CAIR having received foreign funding." (ECF 34 p. 16.) But there was no mention of this D.C. address or property (which is not owned by CAIR) in CAIR's 2021 lawsuit. Nor was there any mention of this address or property in the 2022 CAIR website post on which Saroya's claim is based. Accordingly, the Magistrate Judge clearly erred by compelling CAIR to produce documents responsive to Request No. 34.

**IV.     The Magistrate Judge Clearly Erred in Ordering CAIR to Produce Severance, Non-Disclosure, and Settlement Agreements.**

Interrogatory No. 19 states: Please identify every settlement agreement, severance agreement or non-disclosure agreement entered into with any individual by CAIR since 2011, including in Your response the name of that individual, the nature of the agreement, its date and any financial consideration paid to that individual in connection with that agreement. (ECF 43 p. 28.)

"When the requested discovery concerns a confidential settlement agreement, the majority of courts considering the issue have required the requesting party to meet a heightened standard, in deference to Federal Rule of Evidence 408, and the public policy to encourage settlements and to uphold confidentiality provisions." *Multi-Tech Systems,*

10

*Inc. v. Dialpad.com, Inc.*, No. 00-CV-1540 (ADM/RLE), 2002 WL 27141, at *2 (D. Minn. Jan. 8, 2002) (citation omitted); *Govt. of Ghana v. Proenergy Servs, LLC*, 677 F.3d 340, 345 (8th Cir. 2012) (affirming district court's denial of motion to compel settlement agreement). Even if some portions of a settlement agreement are relevant, courts have more closely scrutinized requests (as here) for discovery of settlement **amounts**. *See Auto-Owners Ins. Co. v. Mid-Am. Piping, Inc.*, 2008 WL 2570820, at *2 (E.D. Mo. June 26, 2008).

Here, the Magistrate Judge's Order's only analysis as to the relevance or discoverability Saroya's Interrogatory seeking the details of every settlement, severance, or non-disclosure agreement CAIR has entered into since 2011 is that Saroya made a prior statement that CAIR uses attorneys to suppress and silence employees, and the truth of this vague statement is relevant to this lawsuit. (ECF 43 p. 18.)

Saroya's vague allegation that CAIR uses attorneys to suppress and silence employees does not make relevant the details of every severance, settlement, or non-disclosure agreement to which CAIR has been a party for the last 13 years. Specifically, the details of standard bilateral employment agreements have nothing to do with any allegation in CAIR's website post or either lawsuit. This is particularly true as to the request for the "consideration paid" to the individuals party to the agreements, as even if the number of responsive agreements or the nature of agreements were somehow relevant (they are not), the amount of any such prior agreement has no bearing on whether it is true that CAIR uses attorneys to suppress employees. *See Ranstad Gen. Partner, et al. v.*

11

*Beacon Hill Staffing Group, LLC*, 2021 WL 4319673, at *20 (N.D. Tex. Sept. 23, 2021) (denying motion to compel prior settlement agreements).

Accordingly, the Magistrate Judge erred by compelling CAIR to answer Interrogatory No. 19. CAIR's objection should be sustained.

V.  **The Magistrate Judge Erred to the Extent its Order Compels CAIR to Produce Every Communication and Document To, From, About, or Including Saroya, Regardless of Subject Matter, from 2007 through 2018.**

Requests 1, 2, and 3 seek all documents and communications "referring or relating to Lori Saroya, or in any way concerning Lori Saroya [or her] employment with CAIR." (ECF 43, p. 23.) CAIR objected to these Requests as overbroad, not proportionate to the needs of the case, including documents unrelated to any party's claim or defense, and unduly burdensome, in particular because the Requests contain no subject matter or temporal limitation. Saroya responded by agreeing to limit the temporal scope of these Requests to 2016 to the present. (Alter Decl. Ex. A p. 1-4; ECF 35-8 p. 1).

The Magistrate Judge held "communications **about** Saroya" are relevant and discoverable. (ECF 43 at 18.) Despite this apparent limitation on the scope of these Requests, and while Saroya stated these Requests include every communication and document in any way related to or involving Saroya while she was employed by CAIR-Minnesota or CAIR (not just emails or documents "about" Saroya), the Court granted these Requests without expressly including any temporal or substantive limitation. Saroya now contends that CAIR must produce every communication to, from, or about Saroya (whether she was merely copied or actually involved), without limitation. Such scope would encompass Saroya's employment with CAIR-Minnesota, an affiliate and

12

separate entity, and later CAIR, from 2007 to 2018—four years before CAIR's 2022 website post upon which Saroya's claim is based. These Requests also seemingly include every document that refers or relates to her employment during this eleven-year period, regardless of the nature of the documents, the confidentiality of the documents, or the subject matter of the documents. This scope far exceeds any reasonable relevance of any claim or defense at issue in this case—in particular because there is not a single allegation in either the 2021 lawsuit or in this lawsuit which pre-dates Saroya's commencement of employment with CAIR in 2016. CAIR requests the Court limit the scope of these requests to 2016 to the present (consistent with Saroya's prior agreement), as well as limit the substantive scope to documents or communications which relate to statements made in CAIR's 2022 website post or allegedly put at issue in CAIR's 2021 complaint.

### VI. The Court Should Clarify and/or Modify the Scope of the Magistrate Judge's Order to Match the Scope Saroya Agreed to and Submitted to the Court in the Parties' Joint Discovery Chart.

Saroya and CAIR exchanged pre-motion proposals as to the scope of the disputed discovery requests. (ECF 35-8, 35-9.) The Parties then completed and submitted to the Magistrate Judge the discovery chart listing each party's last position with respect to each discovery requests. (Alter Decl. Ex. A.) This discovery chart exercise is intended to assist "both the parties and the Court in efficiently addressing the disputed discovery and narrowing any remaining issues." *Brinkman v. Sprinkler Fitters Local # 417*, No. 19-CV-2981 (KMM/TNL), 2022 WL 420881, at *11 (D. Minn. Feb. 11, 2022).

13

Here, the Magistrate Judge did not expressly limit the scope of its Order to the scope Saroya submitted to the court in the parties' August 16 discovery chart. Saroya seeks to capitalize on this lack of defined scope and has reneged on her prior agreement to limit the scope of several at-issue requests. After the Magistrate Judge's Order was issued, CAIR reached out to Saroya to confirm Saroya remained agreeable to the limitations she agreed to prior to the motion and included in the discovery chart. Saroya's counsel refused to agree to the prior limitations and refused to negotiate a protective order that includes an AEO provision. (Alter Decl. ¶ 3.)

This Court, knowing now that Saroya has reneged on her prior scope limitations, as represented to the Magistrate Judge, should exercise its discretion by limiting the scope of the at-issue discovery requests to the scope Saroya outlined in her discovery chart and letter to CAIR. (Alter Decl. Ex. A; ECF 35-8.)

## **CONCLUSION**

CAIR respectfully requests the Court sustain CAIR's objections to Interrogatory No. 19 and Request Nos. 1, 2, 3, 32, 33, and 34, and modify the scope of the Magistrate Judge's Order to align with the scope limitations Saroya listed in the discovery chart and represented to CAIR (Alter Decl. Ex. A; ECF 35-8.)

**FELHABER LARSON**

Date: January 6, 2025

*/s/ Zachary A. Alter*
Sara G. McGrane (#0233213)
Zachary A. Alter (#0399991)
220 South 6th Street, Suite 2200
Minneapolis, MN  55402
612-339-6321
*smcgrane@felhaber.com*
*zalter@felhaber.com*

**ATTORNEY FOR DEFENDANT**

15