

ATTORNEYS AT LAW

Zachary A. Alter
612.373.8467
Email: ZAlter@Felhaber.com

January 24, 2025

The Honorable Donovan W. Frank
United States District Court
316 N. Robert Street
St. Paul, MN 55101

**RE:     Lori Saroya v. CAIR Foundation, Inc.**
        **Court File No. 24-CV-110 (DWF/DTS)**

Your Honor:

CAIR Foundation, Inc. ("CAIR") submits this letter in response to Plaintiff Lori Saroya's letter (ECF 78) providing additional authority and argument related to CAIR's Amended Objections to Non-Dispositive Order of Magistrate Judge (ECF 72).

First, Saroya argues CAIR did not expressly use the words "First Amendment" in CAIR's initial objections to Document Request No. 32, and therefore waived its right to argue that Magistrate Judge Schultz's Order was erroneous based on well-established First Amendment considerations. However, CAIR specifically objected to Request No. 32 as: (a) "seeking confidential information related to nonparties"; and (b) "served for an improper purpose to harass CAIR and its donors, and/or obtain confidential and anonymous third-party information, the sensitivity of which far outweighs any potential relevance to any party's claim or defense." (ECF 35-5, p. 22-23.) These objections align precisely with the confidentiality and First Amendment considerations relating to discovery of non-party donor information upon which CAIR's Objections to Judge Schultz's order are based. *See Demuth v. Fletcher*, No. 08-CV-5093 (JRT/RLE), 2010 WL 11646710, at *3-8 (D. Minn. Mar. 18, 2010). CAIR also specifically argued in its memorandum opposing Saroya's Motion to Compel that donor identities are not discoverable because, in relevant part, "such disclosure itself infringes on donors' freedoms of speech and association. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021)." (ECF 39 p. 21-22.) CAIR did not waive any argument that CAIR's donor information responsive to Request No. 32 is not discoverable based on First Amendment considerations.

Second, Saroya argues that Judge Schultz's discovery order deemed "particularly" relevant foreign donations to CAIR and, in turn, that *TikTok v. Garlard* supports this discovery order. This argument is misplaced. One of CAIR's principal objections to Judge Schultz's discovery order is that despite the order deeming relevant whether CAIR received **foreign** donations (through WTFI), the order compelled CAIR to produce all responsive documents regarding donations from **domestic** sources, among other documents responsive to Request No. 32. (ECF 72 p. 9.) In doing so, Judge Schultz erred. Saroya's reliance on the *TikTok* case, and the distinction *TikTok* draws between domestic and foreign entities, supports CAIR's position that

The Honorable Donovan W. Frank
Page 2

the First Amendment privilege prevents discovery in this case of CAIR's domestic[1] donor information and related documents responsive to Request 32.

Third, Saroya argues "[t]he *TikTok* decision reaffirmed the controlling law that foreign nationals outside of the United States do not have rights under the United States Constitution . . . ." In doing so, she concedes the law was already "controlling" before *TikTok* was decided. She did not cite this controlling law in her briefing. Thus, she waived the argument that *TikTok* or prior precedent related to First Amendment rights of foreign citizens supports Judge Schultz's order. Saroya's characterization of *TikTok* as newly-decided law is an attempt to permit her to file supplemental briefing on an issue she failed to raise in her initial opposition.

Fourth, *TikTok* is factually and procedurally distinguishable. It involved the legality of a statute prohibiting distribution of mobile applications controlled by foreign adversaries. It had nothing to do with the issue here: whether CAIR's donor list and related documents are discoverable under Rule 26, consistent with First Amendment considerations. Importantly, unlike in *TikTok*, in which the Court noted the lack of First Amendment protection for expressive activity by a foreign adversary which occurs abroad, a primary reason CAIR's donor information is not discoverable in this case is because production of the donor information directly impacts and infringes on rights central to CAIR—a **domestic** non-profit. That is, the at-issue First Amendment considerations which weigh against discovery of CAIR's donor information do not hinge solely on the donor's location or citizenship. Rather, CAIR separately has a protected interest. As one court noted on a motion to compel production of a religious entity's donor list:

> Should it become public knowledge that Plaintiff disclosed the identity of one of its donors, it is highly possible, if not probable, that this could hinder Plaintiff's ability to receive donations in the future. Even assuming that a protective order would prevent public disclosure, revelation of the donor's identity will still adversely impact the associational rights of Plaintiff and its donor.

*Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 WL 831918, at *3 (S.D. Ohio Mar. 12, 2012). Here, Saroya's history of sending inappropriate communications to CAIR's partners and supporters—the conduct central to this litigation—underscores the chilling effect on CAIR (**not just CAIR's donors**) should the Court compel CAIR to produce to Saroya CAIR's donor information. CAIR respectfully requests the Court sustain CAIR's Amended Objections to Non-Dispositive Order of Magistrate Judge.

*/s/ Zachary A. Alter*

Zachary A. Alter

---

[1] Notably, while not addressed in the limited footnote in *TikTok*: "There is no support for the proposition that corporations lose their First Amendment protections merely because a foreign national purchases some share or interest, no matter how small. . . . And no case holds that a corporation ceases to be 'American' by virtue of any quantum of foreign ownership." *Minnesota Chamber of Commerce v. Choi*, 707 F. Supp. 3d 846, 858 (D. Minn. 2023).